IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DESERET MANAGEMENT CORPORATION | ) | |
| | ) | Case No. 06-86 T |
| | ) | |
| Plaintiff, | ) | Judge Emily C. Hewitt |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPPOSITION TO MOTION FOR RECONSIDERATION**

The plaintiff Deseret Management Corporation ("DMC"), through counsel, submits this Opposition to the Motion for Reconsideration (in part) of this Court's Order of October 18, 2006 (the "Order"), in which the defendant United States of America (the "Government") asks this Court to rescind that portion of the Order granting relief to DMC from the limit of 25 interrogatories found in RCFC 33(a).

## INTRODUCTION

The Government's Motion for Reconsideration is wrong on the narrow issue of relief: This Court was clearly correct in permitting DMC to serve interrogatories in excess of 25 in light of the Government's manifest abandonment of its long-standing positions — first articulated in 1998, next formally adopted in 2003 in the thirty-day letter, and most recently reaffirmed in 2005 in the Notice of Deficiency — all to justify assessment of $12,703,169 of additional taxes based on the KIRO-TV sale.

The Government's Motion for Reconsideration is also wrong on the broader fact issues cited as justification for its non-responsive Answer and the equally non-responsive Amended Answer. Time and again in its motion, as justification, the Government cites hypothetical principles and inaccurate generalizations that have no application to the facts and circumstances of this dispute. As the record set forth in the Government's own files identified in its Initial Disclosures affirms, discovery in this matter is not a one-way street, with all information coming "*from the taxpayer*" (Motion at 5); rather, the Government has thoroughly examined this transaction on numerous occasions and knows every fact needed to take a position on the merits.

## ARGUMENT

### I. THE COURT CORRECTLY GRANTED DMC RELIEF FROM THE LIMIT ON THE NUMBER OF INTERROGATORIES UNDER RCFC 33(a).

The Government has abandoned its positions set forth in the thirty-day letter and reaffirmed in the Notice of Deficiency – the sole bases for the $12,703,169 assessment of in additional taxes against DMC — yet persists in retaining DMC's money. As a consequence, DMC needs more than 25 interrogatories to find out what the Government's position is and what evidentiary support the Government has for its position.

The problem is seen most clearly in the government's response to paragraph 48 of the Complaint. In paragraph 48, DMC set forth item by item the appraised values of 18 (out of a total of 26) categories of KIRO-TV assets. These appraised values were precisely the values stated by the IRS in its September 9, 2002, Notice of Proposed Adjustment, Issue No. 41-1 ("NOPA 41-1") at page 4, and subsequently used by the IRS to calculate the deficiency amounts proposed in the thirty-day letter and confirmed in the Notice of Deficiency. *See* Complaint, Exhibit A (Valuation Specialist's Report supporting NOPA 41-1 is included after the thirty-day letter). By alleging these values in paragraph 48 of the Complaint, DMC agreed to accept the

Government's values for these assets as a means of narrowing the issues in this case. In the First Amended Answer at paragraphs 47-48, however, the Government announces that it "presently lacks knowledge or information sufficient to form a belief as to the truth" of the respective values of these assets.[1] *See* First Amended Answer at page 8.

Similarly, in paragraphs 52 and 56 of the Complaint, DMC restated certain positions taken during the audit of DMC by the government's expert David Bivins that served as the basis for the values set forth in NOPA 41-1. Again, the Government's response in the First Amended Answer was to claim ignorance with respect to those positions, notwithstanding the fact that NOPA 41-1 and the Notice of Deficiency relied exclusively on Mr. Bivins' analysis. *Id.* at 9.

Finally, in paragraph 90 of the Complaint, DMC alleged the difference between the valuation of certain asset categories as set forth in NOPA 41-1 and as set forth in the work of DMC's appraiser. Again, the Government now claims ignorance of the amount and rationale for these differences, although the facts alleged derive directly from the Government's work product.

DMC pled numerous facts in the case with specificity in the hope of drawing an early and decisive line between those facts genuinely in dispute between the parties and those on which the parties have agreement. Such a course generally promotes a "just, speedy, and inexpensive determination" of the action (RCFC 1); here, it has provoked open hostility on the part of the Government (for example, suggestions that the allegations of the Complaint are in violation of RCFC 8(a)) and a corresponding refusal to address the merits of the allegations no matter how much corroborative information the Government has in its files.

[1] It is most difficult to conceive of how, at this late date and consistent with the obligations imposed by RCFC 11(b), the Government can profess ignorance of facts set forth explicitly in the thirty-day letter and NOPA 41-1, documents that it prepared, approved and delivered to DMC. *See* Complaint, Exhibit A.

Ironically, the Government urges DMC to seek understanding of the current "deemed" denials (that is, denials based on claims of ignorance) through the initial disclosure process, the "early meeting" of counsel and the Joint Preliminary Status Report, and discovery. Motion for Reconsideration at 7 and 9. The Government's Initial Disclosures, previously submitted to the Court at the October 24, 2006, hearing and attached hereto as Exhibit A, shed no light on the Government's professions of ignorance or on its current position regarding the numerous specific issues pled by DMC regarding asset valuation. The "early meeting" and Joint Preliminary Status Report, together with the Status Conference, likewise yielded nothing more regarding the Government's position, aside from what has become the standard response to such inquiries for specifics: "de novo proceeding."

