IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DESERET MANAGEMENT CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 06-86 T<br><br>Judge Emily C. Hewitt |

**PLAINTIFF'S INTERROGATORIES TO DEFENDANT (SET ONE)**

PROPOUNDING PARTY: Deseret Management Corporation

RESPONDING PARTY: The United States of America

SET NUMBER: One

The plaintiff Deseret Management Corporation ("DMC") hereby requests that the defendant the United States of America ("the Government") respond to the following interrogatories within the time prescribed by Rule 33 of the Rules of the Court of Federal Claims ("RCFC") and in accordance with the following definitions and instructions:

**DEFINITIONS AND INSTRUCTIONS**

1. The term "the Government" means the responding party the United States of America, including the Internal Revenue Service ("IRS"), together with any agents, representatives, employees, or other persons acting or purporting to act on behalf of the United States of America or the IRS.

2. The terms "document" and "documents" mean all writings or recordings within the scope of RCFC 34, including, but not limited to, papers, notes, records, books and writings; computer disks or files; every other means of recording upon any tangible thing, including any form of communication or representation, including letters, e-mails, words, pictures, sounds or symbols or any combinations thereof, memoranda, (internal, interoffice, or otherwise), notes, shorthand or stenographer's notebooks, correspondence, telexes and telegrams (whether received or sent) and/or minutes or notes of meetings; and recordings, transcriptions, memoranda or notes made of any telephone communication or face-to-face oral conversation between or among any persons.

3. "Person" means, in the plural as well as in the singular, any natural person, Governmental entity, agency, commission, authority, firm, corporation, partnership, association, joint venture, or other form of legal entity, or any representative thereof.

4. The term "identify":

a. When used in reference to a natural person, means to state that person's full name, present or last known residential address and telephone number, and present or last known business address and telephone number;

b. When used in reference to a corporation, association, organization, partnership, or other entity, means to state the entity's full name, business address, and telephone number.

c. When used in reference to a document means to state with particularity sufficient for a demand for production, the type of document, the date, author and recipient of the document, and the name, address, and telephone number of the person who is the custodian of the document.

5. "Relate," "concern," or equivalent language means concerning, reflecting, respective, supporting, contradicting, referring to, relevant to, stating, recording, noting, containing, mentioning, analyzing, discussing, describing, evaluating, evidencing, or constituting.

6. The term "Notice of Deficiency" means the letter from the IRS to DMC, dated March 28, 2003, including the Examination Report that was attached to such letter, in which the IRS proposed the changes to DMC's tax returns that resulted in the collection of the taxes at issue in this refund suit.

7. The conjunctives "and" and "or" as used herein shall be construed both conjunctively and disjunctively and each shall include the other wherever such dual construction will serve to bring within the scope of these interrogatories and requests information which would otherwise not be brought within their scope.

8. Each response must include all information about the subject of the interrogatory that is known or available upon the exercise of due diligence. If the Government cannot answer any interrogatory fully and completely, so state, and explain the steps taken to attempt to reasonably obtain the information.

9. All objections to any interrogatory on the ground of any claim of privilege of any kind whatever shall:

a. state the nature of the claim of privilege;

b. state all facts relied upon in support of the claim of privilege or related thereto;

c. identify all documents related to the claim of privilege;

d. identify all persons having knowledge of any facts related to the claim of privilege; and

e. identify all events or occurrences related to the claim of privilege.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

If the Government's response to any of Plaintiff's Requests for Admission Nos. 1-3, 5-7, 9-11, 13-15, 17-19, 21-23, 25-27, 29-31, 33-35, 37-39, 41-43, 45-47, 49-51, 53-55, 57-59, 61-63, 65-67, 69-71, 73-75, 77-79, 81-83, 85-87, 89-91, 93-95, 97-99, or 101-103 is anything other than an unqualified admission, state the factual basis for such denial including:

a. The value of that asset actually utilized by the Government.

b. All calculations utilized by the Government to arrive at the value stated in response to sub-part 1(a) above.

c. The identity of each person on whose knowledge the Government relied in making the calculation(s) identified in response to part 1(b) above.

d. The identity of all documents setting forth, supporting or referencing the value or calculations stated in response to parts 1(a) or (b) above.

**INTERROGATORY NO. 2:**

If the Government's response to any of Plaintiff's Requests for Admission Nos. 4, 8, 12, 16, 20, 24, 28, 32, 36, 40, 44, 48, 52, 56, 60, 64, 68, or 72 is anything other than an unqualified admission of that Request for Admission, then state the following:

a. The date on which the Government first determined that the value set forth in the Request for Admission was not the value of the asset identified therein.

b. The value the Government contends is the correct value of the asset as of February 1, 1995.

c. The identity of each person on whose knowledge the Government relies in asserting that the amount set forth in any such Request for Admission is not the correct of the asset or that the correct value of the asset is the amount set forth in the response to part 2(b) above.

d. The identity of all documents setting forth, supporting or referencing the conclusions stated in response to parts 2(a) or (b) above.

