# UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DESERET MANAGEMENT CORPORATION, | ) |
| Plaintiff, | ) |
| | ) No. 06-86 T |
| v. | ) |
| | ) (Judge Hewitt) |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

## DECLARATION OF MARGO L. STEVENS

MARGO L. STEVENS certifies as follows:

1. I am the Assistant Chief Counsel (Disclosure and Privacy Law) in the Office of the Associate Chief Counsel (Procedure and Administration), Office of Chief Counsel, Internal Revenue Service (Service). The predecessor position to my present position before the Office of Chief Counsel reorganization in 2000 was the position of the Assistant Chief Counsel (Disclosure Litigation). I have assumed the authority previously vested in, or delegated to, the Assistant Chief Counsel (Disclosure Litigation). See IRM 1.11.4.3.1, a true and correct copy of which is attached hereto as Exhibit A. As Assistant Chief Counsel (Disclosure and Privacy Law), I am the official in the Office of Chief Counsel primarily responsible for the management and direction of the Disclosure and Privacy Law Program, which involves planning, directing, and coordinating the legal work of the Chief Counsel's office relating to the disclosure of any and all records or information of the Service and the Office of Chief Counsel. My

EXHIBIT C

specific duties include the assignment, review, and coordination of the work performed on various types of cases handled by the organization's attorney staff, including responsibility for furnishing advice and assistance to other offices within the Office of Chief Counsel on disclosure questions. I am also a principal legal advisor to the Service and the Chief Counsel's office on all disclosure questions and related legal matters pertaining to the Privacy Act, the Freedom of Information Act (FOIA), and the disclosure provisions of the Internal Revenue Code (I.R.C.). I am also responsible for coordinating with the Department of Justice all litigation involving disclosure, and maintaining close coordination with the Office of Governmental Liaison and Disclosure in order to furnish legal assistance on disclosure questions including the processing of requests for the production of documents or testimony. A complete description of the duties for my current position, the Assistant Chief Counsel (Disclosure & Privacy Law), is published at IRM 30.3.2.3.8.4 (July 21, 2005); a true and correct copy is attached hereto as Exhibit B.

2. Pursuant to Delegation Order No. 220 (Rev. 3), signed by the Commissioner of Internal Revenue and effective April 16, 1997, I have been delegated the authority to claim executive privilege on behalf of the Service with respect to its documents or information in actions before this Court. Delegation Order No. 220 (Rev. 3) is a delegation by the Commissioner of Internal Revenue to my predecessor position, the Assistant Chief Counsel (Disclosure Litigation), of the authority vested in the Commissioner by Treasury Department Order 150-10 to claim executive privilege with

respect to Service records and information in actions before Federal courts, including the United States Court of Federal Claims. The Delegation Order specifies the Commissioner's standards and procedures required to be applied, including policy considerations, in making a determination whether to assert executive privilege as a basis for protecting internal or inter-agency records that reflect recommendations, advisory opinions, and deliberations, which comprise the process by which governmental decisions and policies are formulated. A true and correct copy is attached hereto as Exhibit C.

3. In connection with my responsibilities, I am aware of the above-captioned lawsuit in which plaintiff seeks a refund of taxes and interest in the total amount of $28,721,247 for the tax years 1995, 1996, 1997 and 1998. The Commissioner issued a notice of deficiency to plaintiff for these years on April 4, 2005. Plaintiff agreed to the assessment of the determined liabilities while preserving its right to seek a refund. On June 27, 2005, the Service assessed the determined deficiencies of $10,020,882 for 1995, $1,731,599 for 1996, $885,416 for 1997 and $65,272 for 1998. Plaintiff made advance payments of the deficiencies on April 24, 2003. Plaintiff filed Forms 1120X as Claims For Refund for each of the years 1995, 1996, 1997 and 1998. The Service received these Claims For Refund on September 15, 2005, and plaintiff subsequently agreed to the waiver of notification of claim disallowance.

4. Plaintiff filed the complaint in this case on February 3, 2006. The issues in this case include:

(a) Whether the Service correctly allocated sales proceeds from the simultaneous sale of television station assets in 1995 by Bonneville International Holding Company (BHC) and Bonneville International Corporation (BIC) to A.H. Belo Corporation, of the Federal Communications Commission (FCC) authorizations and network affiliation by BHC and the "KIRO Assets" by BIC, and whether the Service correctly treated certain television station assets as part of that sale.

(b) Whether the Service correctly determined Deseret Management Corporation's (DMC) gain on the 1995 sale of the television station assets.

(c) Whether the Service correctly determined the charitable contribution deduction for DMC's consolidated life/non-life taxable income.

(d) Whether the Service correctly applied Treas. Reg. § 1.170A-11T(b)(2) and I.R.C. § 1503(c)[b] in the 1995 and 1997 tax years in determining DMC's allowable Net Operating Loss (NOL) deduction.

5. I am informed by attorney Mark H. Howard in the office of Division Counsel, Small Business/Self-Employed (SBSE) that, as part of this action, plaintiff served on defendant, pursuant to Rules 26 and 34 of the Rules of the United States Court of Federal Claims, Plaintiff's First Request for Production of Documents To Defendant on September 27, 2006 (hereinafter Plaintiff's First Request).

