**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 06-86 T**

**(Judge Emily C. Hewitt)**

**DESERET MANAGEMENT CORPORATION,**

**Plaintiff**

**v.**

**THE UNITED STATES,**

**Defendant**

**DEFENDANT'S MOTION FOR PROTECTIVE ORDER REGARDING THE DEPOSITION OF A NON-TESTIFYING VALUATION EXPERT**

Pursuant to RCFC 26(c), the United States moves for a protective order to quash plaintiff's subpoena to take the deposition of David K. Bivins, a non-testifying valuation expert who advised the Internal Revenue Service during plaintiff's audit.[1] As explained further below,

[1] Plaintiff served its subpoena on November 15, 2006, just after the November 13 telephone conference with the Court at which defendant's counsel advised the Court and plaintiff that defendant would object to the deposition. The subpoena also seeks documents, which, as discussed at the November 29, 2006, hearing, defendant considers responsive to plaintiff's earlier production requests, and intends to produce, subject to applicable privileges and Section 6103 limitations.

Plaintiff also noticed the deposition of Montgomery A. Careswell, an IRS employee and valuation expert who likewise advised the IRS during plaintiff's audit. Plaintiff's counsel advised the Court at the November 29, 2006, hearing that it would not go forward with his deposition until privilege issues are resolved. Tr. 11/29/2006 at 34-35. This motion therefore (continued...)

discovery from Dr. Bivins is inappropriate, because, (1) as contemplated by RCFC 26(b)(2), the deposition would be unreasonably cumulative and duplicative of information and discovery already provided to plaintiff, and the burden of discovery far outweighs the benefits (if any); and (2) plaintiff has made no showing under RCFC 26(b)(4)(B) of "exceptional circumstances under which it is impracticable . . . to obtain facts or opinions on the same subject by other means." As further support for this motion, defendant states as follows:

**THE ISSUES BEFORE THE COURT AND PLAINTIFF'S STATED JUSTIFICATION FOR THE DEPOSITION**

This case primarily involves the valuation and determination of gain on the 1995 sale of the many assets of KIRO, Inc., which operated KIRO-TV in Seattle, Washington. The Internal Revenue Service determined that the assets had an aggregate value of approximately $89 million at the time of sale. Plaintiff reported on its 1995 tax return that they were worth about $52 million, but now claims they were worth only about $41 million. The Internal Revenue Service assessed additional taxes on the gain computed, using its valuation. Plaintiff paid the additional taxes, filed a refund claim, and then filed a Complaint in this Court. Plaintiff is seeking a refund of more than $28 million in taxes and interest.

At the November 29, 2006, hearing, plaintiff's counsel explained that the reason he is seeking to depose Dr. Bivins is that the historical record of his conclusions might impeach the valuation to be presented by the government's experts in the future. As he put it, "the value of history is purely one of impeachment and corroboration." Tr. 11/29/2006 at 30. Plaintiff's counsel elaborated that he wishes to impeach if the United States takes a different (and

---

[1] (...continued)
does not address Mr. Careswell's deposition, but defendant reserves the right to object to it if it is noticed again.

inconsistent) position in this litigation from the position the IRS took during the audit proceedings. *Id*. at 31. He concluded "that's all we would make of Mr. Bivins." *Id*.

**PLAINTIFF HAS NOT DEMONSTRATED THAT THE DEPOSITION IS PERMITTED UNDER RCFC 26**

**1. Dr. Bivins will not testify on behalf of the United States**

As is true in virtually every tax case involving valuation, the Department of Justice retains new valuation experts and does not rely on the experts who advised the IRS during its examination. This is simply a consequence of the Tax Division's view that it is appropriate to take a fresh, independent look at the issues, of the fact that tax refund litigation is a *de novo* proceeding and not a review of IRS administrative proceedings, and of the practical consideration that the IRS's experts, if presented at trial, may not be viewed as independent and objective. Retaining new experts does not reflect disapproval (or approval) of either the methods used or the conclusions reached by the prior experts.

Defendant is currently in the process of retaining experts (a process that unfortunately has been hampered while defendant's counsel has been compelled to respond to plaintiff's numerous motions and discovery requests regarding the IRS's conclusions at the administrative level). Once experts are retained, they will be provided with the underlying factual information the IRS obtained from plaintiff during the audit that may be needed to perform valuations. As is customary, the experts will advise defendant's counsel whether other factual information is needed, so that defendant can request it through discovery.[2]

[2] Plaintiff has advised the Court that it will be relying on at least one of the experts it retained during administrative proceedings; it may also retain new experts. Obviously, plaintiff can provide its experts with any factual information they need to value the KIRO-TV assets.

