IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DESERET MANAGEMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 06-86 T<br><br>Judge Emily C. Hewitt |

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT**

Pursuant to RCFC 26 and 34, Plaintiff Deseret Management Corporation ("DMC"), by and through its counsel of record, hereby requests that Defendant United States of America respond in writing to the following requests for production and produce for inspection and copying the originals or true and correct copies of the requested documents at the offices of Kirton & McConkie, 1800 Eagle Gate Tower, 60 East South Temple, Salt Lake City, Utah 84145 within thirty (30) days after service of this production request.

**DEFINITIONS AND INSTRUCTIONS**

The following Definitions and Instructions are incorporated by reference in the Requests for Production of Documents below:

1. "You" or "your" mean and include the United States, its employees, officers, officials, agents, representatives, attorneys, experts, or anyone acting or purporting to act on behalf of any of the foregoing.

DEFENDANT'S EXHIBIT A

2. The "government" means the United States of America, including the Internal Revenue Service, together with any agents, representatives, employees, or other persons acting or purporting to act on behalf of the United States of America or the Internal Revenue Service.

3. "Document" means all writings or recordings within the scope of RCFC 34, including, but not limited to, papers, notes, records, books and writings; computer disks or files; every other means of recording upon any tangible thing, including any form of communication or representation, including letters, e-mails, words, pictures, sounds or symbols or any combinations thereof, memoranda, (internal, interoffice, or otherwise), notes, shorthand or stenographer's notebooks, correspondence, telexes and telegrams (whether received or sent) and/or minutes or notes of meetings; and recordings, transcriptions, memoranda or notes made of any telephone communication or face-to-face oral conversation between or among any persons, regardless of whether designated "confidential," privilege" or otherwise.

4 "Person" means, in the plural as well as in the singular, any natural person, governmental entity, agency, commission, authority, firm, corporation, partnership, association, joint venture, or other form of legal entity, or any representative thereof.

5 "Relate," "concern," or equivalent language means concerning, reflecting, respective, supporting, contradicting, referring to, relevant to, stating, recording, noting, containing, mentioning, analyzing, discussing, describing, evaluating, evidencing, or constituting.

6. The conjunctives "and" and "or" as used herein shall be construed both conjunctively and disjunctively and each shall include the other wherever such dual construction will serve to bring within the scope of these requests information which would otherwise not be brought within their scope.

7. Use of the singular form of any word includes the plural and vice versa. Use of a masculine, feminine or neutral pronoun includes all genders appropriate to the context. The past tense includes the present tense and vice versa where the clear meaning is not distorted by change of tense.

8. These demands include all documents in your possession, custody or control.

9. In answering, please furnish all information available to you, including, by way of illustration only and not limited to, all information in the possession of your attorneys, advisors, consultants, associates, agents or employees.

10. In the event that more than one copy of a document exists, the original shall be produced, as well as every copy containing any notations or markings of any sort not apparent on the original. Any document kept in files in the ordinary course of business shall be produced in the files or in a manner that preserves and indicates the files from which such document was taken.

11. If you believe a demand, definition, or an instruction is ambiguous, then state the ambiguity and the construction you have used to respond.

12. If you decline to produce any requested information or document on the grounds of attorney-client privilege, work product doctrine, or any other privilege, then identify each document you claim is privileged, provide a detailed description of the nature and purpose of the document, the date of the document, the author(s) and recipient(s) of the document, together with their respective titles, and an explanation for the basis of the privilege asserted.

13. If you are unable to answer any request fully and completely after exercising due diligence to make inquiry and secure the information necessary to do so, because the subject matter is privileged or otherwise unavailable, please so state, answer each such request to the

extent that you deem possible, specify the portion of such request that you claim you are unable to answer fully and completely, state the facts on which you rely to support your contention that you are unable to answer that request fully and completely, and state what knowledge, information and belief you have concerning the unanswered portion of each such request.

14. Pursuant to Rule 26(e) of the RCFC, these document requests are continuing, so as to require prompt supplementation of responses to these requests if additional documents (or information related thereto) are obtained or discovered subsequent to the time documents are produced or responses served.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

DMC requests that the government produce the following documents and things:

**Request for Production No. 1:**

The complete examination report(s) or revenue agent's or revenue officer's report(s) prepared by any person on behalf of the government with regard to the income taxes at issue in this case.

**Request for Production No. 2:**

All work papers relating to the report(s) produced pursuant to Request No. 1 above.

**Request for Production No. 3:**

The transmittal letter prepared in connection with the report(s) produced pursuant to Request No. 1 above.

**Request for Production No. 4:**

All worksheets and attachments accompanying the report(s) produced pursuant to Request No. 1 above, together with all documents, including notes or memoranda, describing or relating to contacts or interviews with persons other than DMC's authorized representatives

acting under an appropriate power of attorney and any history sheets prepared by the government agent(s) detailing the course of his or her examination.

