IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DESERET MANAGEMENT CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 06-86 T<br><br>Judge Emily C. Hewitt |

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF CERTAIN DOCUMENTS CLAIMED AS PRIVILEGED -and- REQUEST FOR *IN CAMERA* INSPECTION BY THE COURT**

The plaintiff Deseret Management Corporation ("DMC"), through counsel, moves the court pursuant to RCFC 37(a) for an order compelling the defendant United States of America (the "Government") to produce certain documents responsive to Defendant's First Request for Production of Documents to Defendant ("First Request") as to which the Government has asserted claims of privilege. To facilitate resolution of this Motion, DMC requests that the court conduct an *in camera* review of all documents subject to this Motion.

## INTRODUCTION

DMC seeks production of documents withheld by the Government under various claims of privilege. The grounds for seeking production are as follows:

1. The Government failed to meet basic procedural requirements for claiming the executive privilege with respect to a number of documents.

2. More importantly, the Government has failed to meet the substantive requirements for claiming the executive privilege.

3. The Government's claims of attorney-client privilege fall outside the boundaries of that privilege.

4. The Government erroneously claims work product protection for documents prepared solely for purposes of the audit or for appeals rather than in anticipation of litigation.

5. The Government has not properly invoked the protection of IRC § 6103 for documents purportedly containing "return information" and such documents are subject to a legal exception to that protection under IRC § 6103(h)(4)(B).

DMC is at a substantial disadvantage in addressing the merits of the Government's extensive claims of privilege because, first, the Government has chosen to document its claims of privilege in a piecemeal, inconsistent and ultimately baffling manner, and, second, DMC must rely solely on the cookie cutter descriptions of the documents found in the numerous privilege logs tendered to date. Necessarily, DMC cannot question the Government's assertion of the privilege from a truly informed position because it cannot review the documents. Nonetheless, what the Government has disclosed to date establishes that (a) it has failed to comply with basic requirements for asserting a claim of privilege and (b) from the descriptions of many documents alone it would appear that these documents do not qualify for protection under any privilege.

To resolve this Motion and verify the *bona fides* of the Government's claims, DMC respectfully requests that, as it has in other cases where the Government has asserted claims of privilege, this court review *in camera* the documents at issue. *See Kerr v. United States District Court for the Northern District of California*, 426 U.S. 394, 406 (1976) (endorsing *in camera* review to resolve claims of privilege).

## STATEMENT OF MATERIAL FACTS

The following facts bear upon the resolution of this Motion:

### DMC's First Request for Production of Documents

1. On September 27, 2006, DMC served upon counsel for the Government the First Request. (Attached as Exhibit A to Defendant's Reply in support of Motion for Relief from Deadline, dated December 1, 2006.)

2. The First Request sought production of nineteen separate categories of documents.

### The Government's Production of Documents in This Action

3. To date, the Government has produced documents to DMC as follows:

| Response to: | Date: | Bates Numbers: |
|---|---|---|
| Initial Disclosures | September 15, 2006 | 1-538 |
| Request for review Administrative File | October 30, 2006 | 539-1068 |
| First Request (initial production) | November 15, 2006 | 1069-6367 |
| First Request (second production) | November 22, 2006 | PROD1-607<br>SUPP68-2655 |
| First Request (miscellaneous follow-up) | December 6, 2006<br>Rec'd: December 15, 2006 | various numbers (300 pages) |
| First Request (Bivins) | December 7, 2006 | 2PROD1-3475<br>2SUPP1-1719 |

[**Note**: The Bates numbers listed for the productions of November 15, 2006, November 22, 2006, and December 7, 2006, include numerous pages withheld as part of the claims of privilege at issue in this motion. Thus, the total documents actually produced to DMC, to date, fall well short of the 10,000 plus pages stamped.]

**Privilege Logs Tendered by the Government**

4. The Government served DMC with the following privilege logs, covering over 370 items and several thousand pages:

**Initial Logs**

a. **Privilege Log** Dated: Nov. 15, 2006 141 items[1] Exhibit A

Privileges claimed: Executive – 140 items (only exception: Bates Nos. 426-27)
Section 6103 – 26 items

b. **First Supplemental Log I** Dated: Nov. 22, 2006 75 items[2] Exhibit B

Privileges claimed: Executive (majority), Attorney-Client, Work Product
Section 6103, "Personal"

c. **Second Supplemental Log I** Dated: Dec. 7, 2006 37 items[3] Exhibit C

Privileges claimed: Executive (22), Section 6103 (11), "Personal" (2)

**Additional Versions of Privilege Logs**

d. **Second Supplemental Log II** Dated: Dec. 8, 2006 24 items[4] Exhibit D

e. **Second Supplemental Log III** Dated: Dec. 8, 2006 37 items[5] Exhibit E

---

[1] The Initial Log actually identifies 144 documents. However, the Government does not claim any privilege with respect to three of those documents – Bates No. 108, 179, and 415-416 – and does not provide any reason for why such documents have not been produced. Therefore, DMC does not include those three documents within the class of documents for which the Government has claimed a privilege and requests that the Court order the Government to produce such documents to DMC.

[2] The Government has subsequently produced the 15 documents identified in the First Supplemental Log I for which the Government does not claim any privilege.

[3] The Government has produced the one document identified in the Second Supplemental Log I for which the Government does not claim any privilege.