Now, having failed to provide anything meaningful or responsive at the pleading stage, the initial disclosure stage or the status report stage, the Government demands that this Court pare back the expanded discovery rights granted in the Order. DMC needs those rights if it is to ascertain why the Government believes that its former positions, stated in detail in the Complaint, are not correct. DMC also needs these rights to determine what the Government's position is in this litigation and the evidentiary support it has for its position. As seen in the extensive requests for admissions and interrogatories served on the Government in connection with this Opposition (attached hereto as Exhibits B and C), the Government's professions of ignorance leave DMC with numerous assets and prior positions about which it must inquire. For that inquiry to be useful and potentially productive, each inquiry must necessarily be in sub-parts and thereby subject to potential objection under the RCFC 33(a) limitation of 25 interrogatories.

Without the relief from RCFC 33(a) granted by this Court, the Government could well decline to answer the majority of such inquiries simply by citing the numerical limit. However,

having advocated discovery as the means of moving the case forward and with over 26 asset values apparently at issue , the Government can hardly object to discovery tools sufficient to determine and examine the points on which the parties differ. Moreover, given the size and complexity of the defendant – the Government of The United States of America – interrogatories as verified and binding statements of a party's position are the most appropriate discovery tool for probing whatever substance lies behind the First Amended Answer.

## II. REPEATED ERRORS REGARDING THE COURSE OF THESE PROCEEDINGS MAR THE MOTION FOR RECONSIDERATION.

The outcome sought in the Motion for Reconsideration is narrow but the assertions of fact cited in support of that result are very broad and often in error. Such errors include the following:

a. DMC does not seek "a refund of $71.5 million in tax for the four years 1995 through 1998." Motion at 1. Even a casual reference to the Complaint, page 22, would disclose that DMC seeks a maximum recovery of tax *and* deficiency interest of $28,721,247.

b. DMC did not state or imply in reply to the motion to strike that it had been "singled out" for "special treatment." Motion at 3. Rather, DMC assumed that the non-responsive answer filed by the Government was business as usual, whatever the justification. In moving to strike, DMC merely sought the "meaningful" response promised by the Government, a response to its Complaint premised on the Government's actual knowledge and information, rather than that of the attorneys. The administrative record demonstrates that such knowledge and information is deep and extensive. Regrettably, the First Amended Answer persists in the fiction that such knowledge and information does not presently exist.

c. Whether or not the Government was "a party" to the 1995 sale of KIRO-TV is no measure of its access to "relevant information." Motion at 5. The Government commenced its

audit of the transaction in 1996. It accumulated thousands of pages of documents, sufficient to fill the eight boxes in the possession of trial counsel. Those boxes contain all of the transaction documents. (Apparently, the IRS has additional files not in the possession of trial counsel that are presently under review for privilege. Given the time required for that review, one can only surmise that these files are extensive as well.) These files, coupled with documents obtained by the Government from KIRO-TV (which, post-February 1995, was an unrelated entity), were sufficient for Mr. Bivins to render opinions of value in 1998 and 2000 with respect to each of the KIRO-TV assets categories and for the Service to rely on that opinion to assess a multi-million dollar tax liability against DMC.

d. The Government's own conduct in this action belies the notion that it perceives any disadvantage to it arising from the alleged inequality in the availability of information. Nine months have passed since the filing of the Complaint, yet the Government has not sought any discovery to remedy any deficiencies it perceives in the documentary record before it. Indeed, since 1999, the Government has not undertaken to obtain any further documents from DMC. The Government's passivity is a most emphatic rebuttal of its contention that there exists an actual "gross disparity in relevant information" and that the Government "has no independent knowledge or information with respect to those transactions and can confirm the facts surrounding those transactions only after conducting discovery in this action." *Id.* at 5 and 6. This statement cannot be true after ten years of Government scrutiny of the KIRO-TV sale. The author of the Motion for Reconsideration is either misinformed or has chosen to close his or her eyes to the contents of the administrative files produced by the Government.

**CONCLUSION**

This Court should deny the Motion for Reconsideration.

Respectfully submitted,

s/ Eric C. Olson

Eric C. Olson (Attorney of Record)
Tel. (801) 321-4818
Fax: (801) 321-4893
KIRTON & McCONKIE
60 East South Temple Street, Ste. 1800
Salt Lake City, Utah 84111

November 7, 2006

**CERTIFICATE OF SERVICE**

I certify that service of the foregoing **OPPOSITION TO MOTION FOR RECONSIDERATION IN PART** has, this 7th day of November 2006, been made on Defendant by electronic mail and by mailing a copy thereof, in a postage prepaid envelope, to the following address

Jennifer Dover Spriggs
Court of Federal Claims Section
U.S. Department of Justice
Tax Division
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044

s/ Eric C. Olson

Eric C. Olson
KIRTON & McCONKIE
60 East South Temple Street, Ste. 1800
Salt Lake City, Utah 84111
Tel. (801) 321-4818
Fax: (801) 321-4893