**INTERROGATORY NO. 3:**

If the Government's response to any of Plaintiff's Requests for Admission Nos. 76, 80, 84, 88, 92, 96, 100, or104 is anything other than an unqualified admission, state the following:

a. The date on which the Government first determined that the value set forth in such Request for Admission was not the correct value as of February 1, 1995, for the subject asset.

b. The value the Government contends is the correct value for the asset as of February 1, 1995.

c. All calculations utilized by the Government to arrive at the value stated in response to sub-part 3(b) above.

d. The identity of each person on whose knowledge the Government relies in asserting that the correct value of the applicable asset is the amount set forth in the response to part 3(b) above.

e. The identity of all documents setting forth, supporting or referencing the conclusions stated in response to parts 3(a) or (b) above.

**INTERROGATORY NO. 4:**

If the Government's response to any of Plaintiff's Requests for Admission Nos. 105 through 108 is anything other than an unqualified admission, state the following:

a. The date on which the Government first determined that any amount set forth in such Request for Admission was not the correct amount.

b. The amount the Government contends is the correct amount for the number contested.

c. The identity of each person on whose knowledge the Government relies in asserting that the amount set forth in any such Request for Admission was not correct and that the correct amount is the amount set forth in the response to part 4(b) above.

d. The identity of all documents setting forth, supporting or referencing the conclusions stated in response to parts 4(a) or (b) above.

**INTERROGATORY NO. 5:**

If the Government's response to either of Plaintiff's Requests for Admission Nos. 109 and 110 is anything other than an unqualified admission, state the following:

a. The date on which the Government first determined that DKB Consulting ("DKB") was not correct in stating that the discounted cash flow methodology was "weak" as a "general tool" to value an FCC License.

b. The identity of each person on whose knowledge the Government relies in making that determination.

c. The identity of all documents setting forth, supporting or referencing the Government's position that DKB was not correct in stating that the discounted cash flow methodology was "weak" as a "general tool" to value an FCC license.

**INTERROGATORY NO. 6:**

If the Government's response to either of Plaintiff's Requests for Admission Nos. 111 is anything other than an unqualified admission, state the following:

a. The date on which the Government first determined that DKB was not correct in choosing to use the residual method rather than the discounted cash flow method to value the KIRO-TV FCC License.

b. The identity of the methodology that the Government contends is the correct methodology for valuing the KIRO-TV FCC License.

c. The identity of each person on whose knowledge the Government relies in asserting that DKB was not correct with respect to the valuation methodology employed in its appraisal of the KIRO-TV FCC License and that the correct methodology is as set forth in the response to part 6(b) above.

d. The identity of all documents setting forth, supporting or referencing the conclusions stated in response to parts 6(a) or (b) above.

**INTERROGATORY NO. 7:**

If the Government's response to either of Plaintiff's Requests for Production Nos. 112 and 113 is anything other than an unqualified admission, state the following:

a. The date on which the Government first determined that DKB was not correct in deciding not to assign any value to KIRO-TV goodwill.

b. The identity of each person on whose knowledge the Government relies in asserting that DKB was not correct in its conclusion that no value should be assigned to KIRO-TV goodwill.

c. The identity of all documents setting forth, supporting or referencing the conclusions stated in response to part 7(a) above.

**INTERROGATORY NO. 8:**

If the Government's response to either of Plaintiff's Requests for Admission Nos. 114 and 115 is anything other than an unqualified admission, state the following:

a. The date on which the Government first determined that DKB was not correct in concluding that the KIRO-TV goodwill could not be valued.

b. The identity of each person on whose knowledge the Government relies in asserting that DKB was not correct in concluding that the KIRO-TV goodwill could not be valued.

c. The identity of all documents setting forth, supporting or referencing the conclusions stated in response to part 8(a) above.

**INTERROGATORY NO. 9:**

If the Government currently contends that the KIRO-TV goodwill had value as of February 1, 1995, state the following:

a. The date on which the Government first determined that KIRO-TV had goodwill that, as of February 1, 1995, could be valued.

b. The identity of any methodology or analysis on which the Government relies in determining (i) that KIRO-TV had goodwill as of February 1, 1995, that could be valued, and (ii) the correct value of any goodwill belonging to KIRO-TV as of February 1, 1995.

c. The identity of each person on whose knowledge the Government relies in asserting that the methodology or analysis for determining the value of KIRO-TV goodwill is as set forth in the response to part 9(b) above.

d. The identity of all documents setting forth, supporting or referencing the conclusions stated in response to parts (a) or (b) above.

**INTERROGATORY NO. 10:**

If the Government's response to either of Plaintiff's Requests for Admission Nos. 116, 117, 118 or 119 is anything other than an unqualified admission, state the following:

a. The identity of all opinions, calculations, analyses or methodologies on which the Government relied.

b. The identity of each person on whose knowledge the IRS relied with respect to the opinions, calculations, analyses or methodologies identified in part 10(a).

c. The identity of all documents setting forth, supporting or referencing the opinions, calculations, analyses or methodologies stated in response to part 10(a) above.