6. I am further informed by Mr. Howard that, in response to Plaintiff's First Request, he caused searches to be conducted, including the review of documents in

agency files, in electronic folders and in personal files of relevant Service and Chief Counsel employees involved in the examination, Appeals review and claim consideration concerning plaintiff for these years. Those searches resulted in the identification of the documents described in this Declaration.

7. I have also been informed by Mr. Howard that he recommends the assertion of executive privilege for documents or portions of certain documents located to date in response to Plaintiff's First Request. Mr. Howard and Lowell Thomas, an attorney in the Office of the Associate Chief Counsel (Procedure and Administration), Administrative Provisions & Judicial Practice Division, following their review of the documents at issue, provided me information regarding the nature of such documents and the context(s) in which they were generated.

8. Based upon the thorough review of the documents at issue by attorneys in the Office of the Division Counsel, Large and Mid-Sized Business (LMSB); in the Office of the Division Counsel (SBSE); in the office of Associate Chief Counsel, Income Tax & Accounting (ITA); and in the Office of Associate Chief Counsel, Procedure and Administration, and my own personal review of these documents, I have determined to assert the claim of executive privilege with respect to certain documents or portions of certain documents more thoroughly described herein below at paragraph 11. Should the Court determine the withheld documents or portions thereof to be relevant and that I.R.C. § 6103 or no other evidentiary privileges apply, I am claiming executive privilege.

9. When the Service asserts a formal claim of executive privilege with respect to predecisional/deliberative documents, the privilege is claimed only to protect those intragovernmental documents reflecting advisory opinions, recommendations, and deliberations that comprise part of the process by which agency decisions and policies are formulated. The agency does not seek to protect documents containing factual matters unless such factual matters are so intertwined with advisory opinions, recommendations, conclusions, or reasoning by Government officials that the factual material cannot be excised from the privileged material or unless the factual matter itself, through its selection and distillation by the author, would reveal the author's mental processes or the agency's deliberations. The privilege is not claimed to protect all opinions, conclusions, mental impressions, and thought processes of Government officials, but only those whose disclosure would interfere with vital Government functions or would cause injury to the quality of agency decisions.

10. When the Service asserts a formal claim of executive privilege with respect to predecisional/deliberative documents, the agency first considers whether the document falls within the scope of the deliberative process privilege; that is, whether the document was generated before the adoption of an agency policy or position and whether the document reflects the give-and-take of the consultation process leading up to the formulation of an agency policy or position. The agency also considers whether the document is recommendatory in nature or is a draft of what may become a final document; whether the document weighs the pros and cons as to the agency's ultimate

adoption of one viewpoint or another; and whether the material is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency. Consequently, the agency considers protecting recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the personal opinions of the writer rather than the policy or position of the agency. These types of documents could inaccurately reflect or prematurely disclose the views of Government officials, suggesting an agency position which is, as yet, only a personal position. Disclosure of documents containing reasons and rationales that were not ultimately relied upon by the agency in reaching its decision(s) could create public confusion.

11. The production of the withheld documents, or portions thereof, more fully described below, would inhibit the frank and honest discussion of legal and policy matters and thus would adversely affect the quality of the Service's decisions and policies. Furthermore, disclosure of the withheld documents, or portions thereof, would reveal opinions of Chief Counsel and Service personnel at many levels at a time when the opinions were not fully developed and the issues were still being debated. None of the withheld documents, or portions thereof, represents a statement of agency policy or a final decision and release of the withheld information could, therefore, result in confusion to the public. Disclosure of the withheld information would adversely affect the Service's ability to administer and enforce the law under the Internal Revenue Code at all levels, from voluntary compliance and examination to appeals and litigation. By

way of example, taxpayers may choose to argue that the Service must defend positions that were not adopted, or that consideration of a position not adopted demonstrates the reasonableness of a taxpayer's position.

Documents potentially responsive to Plaintiffs' First Request, which are subject to a claim of executive privilege, are:

**Bates No. 0001.** Undated handwritten notes of Neal Nelson, Revenue Agent, LMSB, regarding the tax issues he identified arising from the KIRO-TV sales transaction. These notes dealt with discussions with his manager, Richard Druk, Group Manager, Examination, LMSB, and Mark H. Howard, LMSB Senior Counsel and formerly Special Litigation Assistant (Salt Lake City), of I.R.C. § 482 and other issues pertaining to the sale of KIRO-TV, which occurred during IRS Examination personnel's consideration of what issues to raise in the revenue agent's report, which had not yet been finalized. The Service asserts executive privilege for the entire document, as it contains the author's views regarding I.R.C. §§ 1031 and 482, and Treas. Reg. § 1.482-1(j)(2) as they pertain to the issue of allocation of the value between BHC and BIC at a time when the examination of plaintiff had not yet been completed and IRS Examination personnel had not yet made its final determination.

**Bates Nos. 0002-0016.** Draft memorandum, bearing a handwritten date "8/26/03" indicating the date the draft was provided by the author to IRS Examination personnel for the purpose of soliciting their comments and suggestions as to the correctness and completeness of the facts, and the issues that should be addressed, to Richard Druk, regarding "the application of I.R.C. § 338 to deferred payments." The principal drafter was Mark H. Howard. The document contains handwritten notes in the margin of the text at Bates No. 0002, probably by Neal Nelson. The Service asserts executive privilege for the entire document as it is a draft, and not final, memorandum, and further because it consists of the author's selection of facts he deems pertinent to his analysis, his analysis of the transactions and their tax treatment under relevant Code sections, and his recommendations as to how IRS Examination personnel should respond to plaintiff's protest.