Dr. Bivins will not be a testifying witness in this case. He was retained by the IRS, and has concluded his work. His opinions, whether right or wrong, are not at issue in this *de novo* proceeding. *See e.g.*, *Cook v. United States*, 46 Fed. Cl. 110, 113 (2000); *International Paper Co. v. United States*, 36 Fed. Cl. 313, 322 (1996); *see also Flamingo Fishing Corp. v. United States*, 31 Fed. Cl. 655, 658 (1994) ("the opinions, impressions, conclusions and reasoning of IRS agents are irrelevant to the validity of the assessment . . . Resolution of those issues depends solely on application of the pertinent law to the facts of this case").

**2. Whether Dr. Bivins' analysis differs from that of defendant's expert witnesses (at trial) has no substantive significance to the proper valuation of the KIRO-TV assets**

Ultimately, the Court will resolve the valuation issues on the basis of the analyses of the experts the parties rely on and present at trial, not on the prior analysis of Dr. Bivins. Plaintiff, of course, bears the burden of proving the correct valuation of the KIRO-TV assets and the exact amount of the refund (if any) to which it is entitled. *Publix Supermarkets, Inc. v. United States*, 26 Cl. Ct. 161, 167 (1992); *see United States v. Janis*, 428 U.S. 443, 440-441 (1976); *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932).

The valuation of assets, like economics generally, is a social science, where opinion and subjectivity play substantial roles. Thus, it would be quite surprising if any two experts arrived at identical valuations of an array of assets. We fully expect there to be differences among the conclusions reached by the IRS's experts, defendant's trial experts, and plaintiff's various experts. As the Court emphasized to plaintiff's counsel during the November 29 hearing, the United States is entirely free not to rely on what the IRS earlier determined and "it doesn't make any difference what happened before." Tr. 11/29/2006 at 30.

### 3. Plaintiff is already in possession of Dr. Bivins' analysis

We certainly recognize that plaintiff is free to fashion its own litigating strategy and to attempt to impeach the government's experts at trial by means it considers effective. As the Court observed at the November 29 hearing, the plaintiff's strategy may take them either over the cliff or up the mountain.[3] Tr. 11/29/2006 at 48. That does not mean, however, that plaintiff should be permitted unlimited "discovery" of Dr. Bivins. *See* RCFC 26(b)(2).

Before this litigation even began, plaintiff had the reports of the IRS's experts, including Dr. Bivins', reflecting the details of their analyses and conclusions. Then, once litigation began, defendant produced 538 additional pages to plaintiff from the IRS's administrative files. We subsequently provided plaintiff with access to seven boxes of administrative files, and provided plaintiff with roughly 1,100 pages plaintiff selected from those boxes. In the meantime, plaintiff also served defendant with requests for production, and (apart from documents withheld on the basis of privilege), defendant produced another 4,800 pages of documents reflecting the administrative process. Plaintiff followed that discovery with its pending Requests for Admission and Interrogatories, containing numerous and very detailed inquiries about the IRS's conclusions as to the valuation of individual assets and whether defendant's position is now different.[4] Defendant will respond to those requests as fully as possible, although it should come as no surprise to plaintiff that defendant's ultimate position on the valuation issues in this

---

[3] To continue the Court's metaphor, plaintiff is climbing a slippery slope if it wishes to impeach based on different positions by the government. Plaintiff apparently has taken different positions itself. Its 1995 corporate return reported that the aggregate fair market value of the assets sold was $52,729,929 (Form 8594), while plaintiff now claims in paragraph 27 of its Complaint that the fair market value of the assets in 1995 was $41,433,000.

[4] Plaintiff described those discovery requests as "extensive" (Opp. to Motion for Reconsideration, 11/11/2006 at 4) and attached them as Exhibits B and C to that filing.

litigation will depend upon the conclusions of its new (yet to be retained) experts and is not now available.