**<u>Request for Production No. 5</u>**

To the extent not provided in response to Request Nos. 2, 3 or 4, all documents relating to the report(s) produced pursuant to Request No. 1 above, including but not limited to all documents reflecting or relating to internal IRS correspondence and communications.

**<u>Request for Production No. 6</u>:**

All documents relating to the February 1, 1995, sale of KIRO-TV by KIRO, Inc. to A.H. Belo Corporation that is a subject of this action (the "KIRO Sale").

**<u>Request for Production No. 7</u>:**

All expert reports prepared by you or on your behalf relating to the valuation of any one or more of the assets of KIRO-TV that were part of the KIRO Sale, including "copies of expert witness reports prepared during the audit for the years in suit" as referenced in Defendant's Initial Disclosures Pursuant to RCFC 26(a) at p. 3.

**<u>Request for Production No. 8</u>:**

All documents that refer or relate to the "Form 5701, Notice of Proposed Adjustment, for Issue No. 41-1," dated September 9, 2002 (hereinafter "NOPA 41-1"), including but not limited to all IRS transmittal and approval documents.

**<u>Request for Production No. 9</u>:**

All documents that (a) reference or relate to the statement in NOPA 41-1 that "the FMV of assets sold by KIRO, Inc. to BELO has been understated and therefore, the gains reported on the sale are understated" (NOPA 41-1 at p. 20) or (b) contain facts or other information on which the government relied in making that statement.

**<u>Request for Production No. 10</u>:**

All documents that refer or relate to the "Appraisal of the Intangible Assets and Review and Critique of the Tangible Asset Valuations and Valuation of the Associated Properties Third Avenue Productions and KIRO Direct," dated December 1998, prepared by DKB Consulting (hereinafter "DKB Report I").

**<u>Request for Production No. 11</u>:**

All documents that the government provided to DKB Consulting in connection with its preparation of DKB Report I including, but not limited to, the "many documents from various sources, including BHC, KIRO-TV, Bond Pecaro and BIA, [that] were supplied to [DKB Consulting] through the IRS" referred to in DKB Report I at p. 5.

**<u>Request for Production No. 12</u>:**

All documents that refer or relate to the "Review and Critique of the Asset Valuation By Charles H. Kadlec, November 1999 and Additional Supporting Analysis for and Defense of The DKB Consulting Report of December, 1998," dated December 2001, prepared by DKB Consulting (hereinafter "DKB Report II").

**<u>Request for Production No. 13</u>:**

All documents that the government provided to DKB Consulting in connection with the preparation of DKB Report II.

**<u>Request for Production No. 14</u>:**

All documents that set forth or evidence any communication between the government and DKB Consulting relating or referring to DKB Report I, DKB Report II or the KIRO Sale, including but not limited to all engagement letters or agreements.

**Request for Production No. 15**:

All documents on which the government relies as a basis for assessing and retaining the amounts of tax deficiency presently in dispute in this action.

**Request for Production No. 16**:

All documents relating to the government's denial as set forth in paragraph 77 of the Answer that "the audit position represents the current Service position," and all documents reflecting or relating to "the current Service position" referenced in paragraph 77 of the Answer.

**Request for Production No. 17**:

All documents reflecting or relating to the government's current position as to what was the fair market value as of February 1, 1995 of the assets transferred by Bonneville International Corporation ("BIC") to A.H. Belo, Inc. ("Belo").

**Request for Production No. 18**:

All documents reflecting or relating to the government's "current position" as to what was the value of the "Pre-Sold Advertising Contracts" referenced in paragraph 66 of your Answer.

**Request for Production No. 19**:

All documents reflecting or relating to the government's "current position" as to what was the value of the "Third Avenue Productions" and "KIRO Direct" referenced in paragraph 77 of the Answer.

Eric C. Olson (Attorney of Record)
Tel. (801) 321-4818
Fax: (801) 321-4893
KIRTON & McCONKIE
60 East South Temple Street, Ste. 1800
Salt Lake City, Utah 84111

September 27, 2006

**CERTIFICATE OF SERVICE**

I certify that service of the foregoing Plaintiff's First Request for Production of Documents to Defendant has, this 27th day of September 2006, been made on Defendant by electronic mail and by mailing a copy thereof, in a postage prepaid envelope, to the following address

Jennifer Dover Spriggs
Court of Federal Claims Section
U.S. Department of Justice
Tax Division
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044

Eric C. Olson
KIRTON & McCONKIE
60 East South Temple Street, Ste. 1800
Salt Lake City, Utah 84111
Tel. (801) 321-4818
Fax: (801) 321-4893