[4] The Second Supplemental Log II is a variation on the Second Supplemental Log I but does not include 12 documents withheld solely on the basis of I.R.C. § 6103, nor does it include two documents withheld solely on the basis of the personal privacy privilege. This log and the Second Supplemental Log III were telecopied to DMC's counsel on December 8, 2006.

[5] This log includes all items from the Second Supplemental Log I but adopts with only minor changes the descriptions of those documents contained in Second Supplemental Log II.

f. **First Supplemental Log II** Dated: Dec. 6, 2006[6] 141 items[7] Exhibit F

g. **First Supplemental Log III** Dated: Dec. 6, 2006 141 items Exhibit G

**Declarations Asserting the Executive Privilege**

5. The Initial Log included a declaration by Margo L. Stevens, the person to whom the Commissioner of Internal Revenue has delegated the authority to claim executive privilege on behalf of the Internal Revenue Service (the "IRS"). In that declaration, Ms. Stevens asserted the executive privilege as to certain of the documents listed in the Initial Log.

6. First Supplemental Log I, as served on November 22, 2006, did not include any declaration from Ms. Stevens or other person authorized to claim privileges on behalf of the IRS. The Government attempted to remedy this with a declaration of Ms. Stevens, signed on December 5, 2006, and mailed on December 6, 2006, with respect to the documents listed in the First Supplemental Log. (This was the document received by DMC's counsel on December 15, 2006, nine days after to mailing.)

7. Second Supplemental Log I, as served on December 7, 2006, did not include any declaration from Ms. Stevens or other person authorized to claim privileges on behalf of the IRS. However, this production by hand-delivery was a courtesy to DMC's counsel by local counsel for the IRS in advance of the official response by trial counsel the following day. That official response, Second Supplemental Log II, did include Ms. Stevens' declaration. *See* Exhibit D.

---

[6] Although dated December 6, 2006, this log is listed subsequent to the two additional versions of the Second Supplement Log because it was not received by DMC's counsel until December 15, 2006, nine days after mailing. *See* Exhibit H. Timely delivery of discovery mailed by the Government from counsel's Washington, D.C., office to the office of DMC's counsel in Salt Lake City, Utah has become a worrisome challenge to the forward movement of this action as seen by the eleven (11) day delay in delivery of the Government's responses to DMC's request for admissions and first set of interrogatories. *See* Exhibit I. Exhibit J documents counsels' exchange of correspondence on this topic.

[7] First Supplemental Logs II and III provide substantially different descriptions of most of the documents listed in such Logs (as compared both to the First Supplemental Log I and to each other), and for more than 30 of the documents, they contain changes in the privileges claimed (in some cases claiming additional privileges, and in other cases no longer claiming certain privileges).

**Modes of Delivery**

8. In serving discovery and privilege logs in response to the First Request, the Government has utilized nearly every conceivable means of delivery: overnight delivery (November 15 and 22), standard mail (December 6), hand delivery (December 7) and telecopy (December 8). This staggered delivery, as noted above, has caused considerable confusion regarding the bases and scope of the claims of privilege and delayed filing of this Motion.

**Summary**

9. The disjointed, counterintuitive manner in which the Government has chosen to respond to the First Request has yielded seven separate privilege logs, covering hundreds of documents and thousands of pages. Review of these lists does not disclose any discernable rationale behind the order in which the Government has listed the documents. To reduce the confusion inherent in the Government's listing, DMC has done two things:

a. DMC has created a chronological listing of all documents identified in the Privilege Logs, attached hereto as Exhibit K.

b. DMC has also listed, by privilege claimed, all documents identified in the Government's privilege logs as follows:

**Category 1 –** 197 documents as to which the Government asserts *only* a claim of executive privilege. (Exhibit L hereto)

**Category 2 –** 92 documents as to which the Government has claimed *both* executive privilege and at least one other privilege (principally attorney client). (Exhibit M hereto)

**Category 3 –** 38 documents as to which the Government has only claimed a privilege *other than* executive privilege, which DMC contests. (Exhibit N hereto)

10. DMC *does not contest* the Government's claims of privilege as to the six documents listed in Exhibit O hereto.

## ARGUMENT

Each of the privileges that the Government seeks to assert is to be "narrowly construed" because such privileges "derogate a court's inherent power to compel production of relevant evidence. . . ." *Greenpeace v. National Marine Fisheries Service*, 198 F.R.D. 540, 543 (W.D. Wash. 2000). Thus, "a claim of privilege should be interposed judiciously and not casually." *United States v. O'Neill*, 619 F.2d 222, 225 (3d Cir. 1980). The burden is on the Government, not merely to claim a privilege, but to justify application of that privilege. *Kaufman v. City of New York*, 1999 U.S. Dist. LEXIS 5779, at **10-11 (S.D.N.Y. Apr. 22, 1999). Claims of privilege and a party's justification for such claims are subject to careful scrutiny. *Revelle v. Trigg*, 1999 U.S. Dist. LEXIS 890, at **4-5 (E.D. Pa. Feb. 2, 1999). From review of the Privilege Logs alone, it is apparent that, in responding to the First Request, the Government has proceeded in a manner inconsistent with these basic principles and directives.