**INTERROGATORY NO. 11:**

If the Government's response to either of Plaintiff's Requests for Admission Nos. 120 or 121 is anything other than an unqualified admission, state the following:

a. The date on which the Government first determined that the DKB valuations and/or methodologies for any of the various KIRO-TV assets were not correct.

b. The identity of each person on whose knowledge the Government relies in asserting that the DKB valuations and/or methodologies for any of the various KIRO-TV assets were not correct.

c. The identity of all documents setting forth, supporting or referencing the conclusions stated in response to part 11(a).

**<u>INTERROGATORY NO. 12</u>:**

If the Government's response to any of Plaintiff's Requests for Admission Nos. 1 through 94 is a denial, in whole or in part, based upon a lack of information or knowledge, or if the Government states that it cannot truthfully admit or deny the matter, state the following:

a. All steps taken to make a "reasonable inquiry" regarding the matter as required in RCFC 36(a).

b. The identity of each person with whom the Government has consulted as part of this "reasonable inquiry."

**<u>INTERROGATORY NO. 13</u>:**

State whether the Government agrees with each of the following statements and/or conclusions made by DKB in its December 1998 "Appraisal of the Intangible Assets and Review and Critique of the Tangible Asset Valuations and Valuation of the Associated Properties Third Avenue Productions and KIRO Direct as of February 1, 1995" (the "DKB Appraisal"):

a. That it is improper for an appraiser, when using the residual method of valuation, to begin with the purchase price paid by an unrelated buyer in an arm's length transaction; that the appraiser should instead begin by determining the fair market value of the assets sold "which could in theory be greater or less than the purchase price." DKB Appraisal at 19.

b. That "the benefit or value of [the KIRO-TV] goodwill simply is not quantifiable." *Id*.

c. That the benefit or value of the KIRO-TV goodwill "is likely to be small relative to the value of the other assets of KIRO-TV's business." *Id.*

d. That "[a]s a practical matter, [the KIRO-TV goodwill] cannot be valued." *Id*.

e. That the "discounted cash flow approach to valuing the [KIRO-TV] FCC license" is "weak" as "a general tool." *Id*. at 20.

f. That a valuation of an FCC license that is based upon the discounted cash flow method "should be buttressed by alternative valuation approaches, such as the residual method." *Id*. at 21.

g. That when it comes to the use of a discounted cash flow method for valuing an FCC license, "there are many uncertainties about the reliability of this method." *Id.* at 22.

h. That the discounted cash flow method for valuing an FCC license "if executed fairly would tend to understate FCC license value." *Id.*

i. That "[i]n employing any income method, much depends upon the accuracy, or at least the lack of bias, in the forecast model assumptions." *Id*. at 23.

**<u>INTERROGATORY NO. 14</u>:**

For each negative answer provided in response to Interrogatory No. 13 above, state the following:

a. The date on which the Government first determined that the statement or conclusion by DKB in the DKB Appraisal was incorrect.

b. Each fact on which the Government bases its position that the statement or conclusion made by DKB in the DKB Appraisal is incorrect.

c. The first communication with DMC in which the Government advised DMC that it had determined that DKB was incorrect.

d. What the Government believes is the correct statement or conclusion with respect to the relevant issue for each statement or conclusion.

e. The identity of each person on whose knowledge the Government relies in asserting that the conclusion quoted from the DKB Appraisal is incorrect.

f. The identity of all documents setting forth, supporting or referencing the conclusions stated in response to parts 14(a) through (c) above.

**<u>INTERROGATORY NO. 15</u>:**

For each document attached to Plaintiff's Complaint as an Exhibit B through F, identify each difference between the exhibit attached to the Complaint and the copy of the document in the administrative file on which the Government bases its denial that the exhibit attached to the Complaint is a true and correct copy of the document identified in the Complaint.

**<u>INTERROGATORY NO. 16:</u>**

If the Government's response to either of Plaintiff's Requests for Admission Nos. 122 is anything other than an unqualified admission, state in what ways the document attached to the Request for Admissions differs from the document found in the files of the Government and identify the corresponding document found in the files of the Government.

Respectfully submitted,

s/ Eric C. Olson

Eric C. Olson (Attorney of Record)
Tel. (801) 321-4818
Fax: (801) 321-4893
KIRTON & McCONKIE
60 East South Temple Street, Ste. 1800
Salt Lake City, Utah 84111

November 8, 2006

31-11 929880.3

**CERTIFICATE OF SERVICE**

I certify that service of the foregoing Plaintiff Deseret Management Corporation's Interrogatories to Defendant The United States of America (Set One) has, this 8th day of November 2006, been made on Defendant by hand delivery to the following address

Jennifer Dover Spriggs
Court of Federal Claims Section
U.S. Department of Justice
Tax Division
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044

s/ Eric C. Olson
Eric C. Olson
KIRTON & McCONKIE
60 East South Temple Street, Ste. 1800
Salt Lake City, Utah 84111
Tel. (801) 321-4818
Fax: (801) 321-4893