**Bates No. 0017.** Handwritten notes, dated November 16, 1998, by Neal Nelson. The Service asserts executive privilege for the entire document as it memorializes the author's discussions with, and the respective views of, two

Service technical experts pertaining to the proper tax treatment of certain of the taxpayer's transactions under I.R.C. § 501(c)(2).

**Bates No. 0018.** Undated handwritten notes by Neal Nelson, reflecting his intention to seek the assistance of Mark H. Howard. The Service asserts executive privilege for the entire document as it identifies several issues for which Mr. Nelson planned to seek assistance and advice from Mr. Howard. The notes also contain the author's opinions regarding tax exempt entities and FCC licensing issues which he believed needed to be addressed by IRS Examination personnel in the examination of plaintiff, which was not yet completed.

**Bates No. 0019.** One e-mail, dated May 10, 2002, from Monty Careswell, IRS Valuation/Economist Specialist, LMSB, to Richard Druk, transmitting a then-current version of his report for Mr. Druk's consideration and comments. The Service asserts executive privilege for a portion of the document (third paragraph) as it raises an issue for which the author seeks assistance before he finalizes his report.

**Bates Nos. 0021-0077.** Undated draft of Form 5701, Notice of Proposed Adjustment, regarding asset valuation, which was attached to the document described as Bates No. 0019. The principal drafter was Monty Careswell. The unsigned draft has handwritten markings throughout, probably by Richard Druk. The Service asserts executive privilege for the entire document as it is a draft of the final Form 5701, which had not yet been completed. Moreover, the draft reflects Mr. Careswell's recommendations as to the proper tax treatment of transactions under examination, that he recommended be included in the revenue agent's report, which had also not yet been finalized.

**Bates Nos. 0096.** Handwritten notes, labeled "memo to file," dated November 13, 2002, by Mark H. Howard. The Service asserts executive privilege for a portion of the document (second paragraph) as it reflects a discussion Mr. Nelson had concerning methods of valuation for television stations that were pertinent to IRS Examination personnel's determination as to the proper tax treatment of plaintiff's transactions under examination, which had not yet been finalized.

**Bates Nos. 0097-0099.** Handwritten notes, labeled "memo to file," memorializing a meeting attended by Neal Nelson, Charles Burnett, Attorney, Area Counsel LMSB (Phoenix), Janet Hughes, Group Manager, Tax Exempt & Government Entities Division (TEGE) (Denver), Nancy Hansen, Revenue Agent, TEGE (Salt Lake City), Robert Toler, Attorney, Area Counsel, TEGE (San Francisco), dated November 13, 2001, by Mark H. Howard. The Service asserts

executive privilege for the entire document as it summarizes the respective participants' legal analyses, views, and recommendations, with respect to certain issues regarding FCC licenses and tax exempt status of license holders, which were discussed during the meeting, at a time IRS Examination personnel had not yet concluded its examination.

**Bates No. 0100.** Handwritten notes, dated November 5, 2001, by Mark H. Howard, summarizing a telephone conversation he had with Neal Nelson. The Service asserts executive privilege for the entire document as it memorializes Mr. Nelson's solicitation of advice from Mr. Howard with respect to the appropriate tax treatment of certain transactions under examination, as well as Mr. Howard's advice as to the appropriate use of information of a third party taxpayer, which may be relevant to the examination. The Service also asserts I.R.C. § 6103 to protect the identity of that third party taxpayer, and the fact of examination of that third party taxpayer. A taxpayer's identity, and fact of examination, are items of return information under I.R.C. § 6103(b)(2)(A). As such, these items constitute return information which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under section 6103(e), secured a consent from the taxpayer under section 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

**Bates Nos. 0101-0102.** Handwritten notes, labeled "memo to file," memorializing a meeting attended by Neal Nelson, Janet Hughes, Nancy Hansen, Erling Holje, Revenue Agent, LMSB (Salt Lake City), and Marion K. Mortensen, Associate Area Counsel, SBSE (Salt Lake City), dated November 13, 2000, by Mark H. Howard. The Service asserts executive privilege for the entire document as it summarizes the participants' respective legal analyses, views, and recommendations as to the appropriate tax treatment of certain transactions, and next steps that might be taken, at a time when IRS Examination personnel were still conducting its examination of plaintiff.

**Bates No. 0103.** Handwritten notes, dated August 30, 2000, by Mark H. Howard, summarizing a telephone conversation with Neal Nelson. The Service asserts executive privilege for the entire document as it memorializes Mr. Nelson's solicitation of advice from Mr. Howard as to the appropriate tax treatment of certain information he had gathered regarding exempt organizations and FCC licenses, at a time when IRS Examination personnel were still conducting its examination of plaintiff.