Plaintiff thus has an extraordinary amount of information in its hands and additional information to be delivered soon with which to pursue its strategy of attempting to impeach the government with its different administrative and litigating positions. Indeed, any significant differences between the analyses of the experts would be revealed in their reports alone.[5]

**4. Plaintiff has not demonstrated the "extraordinary circumstances" required by RCFC 26(b)(4)(B)**

RCFC 26(b)(4)(B) also justifies quashing plaintiff's subpoena to depose Dr. Bivins. As plaintiff's counsel confirmed at the November 29 hearing, plaintiff wishes to depose Dr. Bivins about his opinions. There certainly is no need to depose him with regard to learning the facts necessary to value the assets – it was plaintiff's transaction, and the facts have always been

[5] When considering limitations on plaintiff's discovery to pursue its goal of impeaching by showing differences in the government's administrative and litigating positions, the Court also should consider whether the discovery sought has much potential to be meaningful. This case should turn on the strength of the analyses by the testifying experts, not differences with non-testifying experts. As expressed above, we would be surprised if any of the experts in this case, on either side, agree entirely with one another. The government's positions during the audit and this litigation are dependent upon the conclusions of different experts, and neither the government as an institution, nor the experts individually, would seem to be impeached simply because they did not march in lockstep. We therefore consider plaintiff's impeachment strategy to be very dubious. In any event, without a deposition, the thousands of pages in plaintiff's possession will enable it to detail differences among the past and present government experts; Dr. Bivin's deposition doesn't hold much promise to add to that effort. And, according to the subpoena, plaintiff is interested in Dr. Bivins' work as long ago as 1998. It is fair to say that Dr. Bivins' memory about events, and the details of his prior analysis and conclusions, is not improving with the passage of time.

known to it. Without question then, plaintiff is seeking to depose Dr. Bivins in his professional capacity as a valuation expert.[6]

RCFC 26(b)(4)(B) sets a very high bar before a party may discover facts or opinion of a *non-testifying* expert retained by another party. It provides that discovery (by interrogatory or deposition) may be taken only "upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."[7] As we explained at the November 29 hearing, a classic instance of such an exceptional circumstance is when a non-testifying expert had an opportunity to make an examination, but another expert can no longer do so (*e.g.*, a medical examination of a now-deceased patient). 6 *Moore's Federal Practice* § 26.80[2] (3d ed.).

Plaintiff subpoenaed Dr. Bivins without making *any* showing, much less a showing of the exceptional circumstances specified in Rule 26(b)(4)(B). Nor can any such showing be made. Plaintiff obviously is free to retain any expert it wishes to value the assets at issue in this case. It also has knowledge of the underlying facts and can easily make them available to such an expert. Finally, as expressed above, plaintiff already has the reports Dr. Bivins prepared and

---

[6] Plaintiff, nevertheless has not offered to pay Dr. Bivins a reasonable fee for his time. *See* RCFC 26(b)(4)(C).

[7] At the November 29 hearing, plaintiff's counsel claimed that Dr. Bivins' opinions were not prepared in "anticipation of litigation", because he was retained before the lawsuit was filed and mediation might have avoided litigation. Tr. 11/29/2006 at 45. On that basis, plaintiff claims that RCFC 26(b)(4)(B) does not apply. The possibility that litigation may be avoided is not the test for whether an expert was retained in anticipation of litigation. For an expert to be hired "in anticipation of litigation", a lawsuit need not have been filed, and there must have existed more than a remote possibility of litigation. 6 *Moore's Federal Practice* § 26.80[2] (3d ed.). Litigation was more than a "remote" possibility when, as here, the IRS audited a multimillion dollar sale, hired experts, proposed and assessed a large tax adjustment, plaintiff retained opposing experts, submitted a formal "Protest" (comprising several volumes), and requested and received a hearing with the IRS Appeals Division.

thousands of pages of additional documents reflecting the IRS' administrative proceedings. Not only can plaintiff obtain the "fact or opinions on the same subject by other means," but it already has those facts and opinions.

**CONCLUSION**

Defendant has been significantly burdened and prejudiced by plaintiff's unrelenting torrent of motions and discovery requests that is merely cumulative of information in plaintiff's possession. Plaintiff has more than sufficient information needed to pursue its intention to attempt to impeach the United States to the extent the opinions of its trial experts vary from those of the IRS' experts during audit. The case would best move forward toward resolution during the limited discovery period remaining by focusing on conducting the discovery that will allow the parties' *trial* experts to complete their reports and be deposed. Preparing for, engaging in, and traveling to and from a deposition of Dr. Bivins is a waste of both time and money. We also understand that Dr. Bivins attempted to contact the Court to object to his deposition, but understandably was advised that he must file a motion in accordance with the Rules of this Court. *See* Court's November 30, 2006 Order. He now faces hiring an attorney with his own funds. Limited resources should be devoted elsewhere in this case.

Pursuant to RCFC 26(b)(2) and (b)(4)(B), the Court should enter a protective order to preclude Dr. Bivins' deposition.

Respectfully submitted,

s/Jennifer Dover Spriggs
JENNIFER DOVER SPRIGGS
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-0840

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief

s/Steven I. Frahm
Of Counsel

December 1, 2006