Several aspects of the Government's response to the First Request contribute to DMC's very skeptical view of the Government's broad claims of privilege: 1) the fitful, confounding production of documents and privilege logs stretching over nearly a month, 2) the failure to adhere in a timely manner to basic procedural requirements, 3) the inconsistencies and contradictions in the contents of the privilege logs, 4) the almost form "cookie cutter" language used to describe what the Government seeks to protect and the support for its privilege claims, and 5) the absurdity manifest when, as an example, the Government seeks under I.R.C. § 6103 to withhold from discovery an article published in Tax Notes Today as well as a published court opinion (*see* SUPP01405-01408). What the Government has placed before DMC (and DMC now places before this Court) does not bespeak a "judicious" assertion of the privileges at issue,

based on careful review and "narrow" construction of the privileges, but rather a freewheeling, "casual" attempt to shield the truth from discovery.

## I. GOVERNMENT HAS FAILED TO MEET THE BASIC PROCEDURAL REQUIREMENTS FOR INVOKING THE EXECUTIVE (DELIBERATIVE PROCESS) PRIVILEGE.

The Government claims "executive privilege" for 290 of the 339 documents identified in the Privilege Logs.[8] In each of her declarations, Ms. Stevens recites that the Government is claiming "executive privilege with respect to predecisional/deliberative documents" (Initial Log at 6, First Supplemental Log II at 2 and Second Supplemental Log II at 2); therefore, it appears that the Government attempts to invoke the deliberative process privilege, which is but one specific type of privilege within the scope of the more general "executive privilege." *See Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1306 n.3 (Fed. Cir. 2006). Consequently, for purposes of this Motion, DMC treats each claim of the general executive privilege as an invocation of the more specific deliberative process privilege.

This court's recent opinion in *Pacific Gas & Co. v. United States*, 70 Fed. Cl. 128 (2006), affirms that, not only must a document meet certain substantive requirements to qualify for the deliberative process privilege, but the Government must first satisfy certain procedural requirements even to seek such protection. As to Category 1 and certain Category 2 documents, the Government has failed to comply with these procedural requirements.

### A. For the Documents Identified Only in First Supplemental Log I, the Government Failed to Invoke the Deliberative Process Privilege *After* Personal Consideration of a Properly Authorized Agency Official.

The deliberative process privilege can only be invoked by "the head of the agency that has control over the requested document," or a person to whom the agency head has delegated

[8] These figures count only once each distinct document identified in the Privilege Logs even though many different versions of certain documents appear multiple time in the various logs.

the authority to invoke the deliberative process privilege. *See id.* at 134. Any such claim must be based on that person's own "personal consideration" of the documents. *See id*. Margo L. Stevens is the individual authorized to invoke the deliberative process privilege on behalf of the IRS. In her original declaration, she bases the claim of a deliberative process privilege upon her personal review of the subject documents. Thus, on the face of the Initial Log, the Government appears to have succeeded in its attempt to satisfy the first element of the procedural requirements for invoking the deliberative process privilege.

The First Supplemental Log I, when served, was not accompanied by any comparable declaration. Rather, it was merely attached as Exhibit E to Defendant's Supplemental Response to Plaintiff's First Request, dated November 22, 2006, which was signed and submitted only by the Government's trial counsel. *See* Exhibit B hereto. Ms. Stevens executed her First Supplemental Declaration on December 5, 2006, nearly two weeks after the First Supplemental Log was served and after the November 22, 2006, deadline set by the Court.

"The deliberative process privilege may not be asserted by government counsel." *Id.* at 135 (citing *Kaufman, supra,* 1999 U.S. Dist. LEXIS 5779, at *10 and *O'Neill*, *supra*, 619 F.2d at 226). This bright-line rule is designed "to ensure that the privilege is invoked as a result of an executive decision about the exigencies of executive management, rather than as a result of trial counsel's decision about a desirable litigation strategy." *Id*. Based on these facts, the only reasonable conclusion to be drawn is that the claims of deliberative process privilege as to documents identified solely in First Supplemental Log I resulted from trial counsel's litigation strategy rather than the mandated executive review and determination.[9] These documents should

[9] The fact that the Second Supplemental Declaration was not executed until after the Second Supplemental Log I had already been tendered implies that those claims of privilege are also driven by litigation strategy rather than the "exigencies of executive management."

not be withheld.[10] "The submission of post hoc determinations by government officials in response to plaintiff's motion to compel which invoke the privilege while stating that documents that have already been withheld by government counsel are indeed subject to the privilege [are] procedurally deficient." *Id*. at 144. Therefore, DMC requests that this court order the Government to produce the Category 1 and Category 2 documents identified solely in First Supplemental Log I (unless this court determines that there is some other applicable privilege).