**Bates No. 0104.** One e-mail, dated April 20, 2000, from Mark H. Howard to Charles Samuels, Attorney, General Litigation Division (presently Collection, Bankruptcy & Summons Division), and Marion Mortensen. The Service asserts

executive privilege to the entire document as it memorializes the solicitation of advice from Mr. Samuels regarding a summons question arising from IRS Examination personnel's interest in obtaining certain information pertinent to the valuation of certain of the plaintiff's assets under examination. It also memorializes additional legal advice that had been solicited regarding the use of valuation information that had been compiled in the course of an examination of a third party taxpayer. The Service also asserts I.R.C. § 6103 to protect the identity of that third party taxpayer, and the fact of examination of that third party taxpayer. A taxpayer's identity, and fact of examination, are items of return information under I.R.C. § 6103(b)(2)(A). As such, these items constitute return information which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under section 6103(e), secured a consent from the taxpayer under section 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

**Bates Nos. 0105-0106.** Handwritten notes, labeled "memo to file," memorializing a meeting with Richard Druk and Neal Nelson, dated April 20, 2000, by Mark H. Howard. It also references a telephone conversation with Charles Samuels. The Service asserts executive privilege for the entire document as it summarizes the participants' respective views, legal analyses, and recommendations regarding various issues, including summons enforcement and statute extension, at a time when the examination of plaintiff was still ongoing.

**Bates No. 0107.** Handwritten notes, dated January 10, 2000, by Mark H. Howard, summarizing a telephone conversation Messrs. Howard, Mortenson, and Neal had with Patricia Donohue, Assistant Regional Counsel (Tax Litigation), Western Region. The Service asserts executive privilege for the entire document as it memorializes strategic discussions about the valuation issues present in the examination, and how best to utilize experts. The document also reflects certain outstanding issues to be resolved concerning the use of valuations performed in examinations of other (unnamed) third party taxpayers.

**Bates No. 0108.** Memorandum, dated January 10, 2000, to the Examination Division, Salt Lake City, to the attention of Richard Druk and Neal Nelson, from Associate Area Counsel, Salt Lake City. The principal drafter is Mark H. Howard, and it conveys his review of, and views respecting, a statement of work that IRS Examination personnel wished to use to obtain additional services from an expert during the examination in light of currently available information and the taxpayer's rebuttal.

**Bates Nos. 0109-0111.** A one-page handwritten note to Mark H. Howard from Neal Nelson, conveying an attached two-page memorandum dated January 7, 2000, to Robert H. (Bob) Schmidt, Engineering Group Manager, LMSB, from Neal Nelson and Richard Druk, regarding their request for additional services from an expert. The Service asserts executive privilege for the entire document as it contains the authors' analysis of the strengths and weaknesses of their current posture in the examination, including their reasons for recommending additional expert services, in light of the taxpayer's rebuttal.

**Bates No. 0112.** Handwritten notes, labeled "memo to file," dated January 7, 2000, by Mark H. Howard. The Service asserts executive privilege for the entire document as it memorializes the solicitation of legal advice by Neal Nelson regarding the viability of seeking additional expert services and usage of valuation information gathered in examinations of (unnamed) third party taxpayers.

**Bates Nos. 0113-0114.** Handwritten notes, labeled "memo to file," dated December 20, 1999, by Mark H. Howard memorializing a meeting with Neal Nelson and a telephone communication with an expert retained by IRS Examination personnel during the examination of plaintiff. The Service asserts executive privilege for the entire document as it contains the respective participants' analyses of, and views regarding, additional work that may be performed by the expert in light of the arguments framed in plaintiff's rebuttal, and what alternative arguments the Service may advance in response.

**Bates No. 0115.** Handwritten notes, dated November 29, 1999, by Mark H. Howard of a telephone conversation with Neal Nelson. The Service asserts executive privilege for the entire document as it relates Mr. Nelson's assessment of an expert's report which was part of plaintiff's rebuttal and his proposed strategy going forward in the examination.

**Bates No. 0116.** Handwritten notes, dated June 16, 1999, by Mark H. Howard of a telephone conversation with Neal Nelson. The Service asserts executive privilege for the entire document as it relates Mr. Nelson's solicitation of legal advice at a point in the examination where the possibility of litigation was raised; in particular, the notes reflect a discussion of issues relating to statute extension and information document requests.

**Bates No. 0125.** Handwritten notes, dated December 9, 1998, by Mark H. Howard of two telephone conversations with Neal Nelson. The Service asserts executive privilege for the entire document as it memorializes Mr. Neal's

solicitation of advice on the authority for IRS Examination personnel to disclose certain data compiled by the expert as part of his valuation services, as well as Mr. Howard's advice based upon his and Marion Mortensen's views.

**Bates Nos. 0126-0128.** Memorandum, dated December 8, 1998, to Examination Division, Salt Lake City, to the attention of Richard Druk and Neal Nelson, from Associate District Counsel, Salt Lake City. The principal drafter is Mark H. Howard and it conveys his views of the expert's draft report. The Service asserts executive privilege for the entire document as it contains the author's views of the sufficiency of the expert's draft report and his recommendations as to what other matters might be addressed in the report before it is finalized.

**Bates No. 0129.** Handwritten notes, labeled "memo to file," dated November 24, 1998, by Mark H. Howard. The Service asserts executive privilege for the entire document as it memorializes a meeting with Neal Nelson, during which the author made recommendations to Mr. Nelson as to what other matters might be addressed in the expert's draft report that he was asked to review before it is finalized.

**Bates No. 0130.** Handwritten notes, dated November 20, 1998, by Mark H. Howard of a telephone conversation with Neal Nelson. The Service asserts executive privilege for the entire document as it memorializes a concern Mr. Nelson pointed out to Mr. Howard in soliciting his views as to the sufficiency of the expert's draft report which was prepared for the use of IRS Examination personnel in the examination.