**B. The Government Has Failed to Provide "Precise and Certain Reasons" for Maintaining the Confidentiality of Requested Documents.**

Not only must the deliberative process privilege be invoked by the properly authorized agency official, but it must also be invoked in the proper manner. Specifically, the person invoking the privilege must "state with particularity what information is subject to the privilege," and must "supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested document." *Id*. (quoting *Walsky Constr. Co. v. United States*, 20 Cl. Ct. 317, 320 (1990)). While the Government has identified and described in Ms. Stevens' declarations the documents that it seeks to protect under the deliberative process privilege, it has failed to give *precise and certain reasons* for why the information in the documents is so confidential that this Court must protect that information by denying production. An invocation of the deliberative process privilege that is "merely a paraphrase of the rationale for the deliberative-process privilege described in the case law" does not satisfy this requirement. *Id*. at 142 (quoting *Resolution Trust Corp. v. Diamond*, 773 F.Supp. 597, 604 (S.D.N.Y. 1991)). The Government has failed to "explain why, particularly, the documents in question here are so sensitive that

[10] These include portions of the documents identified as Bates No. SUPP6-9, SUPP19-35, SUPP36a-36r, SUPP68-84, SUPP92-96, SUPP134-139, SUPP143-144, SUPP227-239, SUPP278-281, SUPP1431-1446, SUPP144701461, SUPP1546-1547, SUPP1671-1672, SUPP1683-1684, SUPP1685 [1], and SUPP01687-1688.

disclosure would compromise the agency decision-making process to such a degree that the public interest in full disclosure is outweighed." *Id*.

Nearly all of the documents that the Government seeks to withhold by citing to the deliberative process privilege relate to the primary factual issue presented in the audit, on appeal and in this action: the value of the approximately two dozen assets transferred in the KIRO-TV sale. Certainly, these documents do not relate to national security or similar "policy" issues that deserve heightened protection. *See, e.g., Alaska v. United States*, 16 Cl. Ct. 5, 11 (1988) (holding that "primarily factual material and communications within or among agencies, when not relating to national security measures, fail to be protected by executive privilege"). The fact that the documents all relate to a transaction that occurred more than a decade ago, and the fact that the documents primarily relate to the proper value of one or more assets involved in a commercial transaction also argue against such documents requiring protection under the deliberative process privilege. *See, e.g., First Heights Bank, F.S.B. v. United States*, 46 Fed. Cl. 827, 829 (holding that "the need for the deliberative process privilege is less acute, where, as here, the privilege relates to events that took place over a decade ago and involved federal agencies . . . which had commercial rather than national security functions").

The Government offers no explanation for why production of these documents would detract from the quality of its decisions or threaten the ability of those making such decisions to engage in open and frank discussions. To the extent it provides any justification for claiming the privilege, such justification only relates to the Government's claim that the documents are pre-decisional and deliberative.

Provided below are a few representative examples of the Government's proffered "reasons" for invoking the deliberative process privilege. These examples – direct quotes from

the Privilege Logs – demonstrate that, while the Government may address the pre-decisional and deliberative aspects of the substantive requirements, there is no attempt to fulfill the procedural requirement of providing the Court with "precise and certain reasons" for why the documents must remain confidential:

> Bates Nos. 126-128: The Service asserts executive privilege for the entire document as it contains the author's views of the sufficiency of the expert's draft report and his recommendations as to what other matters might be addressed in the report before it is finalized.
>
> Bates No. SUPP3: The Service asserts executive privilege for the entire document as it contains the view of Richard Druk on dealings with the exempt.
>
> Bates No. SUPP17: The Service asserts executive privilege to the entire document as it contains the author's analyses, including strengths and weaknesses thereof.
>
> Bates No. SUPP37-40: The Service asserts executive privilege for the entire document as it is a draft and it contains the authors' analysis of issues in preparation for the pre-Appeals conference.
>
> Bates No. SUPP89: The Service asserts executive privilege for the entire document because of its discussion of the valuation of FCC licenses.

The Government has failed to tell this Court *why* it claims the deliberative process. Indeed, most assertions of the deliberative process privilege were made, in the first instance, by trial counsel rather than the proper agency official[11] strongly indicating that the motive is litigation strategy rather than a *bona fide* executive determination to protect confidentiality.

As this Court has held, if the Government fails to satisfy the procedural requirements for invoking the deliberative process privilege:

> The court need not decide whether [such] documents meet the legal standards of the privilege by being pre-decisional and deliberative. Nor is it necessary for the court to

[11] The Initial Log and Second Supplemental Log II, which purport to have been the product of personal review by the proper agency official, invoke the deliberative process privilege for 163 documents comprising 628 pages. In contrast, First Supplemental Log I, which was not the product of personal review by the proper agency official, invokes the deliberative process privilege for 140 documents comprising 1,283 pages, or nearly 70% of the total number of pages the Government seeks to protect from production under the deliberative process privilege.

> balance the competing interests of the parties to determine whether plaintiff has made a showing of compelling need to overcome the qualified deliberative process privilege.

*Pacific Gas*, 70 Fed. Cl. at 136 (internal quotations and citations omitted). Thus, irrespective of whether the documents satisfy the substantive requirements for invoking the deliberative process privilege and therefore might have been protected from production had the privilege been properly invoked, the documents must be produced. Accordingly, DMC requests that the court compel the Government to produce all Category 1 and Category 2 document not protected under a separate privilege.

## II. THE GOVERNMENT HAS FAILED TO SATISFY THE SUBSTANTIVE REQUIREMENTS FOR THE EXECUTIVE (DELIBERATIVE PROCESS) PRIVILEGE.

Even if the Government satisfied the procedural requirements for invoking the deliberative process privilege, such documents can be withheld only if the Government also meets its burden of satisfying the substantive requirements for protection under the deliberative process privilege. The Government cannot clear this substantive hurdle with respect to the majority of the documents for which it has claimed the deliberative process privilege.