**Bates No. 0131.** Handwritten notes, dated November 17-19, 1998, by Mark H. Howard of three telephone conversations with Neal Nelson. The Service asserts executive privilege for a portion of the document that reflects Mr. Nelson's solicitation of advice from Mr. Howard with respect to the appropriateness of furnishing certain information to the plaintiff.

**Bates Nos. 0132-0133.** Memorandum, dated April 20, 1998, to Examination Division, Salt Lake City, to the attention of Richard Druk and Neal Nelson, from Associate District Counsel, Salt Lake City. The principal drafter is Mark H. Howard, and it conveys his review of the proposed statement of work prepared by IRS Examination personnel to secure the services of an expert in the examination. The Service asserts executive privilege for the entire document as it contains the author's recommendations for changes in certain language to be used in the statement of work that he believes should be made before IRS Examination personnel finalize the statement of work.

**Bates No. 0134.** Memorandum, dated April 20, 1998, to Bob Schmidt, which was copied to Rich Druk, from Neal Nelson. The Service asserts executive privilege for the entire document as it contains the author's analysis of, and recommendations regarding, the outside appraisal cost estimate for the expert's report.

**Bates Nos. 0135-0136.** A one-page memorandum, dated April 17, 1998, to Bob Schmidt from Neal Nelson, which was copied to Richard Druk, with an attached one-page cost analysis for the expert's services. The Service asserts executive privilege for the entire document as it contains the author's views regarding the merits of securing expert services in the examination of plaintiff, including his analysis of the relative strengths and weaknesses and probable outcome of the examination.

**Bates No. 0137.** Memorandum, dated April 15, 1998, to Bob Schmidt from Neal Nelson, which was copied to Richard Druk. It appears to be an earlier version of the document described as Bates No. 0135. The Service asserts executive privilege for the entire document as it appears to be a draft and it contains the author's views regarding the merits of securing expert services in the examination of plaintiff, including his analysis of the relative strengths and weaknesses and probable outcome of the examination.

**Bates No. 0138.** Handwritten notes, dated March 30, 1998, by Mark H. Howard of a telephone conversation with Neal Nelson. The Service asserts executive privilege for the entire document as it memorializes a concern raised by Bob Schmidt about language in a draft memorandum that Mr. Howard was preparing, and Mr. Schmidt's recommendation as to how that language might be changed before the memorandum is finalized.

**Bates Nos. 0139-0143.** Memorandum, dated March 20, 1998, to Examination Division, Salt Lake City, to the attention of Richard Druk, from Associate District Counsel, Salt Lake City. The principal drafter is Mark H. Howard, regarding IRS Examination personnel's request for the services of an outside expert. The Service asserts executive privilege for the entire document as it contains the author's views of, and recommendations regarding, the strengths and weaknesses of the examination as it was developed up to that point, the merits of securing an outside expert to address the valuation issues raised in the examination, and his assessment of litigating risks should the matter proceed to trial.

**Bates Nos. 0144-0145.** Memorandum, dated March 20, 1998, to Richard Druk from Neal Nelson, copied to Mr. Howard and Bob Heer, Chief, Examination Branch II, LMSB, regarding IRS Examination's request for the services of an outside expert to conduct an appraisal. The Service asserts executive privilege for the entire document as it contains the author's analysis of the strengths and weaknesses of the examination as it was developed up to that point, the merits of securing an outside expert to address the valuation issues raised in the examination, and his assessment of a particular expert's qualifications to perform these services in plaintiff's examination.

**Bates No. 0147.** Memorandum, dated March 11, 1998, to the Associate District Counsel, Rocky Mountain District [Mr. Mortensen], from Mark H. Howard. The Service asserts executive privilege for a portion of the document (the last paragraph) as it contains the author's analysis regarding the case status and his impressions of the outcome of a meeting with plaintiff's representatives.

**Bates Nos. 0148-0152.** Incomplete draft of a memorandum, undated and unsigned, with handwritten "DRAFT" noted on the first page, prepared by Mark H. Howard for the signature of the Associate District Counsel, Salt Lake City, to the Associate District Counsel, Rocky Mountain District, regarding valuation reports. The Service asserts executive privilege for the entire document as it is a draft and it sets forth the facts developed in the examination at that time, which the author deemed material to his consideration of the valuation issues raised by IRS Examination personnel.

**Bates No. 0153.** Handwritten notes, dated March 5, 6, and 10, 1998, by Mark H. Howard of three telephone conversations with Neal Nelson. The Service asserts executive privilege for the entire document as it memorializes suggested courses of action by Mr. Nelson and Art Lucchese, Technical Advisor for Media and Entertainment, LMSB (Chicago), and their solicitation of advice from Mr. Howard on the merits of securing services of an outside expert for an appraisal, and the timing of next actions, in light of the information developed by IRS Examination personnel at that point in the examination.

**Bates Nos. 0154-0156.** Handwritten notes, dated March 5, 1998, by Mark H. Howard of a meeting with Neal Nelson and Richard Druk. The Service asserts executive privilege for the entire document as it contains the participants' respective views of, and the author's legal analysis and views regarding, the proper tax treatment of certain transactions under examination, including a discussion of the merits of, and prospect for, litigation.

**Bates No. 0157.** Handwritten notes, dated February 24, 1998, by Mark H. Howard of a telephone conversation with Neal Nelson. The Service asserts executive privilege for the entire document as it solicits Mr. Howard's advice regarding a conversation Mr. Nelson held with Art Lucchese about the relative merits of certain court decisions as they may impact the issues in the examination of plaintiff.