The first substantive requirement for a document to be protected by the deliberative process privilege is that the document be both "pre-decisional," and "deliberative." *See id.* at 133 (quoting *Jade Trading, LLC v. United States*, 65 Fed. Cl. 487, 493 (2005)). "To qualify as pre-decisional, the material sought to be protected must address activities antecedent to the adoption of an agency policy." *Id.* (internal quotations and citations omitted). "To qualify as deliberative, the material sought to be protected must address a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Id.* (internal quotations and citations omitted).

Based on the Government's descriptions in the Privilege Logs, it appears that nearly all of the documents for which it claims the deliberative process privilege relate to the valuation of the various assets included in the sale of KIRO-TV.[12] The value of an asset is a factual matter, not a policy or legal matter. While the IRS may view selection of a methodology to value an asset as somehow implicating policy rather than being a process driven by the pursuit of truth, based upon the Government's descriptions (with limited exceptions[13]), it does not appear that the identified documents address which methodology should be used to value the KIRO-TV assets. Thus, the documents do not appear, even arguably, to address policy or legal issues; they simply address factual issues common to the audit and appeals process.

The Government in the Privilege Logs oftentimes fails to specify the "policy" or "legal matter" for which a given document is pre-decisional. It is certain, however, that nearly all of the documents listed relate to the valuation of the various assets included in the sale of KIRO-TV. Since issuance of NOPA 41-1 on September 9, 2002, the Government has not asserted any new position with respect to the value of the twenty-five (25) separate KIRO-TV assets as to which it found that there was a gain subject to taxation. Notwithstanding this silence, most of the documents that the Government seeks to protect under the deliberative process privilege were created after the issuance of NOPA 41-1. In other words, most of the documents the Government seeks to withhold came into being only *after* the Government made its sole determination of value with respect to the various KIRO-TV assets as set forth in NOPA 41-1.

---

[12] The exceptions to this general rule are mainly contained in the Second Supplemental Log, which include several documents that merely relate to the Statement of Work for the Government's contract with DKB Consulting, its outside expert. *See* Bates No. 2SUPP1-6, 2SUPP7-11, 2SUPP34, 2SUPP35 and 2SUPP40. Although DKB Consulting was retained in 1998 as a third-party expert to advise the IRS audit team on the value the KIRO-TV assets, the Government makes no attempt to explain how the Statement of Work for its contract with DKB Consulting, which merely establishes the scope of work to be performed, is both pre-decisional and deliberative to a "policy" or "legal matter" that deserves protection under the deliberative process privilege.

[13] *See* Bates No. 298, 299-300, 301-302, 375-376, 377-378, 379, 380, 382-383, 388-389, 390, 413-414, 417-418, 425, 426-427, 460-464 and SUPP13-16

*See* Exhibit K. Any "deliberative process" evidenced by these documents, has not produced, to date, any discernible position or policy.

The second substantive requirement for protection under the deliberative process privilege is that the party seeking production of the document cannot have a compelling need to receive the documents. The deliberative process privilege, which is qualified rather than absolute, is overcome if the plaintiff makes "a showing of evidentiary need that outweighs the harm that disclosure of such information may cause to the defendant." *Id.* at 134 (quoting *Alaska v. United States*, 16 Cl. Ct. 5, 11 (1988)).

Because DMC is seeking a refund of taxes, it bears the burden not only of establishing that its determination of its tax liability for the years at issue is correct, but first of demonstrating that the IRS's original determination was incorrect. *See, e.g.*, *Q.E.D., Inc. v. United States*, 55 Fed. Cl. 140, 143 (2003) (holding that taxpayer must prove that "the assessment is incorrect and . . . the correct amount of tax . . ."). In this matter, the sole issues that remained unresolved following the audit and appeals process — *i.e.*, the primary points of disagreement between the parties in the determination of DMC's tax liability for the years at issue and consequently *the* central issues in this litigation – were the values of each of the approximately 25 asset categories owned by the taxpayer and transferred for consideration in the KIRO-TV sale. The correct value for *each* of these assets must be determined as the predicate for calculating DMC's total tax liability for the years at issue.

The documents that the Government seeks to protect from production under the deliberative process privilege almost all relate to how the Government came to answer this overarching question of fact: the manner in which the Government has determined or seeks to determine the value of each of the various KIRO-TV assets. Thus, the documents withheld mark

the numerous points on the path leading to the Government's calculation of the amount of DMC's tax liability for the years at issue. DMC's threshold burden at trial is to disprove this number, which necessarily means, to the extent they are in dispute, disproving the component parts.

The Government may contemplate advancing new rationales and different figures at trial, but it has not done so to date. At least until the Government comes up with an expert and that expert advances a new series of values, DMC's ability to review the documents relating to how the IRS determined the values of the KIRO-TV assets upon which it has relied for the past eight years – throughout the audit, appeals and assessment processes – remains essential to DMC's ability to understand and define the Government's position, to prove some or all of the valuations that make up the assessment "incorrect" as well as to counter whatever new position on the facts the Government may offer at trial.

Given the importance of the information potentially contained in the identified documents, and given the fact that DMC cannot obtain this information from any other source, DMC has a compelling evidentiary need that far outweighs any harm that disclosure would cause the Government. In fact, the Government has not identified any harm that it would suffer if it were required to produce the identified documents. Thus, even if this Court finds that the Government has satisfied the procedural requirements for invoking the deliberative process privilege, and even if this Court finds that one or more of the identified documents are both pre-decisional and deliberative, in light of DMC's compelling need to receive the identified documents, this Court should order the Government to produce the Category 1 and 2 documents not protected by another privilege.