**Bates No. 0158.** Handwritten notes, dated February 12, 1998, by Mark H. Howard of a telephone conversation with Monty Careswell. The Service asserts executive privilege for the entire document as it memorializes the participants' discussion of FCC licenses and affiliation agreements in the communications industry as they would inform the development of Mr. Careswell's valuation, which he was developing at that time, for use by IRS Examination personnel in the examination of plaintiff.

**Bates No. 0160.** Handwritten notes, dated January 20, 1998, by Mark H. Howard of a telephone conversation with Neal Nelson. The Service asserts executive privilege for the entire document as it memorializes the author's views on intangibles' valuation issues and what issues need to be considered as Monty Careswell proceeds with his appraisal, and IRS Examination personnel continue with the examination of plaintiff.

**Bates Nos. 0161-0162.** Handwritten notes, dated September 8, 1997, by Mark H. Howard of a meeting attended by Messrs. Druk, Nelson, Mortensen, and Howard. The Service asserts executive privilege for the entire document as it memorializes the participants' respective views of the issues IRS Examination personnel had identified at that point in the examination for which legal advice and assistance was likely to be needed, including the possible need for the services of an expert at some later point in the examination.

**Bates Nos. 0166-0169.** One e-mail, dated May 2, 2005, from Charles Burnett to Mark H. Howard, transmitting as attachments his memorandum to the file, dated April 29, 1005 (sic), and an e-mail from Katherine Ankeny, Media Industry Counsel, LMSB (Los Angeles), dated April 27, 2005. The Service asserts executive privilege to the entire document (including attachments) as they memorialize the respective authors' views about, and identification of issues concerning, the appropriate tax treatment of certain transactions by plaintiff.

**Bates No. 0170.** One e-mail, dated April 20, 2005, from Richard Druk to Robert Schmidt, with copies to Edward Johnsen, Program Manager, Natural Resources & Construction, LMSB (Phoenix), Bradley Nance, Revenue Agent, LMSB (Salt

Lake City) and Mark H. Howard. The Service asserts executive privilege for portions of the e-mail that reflect the author's concerns with respect to the valuation issues identified during the examination and during Appeals' consideration of the matter.

**Bates Nos. 0171-0172.** A string of four e-mails, dated April 20, 2005 through April 21, 2005, among Linda Flemins, Media Technical Advisor, LMSB (Los Anglees), Glenn McLoughlin, Senior Attorney, Area Counsel, LMSB (Oklahoma City), Katherine Ankeny, Richard Druk, Robert Schmidt, Bradley Nance, Edward Johnsen, Mark Howard, and Rick Hosler, Associate Area Counsel, LMSB (Phoenix), transmitting the respective authors' views regarding the steps needed to be taken after the notice of deficiency and in anticipation of plaintiff's refund claim being filed in court, and particularly with respect to any additional development of the valuation methodology. The Service asserts executive privilege to the entire document as it contains the authors' views, analyses, and recommendations regarding these matters, before the Service has to defend its position in court.

**Bates Nos. 0174-0178.** A string of five e-mails, dated March 1, 2005, through March 14, 2005, among Katherine Ankeny, Glenn McLoughlin, Monty Careswell, Linda Flemins, Barbara Leonard, Area Counsel, LMSB (Oakland), Kendall Williams, Deputy Area Counsel, LMSB (San Jose), Scott Cline, Valuation Specialist, LMSB (Rochester, NY), Craig Wojay, Attorney, Office of the Associate Chief Counsel (ITA), Ronald Rosen, Associate Area Counsel, LMSB (Los Angeles), Richard Druk, Bradley Nance, Robert Schmidt, Mark H. Howard, and Rick Hosler, transmitting the respective authors' views regarding how Appeals should treat certain transactions in the draft notice of deficiency, which had not yet been issued to plaintiff. The e-mails include as an attachment (Bates Nos. 0176-0178) a summary of a conference call among Messrs Druk, Nance, Schmidt, and Careswell and Madams Ankeny and Flemins, on valuation and related issues. The Service asserts executive privilege for the entire document (including the attachment) as it contains the authors' respective views, analyses, and recommendations regarding these matters, at a time when Appeals personnel were considering these issues and before the notice of deficiency was issued.

**Bates No. 0179.** Handwritten notes, dated March 14, 2005, by Mark H. Howard memorializing a telephone conversation with Rick Hosler in which Mr. Howard briefed Mr. Hosler as to the recent developments on various issues in plaintiff's examination, and they discussed strategies that were being considered in anticipation of plaintiff's filing in court.

**Bates Nos. 0180-0184.** A string of four emails (with attachment), all of which are included in the document described as Bates Nos. 0174-0178. The Service asserts executive privilege for the entire document for the same reasons as set forth for that duplicate document.

**Bates No. 0185.** Handwritten notes, dated March 8, 2005, by Mark H. Howard, memorializing a telephone conversation with Richard Druk. The Service asserts executive privilege for the entire document as it contains the respective participants' views of the pending refund claim and valuation, as well as the views within Appeals and Counsel as to how to proceed in light of the expected lawsuit.