## III. THE GOVERNMENT'S CLAIMS OF ATTORNEY-CLIENT PRIVILEGE EXCEED THE SCOPE OF THAT PRIVILEGE.

The government seeks to protect several documents from production under the attorney-client privilege. "The attorney-client privilege only affords protection to confidential communications seeking or rendering legal, rather than business, advice." *Pacific Gas & Electric Co. v. United States*, 69 Fed. Cl. 784, 811 (quoting *United States v. Defazio,* 899 F.2d 626, 635 (7th Cir. 1990)). The fact that an attorney is party to a communication is a necessary, but not a sufficient, condition for the communication to qualify for the attorney-client privilege. "[I]nformation does not become privileged simply because it came from counsel, and when documents or conversations are created pursuant to business matters, they must be disclosed." *Cabot v. United States*, 35 Fed. Cl. 442, 445 (1996) (citing *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993)).

An important aspect of the "business" of the IRS is the determination of taxpayers' tax liability. For taxpayers such as DMC, the IRS conducts this aspect of its business by assembling an audit team to review DMC's tax returns and other relevant documents to determine DMC's tax liability. If the taxpayer does not agree with the audit team's determination, it has the opportunity for review of that determination by an appeals team. It appears that all of the documents for which the IRS claims attorney-client privilege were prepared during the audit and appeals processes. While one or more of the individuals on the audit or appeals teams may have been attorneys (accepting the Government's descriptions at face value), it appears that many of the documents may contain substantial amounts of merely "business" rather than "legal" advice. "For the privilege to apply, 'legal advice must predominate. . . . The privilege does not apply where the legal advice is merely incidental to business advice.'" *Pacific Gas*, 69 Fed. Cl. at 811 (quoting *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484 (D. Kan. 1997)).

Courts have established within the context of tax litigation that the attorney-client privilege does not extend to routine reports of revenue agents and appeals officers prepared in the course of audit, even if they were reviewed by an attorney. *See, e.g.*, *Branerton Corp. v. Comm'r*, 64 T.C. 191, 199 (1975). Therefore, run-of-the-mill audit and appeals documents that are prepared in the ordinary course of the audit and appeals process do not receive the extra protection of the attorney-client privilege simply because one of the individuals who reviews or comments on such reports happens to be an attorney. Only those documents seeking or providing actual legal advice premised on information disclosed in confidence by the client, and not all documents routinely prepared by audit and appeals personnel (who may also be attorneys), qualify for the attorney-client privilege.

The Government bears the burden of establishing that a document qualifies for protection under the attorney-client privilege. *See, e.g.*, *Cabot*, 35 Fed. Cl. at 444 (citing *Fisher v. United States*, 425 U.S. 391 (1976)). From what appears in the Privilege Logs, DMC believes that the Government has not carried this burden. For example, the Government's description of Bates No. SUPP290-291 is as follows:

> A string of four e-mails, dated October 27, 2005, through October 27, 2005, among Thomas Collins, group manager, LMSB (Salt Lake City), John D. Barker, Revenue Agent, LMSB (Ogden, formerly Salt Lake City), and Rachel A. Jaeckel, Revenue Agent (Salt Lake City). The e-mail chain documents a discussion about how to process the refund claims and prepare for the anticipated litigation. The Service asserts attorney client privilege for the entire document because it contains analysis of how to prepare the case in anticipation of litigation.

Based upon this description, it appears that the e-mails were among three persons, none of whom is an attorney. Nonetheless, the Government claims attorney-client privilege for this document. While most of the Government's claims of attorney-client privilege at least identify an attorney as either sender or recipient of the communication, it is impossible for DMC to determine

whether the legal advice, if any, contained in such documents is premised on client confidences or is merely incidental to the business advice or other matters. Likewise, it is impossible for DMC to determine whether the documents are merely the type of ordinary reports generated in the course of the audit and appeals process, for which the fact that one or more of the persons who reviewed such documents is an attorney does not automatically qualify the documents for the attorney client privilege. Therefore, DMC requests that the court review *in camera* each Category 2 document for which the Government has claimed the attorney-client privilege and Supp.290-291 (the only Category 3 document for which the Government has claimed the attorney-client privilege) to determine what portions, if any, of such documents qualify for the attorney-client privilege.

## IV. THE GOVERNMENT SEEKS TO PROTECT UNDER THE WORK PRODUCT PRIVILEGE DOCUMENTS THAT WERE NOT PREPARED IN ANTICIPATION OF LITIGATION.

The work product privilege protects from production only those materials that contain mental impressions, conclusions, or analysis that were prepared in anticipation, or in the course, of litigation. *See RCFC 26(b)(3)*; *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).[14] Thus, the critical inquiry for work product privilege claims is whether a document is prepared in anticipation of litigation, with the Government bearing the burden "to show that the materials at issue were prepared by its representative in anticipation of litigation or for trial." *Pacific Gas*, 69 Fed. Cl. at 791 (quoting *Mims v. Dallas County*, 230 F.R.D. 479, 484 (N.D. Tex. 2005)).