**Bates Nos. 0186-0187.** A string of four e-mails, dated March 1, 2005, through March 7, 2005, among Katherine Ankeny, Glenn McLoughlin, Monty Careswell, Linda Flemins, Barbara Leonard, Kendall Williams, Scott Cline, Craig Wojay, Ronald Rosen, Bradley Nance, Robert Schmidt, Richard Druk, and Mark H. Howard, transmitting the respective authors' views regarding the draft notice of deficiency that was under review and valuation issues. The Service asserts executive privilege for portions of the document that contain the two earliest emails. One e-mail is a duplicate of the document described as Bates No. 0175; the other e-mail reacts to that information and asks the others how they recommend proceeding in light of these issues being raised.

**Bates Nos. 0189-0204.** Memorandum, dated August 28, 2003, to Richard Druk, from Mark H. Howard, regarding plaintiff's protest sent to Appeals. The Service asserts executive privilege for the entire document as it contains the author's legal analysis regarding allocations under I.R.C. § 338 and Treas. Reg. § 1.338-6T as it would apply to plaintiff's transactions under examination, for the use of IRS Examination personnel before they issue any rebuttal to plaintiff.

**Bates Nos. 0206-0221.** Draft of the document described as Bates Nos. 0189-0204. It is undated, with the handwritten notation "MKH EDIT" on the first page and a few handwritten editorial changes throughout. The Service asserts executive privilege for the entire document as it is a draft and it contains the author's legal analysis regarding allocations under I.R.C. § 338 and Treas. Reg. § 1.338-6T as it would apply to plaintiff's transactions under examination, for the use of IRS Examination personnel before they issue any rebuttal to plaintiff.

**Bates Nos. 0223-0238.** Undated draft of the document described as Bates Nos. 0189-0204. The Service asserts executive privilege for the entire document as it is a draft and it contains the author's legal analysis regarding allocations

under I.R.C. § 338 and Treas. Reg. § 1.338-6T as it would apply to plaintiff's transactions under examination, for the use of IRS Examination personnel before they issue any rebuttal to plaintiff.

**Bates No. 0239.** Handwritten notes, dated August 26, 2003, by Mark H. Howard memorializing a telephone conversation with Bradley Nance. The Service asserts executive privilege for the entire document as it reflects Mr. Nance's comments on the draft memorandum regarding allocations under I.R.C. § 338 and Treas. Reg. § 1.338-6T, which Mr. Howard had shared with him, prior to its being finalized and issued.

**Bates Nos. 0240-0254.** Undated draft of the document described as Bates Nos. 0189-0204. It contains the handwritten "Draft" on the first page and there are some handwritten editorial changes throughout the text. The Service asserts executive privilege for the entire document as it is a draft and it contains the author's legal analysis regarding allocations under I.R.C. § 338 and Treas. Reg. § 1.338-6T as it would apply to plaintiff's transactions under examination, for the use of IRS Examination personnel before they issue any rebuttal to plaintiff.

**Bates No. 0255.** First page of a 17-page memorandum to file, dated September 11, 2003, prepared by Monty Careswell, with handwritten computations by Katherine Ankeny at the bottom of the page, regarding plaintiff's protest of the 30-day letter. The Service asserts executive privilege for the entire document as it contains the author's analysis of the appropriate tax treatment of the transactions that were the subject of the examination, prepared in anticipation of the Service's response to plaintiff's protest. The page also reflects Ms. Ankeny's reactions to what Mr. Careswell has prepared.

**Bates Nos. 0256-0257.** Handwritten notes, dated March 1, 2005, by Katherine Ankeny, memorializing a conference call with Glenn McLoughlin, Monty Careswell, Barbara Leonard, Linda Flemins, Kate Ankeny, and Kendall Williams, addressing a number of issues that needed resolution before the Service could issue the notice of deficiency. The Service asserts executive privilege for the entire document as it contains the author's summary of the participants' respective analyses and views of the appropriate valuation methodology for valuing a FCC license, including her own assessment of litigating hazards associated with these views.

**Bates No. 0258.** A string of two e-mails, both dated January 13, 2005, between Glenn McLoughlin and Linda Flemins. The Service asserts executive privilege to the entire document as it reflects the authors' respective analyses and views as

to the strategy the Service should employ on valuation issues, in light of the issues framed in the notice of deficiency issued to plaintiff..

**Bates Nos. 0259-0260.** A string of four e-mails, dated January 13, 2005, through January 18, 2005, among Glenn McLoughlin, Linda Flemins, Kelly Schwarz, Appeals Team Case Leader (Oklahoma City), and Katherine Ankeny, transmitting the respective authors' views regarding the significance of issues framed in the notice of deficiency issued to plaintiff and how the Service should coordinate the development of the matter in anticipation of possible litigation. The Service asserts executive privilege for the entire document as it contains the authors' views as to the strategy the Service should employ in developing (and potentially defending) the valuation issues in this matter.

**Bates Nos. 0261-0263.** A string of six e-mails, dated January 13, 2005, through January 18, 2005, among Glenn McLoughlin, Linda Flemins, Kelly Schwarz, and Katherine Ankeny, transmitting the respective authors' views regarding the significance of issues framed in the notice of deficiency issued to plaintiff and how the Service should coordinate the development of the matter in anticipation of possible litigation. The Service asserts executive privilege for the entire document as it contains the authors' views as to the strategy the Service should employ in developing (and potentially defending) the valuation issues in this matter.