While one can argue, as the Government implicitly does in its First and Second Supplemental Logs, that every audit or appeal anticipates litigation and that documents prepared

[14] As with the deliberative process privilege, the work product privilege is a qualified privilege and can be overcome if the party seeking production is able to show a substantial need for the materials to assist in the preparation of its case and inability to obtain the substantial equivalent of the material sought through alternative means without undue hardship.

during an audit or appeal are therefore prepared in anticipation of litigation, the courts have generally rejected such a broad interpretation of the "in anticipation of litigation" requirement. For example, the Tax Court has ruled that "the audit or examination process is not conducted in anticipation of litigation" unless a matter has been "singled out for litigation." *Bennett v. Comm'r*, 74 T.C.M. 1144 (1997). Consequently, documents routinely generated in the examination process, such as revenue agent's reports, audit workpapers, and appeals agent's reports are only covered by the work product privilege if the agent's work was supervised by counsel or the agent consulted with counsel to support the proposed adjustment. *See e.g.*, *Branerton Corp. v. Comm'r*, 64 T.C. 191, 198-99 (1975); *accord* I.R.M. 35.4.6.3.3.4 (8-11-04).

As this court has stated: "[D]ocuments that are routinely prepared in the ordinary course of business are outside the scope of the work product protection." *Pacific Gas*, 69 Fed. Cl. at 791 (quoting *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 184 (D.N.J. 2003)). Determining the correct amount of a taxpayer's tax liability, through both the audit and appeals processes, constitutes a large portion of the IRS's "ordinary course of business." With the exception of SUPP1677-1678, it appears that all of the documents that the Government claims as work product were prepared in the ordinary course of the IRS's business rather than in the anticipation of litigation. That the audit and appeals processes might someday result in litigation is not enough for documents prepared in such processes to qualify as work product – "the prospect of litigation may not be so remote as to be a 'mere possibility'" – and the fact that the Government may have "anticipate[d] litigation does not qualify an 'in-house' document as work product." *Id*. (internal quotations and citations omitted).

The Government seeks to protect as work product documents that were clearly *not* prepared in anticipation of litigation. The documents that the Government seeks to protect as

work product were prepared as early as 1998 (*see* SUPP134-139, SUPP143-144 and SUPP227-230), with several more prepared in 2000 (*see* SUPP110-114, SUPP119, SUPP120, SUPP124, SUPP125 and SUPP126). These documents were prepared before the IRS issued NOPA 41-1, the 30-day letter or the notice of deficiency. Such documents, which pre-date this litigation by more than five years, can hardly be said to have been prepared in anticipation of litigation that was anything more than a "mere possibility" rather than in the ordinary course of business. The only document prepared after this litigation commenced is SUPP1677-1678. Moreover, there is only one other document that was prepared after the IRS issued the notice of deficiency on July 3, 2005 (SUPP1686), and it appears to be related to the notice of deficiency and the communications industry in general, not potential litigation.

Based upon the Government's descriptions in the Privilege Logs, with the possible exception of SUPP1677-1678, it appears that none of the documents that the Government seeks to protect from production under the work product privilege were prepared or obtained by, or at the direction of, the Government's trial counsel. Instead, they all relate to the preparation of routine audit and appeals documents such as the notice of deficiency, and are prepared as part of the IRS's ordinary course of business, not in anticipation of litigation. DMC believes that the Government has failed to carry its burden of showing that each of the documents it claims are work product was in fact prepared in anticipation of litigation. Therefore, DMC requests this Court to compel the Government to produce to DMC each Category 2 document that the Government claims as work product, unless this Court finds that one or more of such documents is protected by another privilege. Alternatively, DMC requests this Court conduct an *in camera* review of these document to determine what portions of such documents, if any, qualify as work product.

## V. THE GOVERNMENT HAS FAILED PROPERLY TO INVOKE I.R.C. § 6103 WHERE WITHHELD DOCUMENTS ARE UNLIKELY TO CONTAIN "RETURN INFORMATION" AND, IN ANY EVENT, ARE LIKELY SUBJECT TO THE EXCEPTION OF IRC § 6103(h)(4)(B).

Section 6103 of the Internal Revenue Code prohibits the disclosure of any "return" or "return information" absent application of one of the exceptions provided by that statute. *See* I.R.C. § 6103. Thus, determining whether the Government has properly withheld a document requires a two-step analysis: first, determining whether the withheld information constitutes "return information" as defined in I.R.C. § 6103(b)(2)(A); and second, if it does, determining whether any of the exceptions to the non-disclosure rule apply. Here, the Government has failed to address either step of this analysis in the description of the documents provided in its privilege logs.

While I.R.C. § 6103(b)(2)(A) defines "return information" in a broad manner, this definition specifically excludes "data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." I.R.C. § 6103(b)(2)(A) (flush language). While this statutory provision does not allow disclosing return information where the taxpayer's identifying information has simply been redacted from a tax return, the provision does exclude from the anti-disclosure protection of I.R.C. § 6103 information that is in the form of compilations or statistical studies prepared by the IRS from which the taxpayer identifying information can be redacted. *See Church of Scientology v. I.R.S.*, 484 U.S. 9, 17 (1987); *see also Shell Petroleum, Inc. v. United States*, 46 Fed.Cl. 719, 725 (2000) (compiling and producing list of production methods taken from IRS certificates containing return information would not qualify as "return information").