**Bates Nos. 0264-0266.** A string of seven e-mails, dated January 13, 2005, through January 18, 2005, among Glenn McLoughlin, Linda Flemins, Kelly Schwarz, and Katherine Ankeny, transmitting the respective authors' views regarding the significance of issues framed in the notice of deficiency issued to plaintiff and how the Service should coordinate the development of the matter in anticipation of possible litigation. The Service asserts executive privilege for the entire document as it contains the authors' views as to the strategy the Service should employ in developing (and potentially defending) the valuation issues in this matter.

**Bates Nos. 0267-0270.** A string of nine e-mails, dated January 13, 2005, through January 18, 2005, among Glenn McLoughlin, Linda Flemins, Kelly Schwarz, and Katherine Ankeny, transmitting the respective authors' views regarding the significance of issues framed in the notice of deficiency issued to plaintiff and how the Service should coordinate the development of the matter in anticipation of possible litigation. The Service asserts executive privilege for the entire document as it contains the authors' views as to the strategy the Service should employ in developing (and potentially defending) the valuation issues in this matter.

**Bates Nos. 0271-0273.** A string of eight e-mails, dated January 13, 2005, through January 18, 2005, among Glenn McLoughlin, Linda Flemins, Kelly Schwarz, and Katherine Ankeny, transmitting the respective authors' views regarding the significance of issues framed in the notice of deficiency issued to plaintiff and how the Service should coordinate the development of the matter in anticipation of possible litigation. The Service asserts executive privilege for the entire document as it contains the authors' views as to the strategy the Service should employ in developing (and potentially defending) the valuation issues in this matter.

**Bates Nos. 0274-0277.** A string of eight e-mails, dated January 13, 2005, through January 19, 2005, among Glenn McLoughlin, Linda Flemins, Kelly Schwarz, and Katherine Ankeny, transmitting the respective authors' views regarding the significance of issues framed in the notice of deficiency issued to plaintiff and how the Service should coordinate the development of the matter in anticipation of possible litigation. The Service asserts executive privilege for the entire document as it contains the authors' views as to the strategy the Service should employ in developing (and potentially defending) the valuation issues in this matter.

**Bates Nos. 0278-0279.** A string of four e-mails, dated January 25, 2005, through January 27, 2005, among Kelly Schwarz, Thomas Wells, Revenue Agent, Appeals (Omaha), Glenn McLoughlin, and Katherine Ankeny, transmitting the respective authors' views regarding the draft notice of deficiency that was undergoing review before its issuance to plaintiff. The Service asserts executive privilege for the portion of the document that contains the January 27 e-mail as it contains the author's explanation of his strategy regarding the treatment of valuation issues, in anticipation of possible litigation.

**Bates Nos. 0285-0286.** A string of five e-mails, dated January 25, 2005, through February 1, 2005, among Kelly Schwarz, Thomas Wells, Glenn McLoughlin, and Katherine Ankeny, transmitting the respective authors' views regarding the draft notice of deficiency that was undergoing review before its issuance to plaintiff. The Service asserts executive privilege for the portions of the document that contain the January 27 and 28 e-mails as they contain the authors' discussion of strategy regarding the treatment of valuation issues, in anticipation of possible litigation.

**Bates Nos. 0287-0289.** A string of seven e-mails, dated January 25, 2005, through February 2, 2005, among Kelly Schwarz, Thomas Wells, Glenn

McLoughlin, and Katherine Ankeny, transmitting the respective authors' views regarding the draft notice of deficiency that was undergoing review before its issuance to plaintiff. The Service asserts executive privilege for the portions of the document that contain the January 27 through February 2 e-mails as they contain the authors' discussion of strategy regarding the treatment of valuation issues, in anticipation of possible litigation.

**Bates No. 0290.** One e-mail, dated February 11, 2005, from Katherine Ankeny to Linda Flemins. The Service asserts executive privilege to the entire document as it contains the author's comments and suggestions regarding the outside expert's appraisal. The document also includes the author's recommendations as to how the Service might address the issues framed in this examination in training materials and refers to a third party taxpayer, whose examination frames a similar issue. The Service also asserts I.R.C. § 6103 to protect the identity of that third party taxpayer, and the fact of examination of that third party taxpayer. A taxpayer's identity, and fact of examination, are items of return information under I.R.C.§ 6103(b)(2)(A). As such, these items constitute return information which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under section 6103(e), secured a consent from the taxpayer under section 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

**Bates No. 0291.** A string of two e-mails, both dated February 11, 2005, from Katherine Ankeny to Linda Flemins. The Service asserts executive privilege for the portion of the document that is a duplicate of the document described as Bates No. 0290 for the same reasons as set forth for that duplicate document.

**Bates No. 0292.** A string of three e-mails, all dated February 11, 2005, from Katherine Ankeny to Linda Flemins. The Service asserts executive privilege for the portion of the document that is a duplicate of the document described as Bates No. 0290 for the same reasons as set forth for that duplicate document.

**Bates No. 0293.** One e-mail, dated February 16, 2005, from Katherine Ankeny to Glenn McLoughlin, Linda Flemins, Alan Jacobson, Special Trial Attorney, LMSB (Kansas City, MO), Deborah Delgado, and Scott Cline. The Service asserts executive privilege to the entire document as it contains the author's views and concerns regarding the appraisal of the outside expert and her recommendations as to how the Service should proceed once plaintiff responds to the notice of deficiency, which had not yet been issued.

**Bates Nos. 0294-0295.** A string of two e-mails, both dated February 16, 2005, from Katherine Ankeny to Glenn McLoughlin and Craig Wojay, Barbara Leonard,