Here, the Government has failed to show that the documents withheld are properly classified as "return information" subject to the anti-disclosure provisions of I.R.C. § 6103, and it

is unlikely that the Government could do so where such information is in the form of appraisals. If the documents are in the form of a compilation, analysis or study produced by the IRS, the IRS can simply redact the taxpayer identifying information before producing the documents. *Id.* DMC obviously has not had the opportunity to review any of these documents to determine whether "return information" is so omnipresent that it would be impossible for the Government to redact such information and produce redacted copies of the documents consistent with the Government's obligations under I.R.C. § 6103. Nonetheless, due to the nature of the IRS's examination of the valuation issues during the audit process, DMC believes that the Government could produce redacted copies of the identified documents without violating its obligations under I.R.C. § 6103.

Further, even if these documents contain "return information," as defined by the statute, DMC believes that such documents would qualify for disclosure under the exception contained within I.R.C. § 6103(h)(4)(B). This provision allows disclosure of "return information" where "the treatment of any item reflected on such return is or may be related to the resolution of an issue in the proceeding or investigation . . .". I.R.C. § 6103(h)(4)(B). Importantly, the application of I.R.C. § 6103(h)(4)(B) does not require a direct relationship between the third party and the taxpayer, it only requires that the treatment of an item be directly related to the resolution of an issue in the proceeding. *See e.g., Shell Petroleum, Inc. v. United States*, 47 Fed. Cl. 812, 818-19 (2000).

The majority of the documents that the Government seeks to protect from production under I.R.C. § 6103 are appraisals of communications property owned by unrelated third party taxpayers (*see* SUPP293-394, SUPP395-512, SUPP513-690, SUPP692-721, SUPP722-843, SUPP1104-1192, SUPP1193-1226, SUPP1227-1240, SUPP1241-1305, SUPP1306-1325,

SUPP1326-1404, 2SUPP202-254, 2SUPP255-354, 2SUPP 355-383, 2SUPP384-418, 2SUPP419-534 and 2SUPP535-599). In this litigation, the central issue is the valuation of the various assets transferred in the sale of KIRO-TV and the effect of those valuations upon DMC's tax liability for the years at issue. The Government's consideration of these appraisal materials in connection with its determination of the value of DMC's assets is an admission that the withheld documents contain information directly related to DMC's reporting of gain for the assets presently in dispute.

Because the dispute between the parties will almost certainly center on the proper method for valuing the assets of a television station, and because the IRS's former expert, Mr. Bivins, stated that he relied upon other appraisals in preparing his own appraisal of the KIRO-TV assets (which appraisals are the appraisals identified in the Second Supplemental Log I), it is imperative that DMC be allowed to review the appraisals and other such documents on which the Government has relied in the past to verify the valuation methodology utilized therein. Such information could be key to DMC's ability to understand the Government's methodology and prove the Government's assessment incorrect. *See, e.g., Beresford v. United States*, 123 F.R.D. 232, 233 (1988) (requiring IRS to disclose, under I.R.C. § 6103(h)(4)(B), internal IRS documents utilized in valuing stock, which contained third party's treatment of stock value). Even though the Government may not rely presently on these valuation appraisals, the Government should be required to produce those documents where the "taxpayer bears the burden to prove the value" and the Government "has already received the advantage of that information by using it to calculate the value." *Id.*

Moreover, without the opportunity to review the documents at issue, it is difficult for DMC to determine the extent to which the documents contain "return information" protected

under I.R.C. § 6103. However, when the Government has invoked I.R.C. § 6103 to withhold documents such as an article published in Tax Notes Today and a published court opinion (*see* SUPP01405-01408), DMC has every reason to believe that, as with the other privileges asserted, the Government is attempting to stretch I.R.C. § 6103 to cover documents that it clearly does not cover. Therefore, to the extent they are not protected by another privilege, DMC requests that the court compel the Government to produce to DMC copies of each document as to which the Government has asserted I.R.C. § 6103 as a basis for not producing such document with the "return information" redacted from such documents. Alternatively, DMC requests that the court undertake an *in camera* review of the documents to verify whether and to what extent the content of such documents implicates the Government's obligations under I.R.C. § 6103.

**CONCLUSION**

The Government's claims of privilege with respect to the documents that are the subject of this Motion cannot stand because of procedural deficiencies or the apparent fact that the documents do not qualify for privilege protection.

Respectfully submitted,

s/ Eric C. Olson

Eric C. Olson (Attorney of Record)
Tel. (801) 321-4818
Fax: (801) 321-4893
KIRTON & McCONKIE
60 East South Temple Street, Ste. 1800
Salt Lake City, Utah 84111

December 20, 2006

**CERTIFICATE OF SERVICE**

I certify that service of the foregoing **PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF CERTAIN DOCUMENTS CLAIMED AS PRIVILEGED AND REQUEST FOR *IN CAMERA* INSPECTION BY THE COURT** has, this 20th day of December 2006, been made on Defendant by electronic mail and by mailing a copy thereof, in a postage prepaid envelope, to the following address

Jennifer Dover Spriggs
Court of Federal Claims Section
U.S. Department of Justice
Tax Division
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044

s/ Eric C. Olson
Eric C. Olson
KIRTON & McCONKIE
60 East South Temple Street, Ste. 1800
Salt Lake City, Utah 84111
Tel. (801) 321-4818
Fax: (801) 321-4893