# Exhibit E

## Government's Second Supplemental Log III

## REVISED PRIVILEGE LOG FOR DECEMBER 7, 2006, PRODUCTION

"Log" of Additional Documents potentially responsive to Plaintiff's First Request for Production of Documents to Defendant which are subject to attorney client privilege, attorney work product privilege, personal privacy and privilege from production by reason of I.R.C. § 6103 include the following:

**Bates No. 2SUPP00001-00006.** A facsimile transmission cover sheet, dated April 15, 1998, with a five-page attachment that is a proposed Statement of Work to be submitted as part of the request for the expert services contract for David Bivins. The cover sheet was sent by Neal Nelson, Revenue Agent (Salt Lake City), to David Bivins, an expert from New York hired by the Service to assist IRS Examination personnel assigned to the examination of plaintiff. The Service asserts executive privilege for the portion of the document that consists of the proposed Statement of Work because it is a draft that was not yet final and reflects matters that were the subject of then ongoing negotiations between the Service and Mr. Bivins with respect to procuring his appraisal services for use in the examination of plaintiff. There are a few handwritten annotations on the draft. The Service does not assert any privilege for the fax cover sheet.

**Bates No. 2SUPP00007-00011.** This undated document is a duplicate of Bates No. 2SUPP00001-00006 with different handwritten annotations that were part of the editing and commenting process before Mr. Bivins was hired. This document does not include a facsimile transmission cover sheet. The handwritten annotations were largely made by Mark H. Howard, Senior Counsel, formerly Special Litigation Assistant (Salt Lake City). One of the editorial comments was made by Neal Nelson. The Service asserts executive privilege for the entire document as it is a draft of the Statement of Work, and it reflects matters that were the subject of then ongoing negotiations between the Service and Mr. Bivins with respect to procuring the latter's appraisal services for use in the examination of the plaintiff.

**Bates No. 2SUPP0012-00033.** This undated and unsigned document starts with a Table of Contents and contains an Executive Summary and attachment "a." The Table of Contents addresses Issues 1 through 4 and identifies the KIRO issue as Issue # 1. The Executive Summary and attachment "a" deal with Issue #1, KIRO-TV. Although the document was prepared by plaintiff, Attachment "a" contains handwritten annotations made by Mr. Bivins, which reflect his analysis and deliberations on the KIRO valuation issue. The Service asserts executive privilege for the entire document as the content of the handwritten annotations, as well as their placement on the document, reflects Mr. Bivins' views of, and reactions to aspects of, plaintiff's presentation of the issues, at a time when the Service was formulating its audit position and prior to the issuance of the notice of deficiency.

**Bates No. 2SUPP00034.** A memorandum, dated April 18, 1998, from David Bivins to Neal Nelson concerning his additional suggestions of language that should be included in the Proposed Statement of Work. The Service asserts executive privilege for the entire document as it contains the recommendations of, and comments by, Mr. Bivins on the work he would be asked to do as an expert on the valuation issue to assist the IRS Examination personnel assigned to the examination of plaintiff, at a time when the Service was formulating its audit position before the issuance of the notice of deficiency. This memorandum was written prior to the finalization of the contract for his appraisal services. (This memorandum was sent after the document described as Bates No. 2SUPP00035.)

**Bates No. 2SUPP00035.** A memorandum, dated April 18, 1998, from David Bivins to Neal Nelson concerning his suggestions of language that should be Included in the Proposed Statement of Work. The Service asserts executive privilege for the entire document as it contains the recommendations of, and comments by, Mr. Bivins on the work he would be asked to do as an expert on the valuation issue to assist the IRS Examination personnel assigned to the examination of plaintiff, at a time when the Service was formulating its audit position before the issuance of the notice of deficiency. This memorandum was written prior to the finalization of the contract for his appraisal services.

**Bates No. 2SUPP00036.** A communication, dated May 8, 1998, from David Bivins to Neal Nelson. The document contains his request for certain information that he needed to perform the valuation services for which he was under contract. The Service asserts executive privilege for the entire document as it contains Mr. Bivins' analysis of, and reasons for seeking, certain information before he could further develop the appraisal for the use of the IRS Examination personnel assigned to the examination of plaintiff, at a time when the Service was formulating its audit position before the issuance of the notice of deficiency.

**Bates No. 2SUPP00037-00039.** One email, dated June 19, 1998, from David Bivins to Neal Nelson, with an attached press release. The Service asserts executive privilege for the portion of the document consisting of the email, as it reflects Mr. Bivins' views regarding the possible impact of the relationship between KIRO and the Seattle Mariners on the appraisal he was developing for the use of IRS Examination personnel assigned to the examination of plaintiff, at a time when the Service was formulating its audit position before the issuance of the notice of deficiency. The Service does not claim any privilege for the attachment to the e-mail and has produced it.

**Bates No. 2SUPP00040.** An undated facsimile transmission cover sheet from David Bivins to Neal Nelson that refers to a one-page attachment (a cost

breakdown), which was not included. The document refers to the proposed Statement of Work and contains Mr. Bivins' suggestions as to draft language in the proposed Statement of Work. The document also is a request to discuss certain questions. The Service asserts executive privilege for the entire document as it reflects draft language for the Statement of Work at a time before it was finalized and raises certain questions for which Mr. Bivins needed answers in order to perform his valuation, and to produce the expert's report, for use by IRS Examination personnel in the course of the examination of plaintiff, at a time when the Service was formulating its audit position before the issuance of the notice of deficiency. This cover sheet was written prior to the finalization of the contract for his appraisal services.

**Bates No. 2SUPP00041-00044.** An undated facsimile transmission cover sheet from David Bivins to Monty Careswell, IRS Valuation/Economist Specialist, LMSB (Denver), with an attachment, dated November 6, 1998. The attachments are preliminary schedules and suggested calculations by Mr. Bivins that were part of the valuation services he was under contract to perform. There are some minor handwritten notations on the attached pages, presumably by Mr. Bivins. The Service asserts executive privilege for the portion of the document that is the attachment as it reflects the expert's work papers and preliminary deliberations on the valuation issue for the use of IRS Examination personnel assigned to the examination of plaintiff, at a time when the Service was formulating its audit position before the issuance of the notice of deficiency. The Service asserts personal privacy privilege for the home telephone number of Monty Careswell listed on Bates No. 2SUPP00041.

**Bates No. 2SUPP00045-00050.** A facsimile transmission cover sheet, dated December 3, 1998, with a five-page attachment (of the same date) that is Monty Careswell's review of Bivins' draft appraisal. The review prepared by Mr. Careswell reflects his comments, and questions posed to Mr. Bivins, on his draft appraisal. There are also handwritten annotations, reflecting reactions and comments by Mr. Careswell. The Service asserts executive privilege for the portion of the document that is the attachment because it includes some content from Mr. Bivins' draft appraisal, at a time when it was not yet final, and reflects the "give-and-take" between the two valuation experts with respect to that draft. The appraisal was being prepared for the use of IRS Examination personnel assigned to the examination of plaintiff, and this document was written at a time when the Service was formulating its audit position prior to the issuance of the notice of deficiency.

**Bates No. 2SUPP00051.** A facsimile transmission cover sheet, dated December 15, 1998, from David Bivins to Monty Careswell and Neal Nelson. The cover sheet refers to a 44-page attachment, but the attachment was not included. The cover sheet contains a summary of further changes and additions made by Mr. Bivins in the draft expert's report for the consideration of Messrs. Careswell and Nelson. The Service asserts executive privilege for the entire document as it

includes some content from Mr. Bivins' draft appraisal, at a time when it was not yet final, and reflects the "give-and-take" among them with respect to that draft. The appraisal was being prepared for the use of IRS Examination personnel assigned to the examination of plaintiff, and this document was written at a time when the Service was formulating its audit position prior to the issuance of the notice of deficiency.

**Bates No. 2SUPP00052.** A facsimile transmission cover sheet, dated December 15, 1998, from David Bivins to Monty Careswell and Neal Nelson. The cover sheet makes reference to an attached five-page Part 2 of a draft expert's report that was not included. (This was sent subsequent to the document described as Bates No. 2SUPP00051.) This cover sheet includes handwritten notes from David Bivens to Monty Careswell that offer his additional changes to Mr. Bivins' draft expert's report. The Service asserts executive privilege for the entire document as it includes some content from Mr. Bivins' draft appraisal, at a time when it was not yet final, and reflects the "give-and-take" among them with respect to that draft. The appraisal was being prepared for the use of IRS Examination personnel assigned to the examination of plaintiff, and this document was written at a time when the Service was formulating its audit position prior to the issuance of the notice of deficiency.

**Bates No. 2SUPP00053-00054.** A facsimile transmission cover sheet, dated May 26, 2000, from David Bivins to Neal Nelson. The cover sheet is a two-page document that memorializes a discussion between Messrs. Bivins and Nelson and provides a status report on the valuation work in progress. The document refers to two invoices as enclosures, but they were not included. The Service asserts executive privilege for the entire document as it includes some content from Mr. Bivins' draft appraisal, at a time when it was not yet final, and reflects the "give-and-take" among them with respect to that draft. The appraisal was being prepared for the use of IRS Examination personnel assigned to the examination of plaintiff, and this document was written at a time when the Service was formulating its audit position and prior to the issuance of the notice of deficiency.

**Bates No. 2SUPP00055-00063.** A facsimile transmission cover sheet, dated November 14, 2001, from Neal Nelson to David Bivins, with attachments including: one page of the Kadlec report, a letter from Bond & Pecaro, and six pages from a document prepared by Lamb Appraisal Associates, Inc. The page of the Kadlec report has Mr. Bivins' handwritten notes consisting of questions and comments. The Service asserts executive privilege for the portion of the document consisting of the page of the Kadlec report, which contains the handwritten notes made by David Bivins as those notes document his views regarding, and his analysis of, this portion of the Kadlec report as they would inform IRS Examination personnel assigned to the examination of plaintiff as to the valuation issue, at a time when the Service was formulating its audit position and prior to the issuance of the notice of deficiency.

**Bates No. 2SUPP00064.** Handwritten notes of David Bivins, dated December 12, 2003. The notes appear to summarize a telephone call with Kelly Schwarz, Appeals Officer (Oklahoma City). The Service asserts executive privilege for the entire document as the notes reflect the "give-and-take" between them as to certain issues that needed further development by the expert. The appraisal was being prepared for the use of IRS Appeals personnel assigned to plaintiff's case, and this document was written at a time prior to the issuance of the notice of deficiency.

**Bates No. 2SUPP00065-00069.** A facsimile transmission cover sheet, dated December 19, 2003, from David Bivins to Kelly Schwarz, transmitting five pages consisting of estimated costs for additional services in January through March 2004 by David Bivins, handwritten notes prepared by David Bivins reflecting his conversation with Kelly Schwarz dealing with Mr. Bivins' appraisal services, and an Amendment of Solicitation/Modification of Contract proposal for Mr. Bivins' expert services. The Service asserts executive privilege for the portion of the document consisting of the handwritten notes, which memorialize the preliminary valuation work Mr. Bivins had in process as he assisted IRS Appeals personnel assigned to plaintiff's case, at a time prior to the issuance of the notice of deficiency.

**Bates No. 2SUPP00070.** Fax cover letter dated June 3, 2004, from David Bivins to Kelly Schwarz. The fax cover letter refers to an 11 page attachment but none was present. The Service asserts no privilege and will produce this document.

**Bates No. 2SUPP00071-00090.** A facsimile transmission cover sheet, dated June 8, 2004, with a 19-page attachment. The attachment is a draft report prepared by David Bivins bearing a June 2004 date. There are some handwritten annotations, presumably by Mr. Bivins. The Service asserts executive privilege for the portion of the document consisting of the attachment, which is a draft report that was not yet final. The appraisal was being prepared for the use of IRS Appeals personnel assigned to plaintiff's case, and this document was written at a time prior to the issuance of the notice of deficiency.

**Bates No. 2SUPP00091-00112.** A facsimile transmission cover sheet, dated June 9, 2004, from Kelly Schwarz to David Bivins with a 21-page attachment. The attachment is a draft of an Appeals Discussion Memorandum, with handwritten annotations, presumably by Mr. Bivins, throughout. (The final version of the Appeals Discussion Memorandum, which is the document described as Bates No. SUPP01549-01576 and Bates No. SUPP01578-01606, was disclosed to plaintiff.) The Service asserts executive privilege for the portion of the document consisting of the attachment as it is a draft and it contains the preliminary views of the issues by IRS Appeals personnel assigned to plaintiff's case at a time prior to the issuance of the notice of deficiency. The Service asserts no privilege for the fax cover sheet and has produced it.

**Bates No. 2SUPP00113-00115.** A facsimile transmission cover sheet, dated June 10, 2004, from Kelly Schwarz to David Bivins with two attached pages. The two pages are labeled as proposed exhibits to the draft Appeals Discussion Memorandum. The Service asserts executive privilege for the portion of the document consisting of the two-page attachment as it is part of the draft Appeals Discussion Memorandum, and it contains the preliminary views of the issues by IRS Appeals personnel assigned to plaintiff's case at a time prior to the issuance of the notice of deficiency.

**Bates No. 2SUPP00116-00124.** A nine-page undated document entitled "Deseret Management Settlement Options," which includes two pages of spread sheets. The Service asserts executive privilege for the entire document as it contains the views and analyses of IRS Appeals personnel assigned to plaintiff's case, including litigating hazards assessments, as they prepared for the mediation conference with plaintiff, scheduled for July 7, 2004.

**Bates No. 2SUPP000125-00127.** A Form 4564, Information Document Request, dated January 26, 1998, signed by Monty Careswell, and dealing with the BIA appraisal of tangible and intangible assets of KIRO-TV. This document has a number of handwritten comments made by David Bivins in the margins of the first page. The Service asserts the executive privilege for the portion of the document consisting of the first page as it contains Mr. Bivins' recommendations for changes in language, given his role as an expert. The Information Document Request sought information for the use of Mr. Bivins and IRS Examination personnel assigned to the examination of plaintiff at a time when the Service was formulating its audit position and prior to the issuance of the notice of deficiency.

**Bates No. 2SUPP000128.** An undated fax cover sheet from David K. Bivins to Monty Careswell. The fax cover sheet refers to an attachment but none was present. The Service asserts the personal privacy privilege for the home telephone number of Mr. Careswell listed on the document. The Service will produce the remainder of this document.

**Bates No. 2SUPP00129.** A fax cover sheet dated December 1 from David K. Bivins to Monty Careswell. The fax cover sheet refers to an attachment but none was present. The Service asserts the personal privacy privilege for the handwritten address of Mr. Careswell found on the document. The Service will produce the remainder of this document.

**Bates No. 2SUPP00130-00201.** An appraisal report prepared by Charles H. Kadlec, plaintiff's appraiser, and dated November 1999, valuing assets of KIRO-TV, Seattle, Washington. This report has numerous handwritten annotations throughout the document by David Bivins. The Service asserts executive privilege for the entire document as the content of the handwritten annotations, as well as their placement on the appraisal, reflects Mr. Bivins' views of, and reactions to aspects of, plaintiff's appraiser's valuation, at a time when the

Service was formulating its audit position and prior to the issuance of the notice of deficiency.

**Bates No. 2SUPP00202-00254.** An appraisal report of assets referenced as Station A, Appraiser 1 in Table 2 of the Appraisal of the Intangible Assets and Review and Critique of the Tangible Asset Valuation dated December 1998, and prepared for the Service by DKB Consulting for the KIRO transaction. The Service asserts I.R.C. § 6103 to protect the identity of an unrelated third party taxpayer and certain appraisal-related information concerning that taxpayer's assets that are referenced in this review report. A taxpayer's identity, and the asset valuation related research material, are items of return information under I.R.C. § 6103(b)(2)(A). As such, these items constitute return information which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under I.R.C. § 6103(e), secured a consent from the taxpayer under I.R.C. § 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

**Bates No. 2SUPP00255-00354.** An appraisal of assets referenced as Station B, Appraiser 2 in Table 2 of the Appraisal of the Intangible Assets and Review and Critique of the Tangible Asset Valuation dated December 1998, and prepared for the Service by DKB Consulting for the KIRO transaction. The Service asserts I.R.C. § 6103 to protect the identity of an unrelated third party taxpayer, and certain appraisal-related information concerning that taxpayer's assets, that are referenced in this review report. A taxpayer's identity, and the asset valuation related research material, are items of return information under I.R.C. § 6103(b)(2)(A). As such, these items constitute return information which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under I.R.C. § 6103(e), secured a consent from the taxpayer under I.R.C. § 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

**Bates No. 2SUPP00355-00383.** An appraisal of assets referenced as Station C, Appraiser 3 in Table 2 of the Appraisal of the Intangible Assets and Review and Critique of the Tangible Asset Valuation dated December 1998, and prepared for the Service by DKB Consulting for the KIRO transaction. The Service asserts I.R.C. § 6103 to protect the identity of an unrelated third party taxpayer, and certain appraisal-related information concerning that taxpayer's assets, that are referenced in this review report. A taxpayer's identity, and the asset valuation related research material, are items of return information under I.R.C. § 6103(b)(2)(A). As such, these items constitute return information which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under I.R.C. § 6103(e), secured a consent from the taxpayer under I.R.C. § 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

**Bates No. 2SUPP00384-00418.** An appraisal of assets referenced as Station D, Appraiser 4 in Table 2 of the Appraisal of the Intangible Assets and Review and Critique of the Tangible Asset Valuation dated December 1998, and prepared for the Service by DKB Consulting for the KIRO transaction. The Service asserts I.R.C. § 6103 to protect the identity of an unrelated third party taxpayer, and certain appraisal-related information concerning that taxpayer's assets, that are referenced in this review report. A taxpayer's identity and the asset valuation related research material are items of return information under I.R.C. § 6103(b)(2)(A). As such, these items constitute return information which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under I.R.C. § 6103(e), secured a consent from the taxpayer under I.R.C. § 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

**Bates No. 2SUPP00419-00534.** Appraisal report referenced as Station E, Appraiser 5 in Table 2 of the Appraisal of the Intangible Assets and Review and Critique of the Tangible Asset Valuation dated December, 1998, and prepared for the Service by DKB Consulting for the KIRO transaction. The Service asserts I.R.C. § 6103 to protect the identity of an unrelated third party taxpayer and certain appraisal-related information concerning that taxpayer's assets that are referenced in this review report. A taxpayer's identity and the asset valuation related research material, are items of return information under I.R.C. § 6103(b)(2)(A). As such, these items constitute return information which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under I.R.C. § 6103(e), secured a consent from the taxpayer under I.R.C. § 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

**Bates No. 2SUPP00535-00599.** Report prepared by David K. Bivins in 1992 for IRS Regional Counsel, New York, to analyze the appraisal identified above as Bates No. 2SUPP00419-00534. The Service asserts I.R.C. § 6103 to protect the identity of an unrelated third party taxpayer, the fact of its examination, and certain appraisal-related information concerning that taxpayer's assets, that are referenced in this report. A taxpayer's identity, the fact of its examination, and the asset valuation related research material are items of return information under I.R.C. § 6103(b)(2)(A). As such, these items constitute return information which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under I.R.C. § 6103(e), secured a consent from the taxpayer under I.R.C. § 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

**Bates No. 2SUPP00600-00601.** An undated, two-page document entitled "Overview of Tangible Assets" dealing with the assets of a radio station of a third party taxpayer. The Service asserts I.R.C. § 6103 to protect the identity of an unrelated third party taxpayer and certain appraisal-related information concerning that taxpayer's assets, that are referenced in this review report. A

taxpayer's identity and the asset valuation related research material, are items of return information under I.R.C. § 6103(b)(2)(A). As such, these items constitute return information which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under I.R.C. § 6103(e), secured a consent from the taxpayer under I.R.C. § 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

**Bates No. 2SUPP00602-00621.** A memorandum dated March 16, 1995, from an employee of a third-party taxpayer with an attached multi-page spread sheet all dealing with advertising contracts. The memorandum also contains a hand-written note back to the original author; this note is dated March 16, 1995. The Service asserts I.R.C. § 6103 to protect the identity of an unrelated third party taxpayer and financial data of that taxpayer referenced in the memorandum and spread sheet. A taxpayer's identity and financial information are items of return information under I.R.C. § 6103(b)(2)(A). As such, these items constitute return information which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under I.R.C. § 6103(e), secured a consent from the taxpayer under I.R.C. § 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

**Bates No. 2SUPP00622-00812.** A fixed asset inventory for a third party taxpayer dated May 21, 1998. The Service asserts I.R.C. § 6103 to protect the identity of an unrelated third party taxpayer, and financial data of that taxpayer referenced in the inventory records. A taxpayer's identity and financial information are items of return information under I.R.C. § 6103(b)(2)(A). As such, these items constitute return information which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under I.R.C. § 6103(e), secured a consent from the taxpayer under I.R.C. § 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

**Bates No. 2SUPP00813.** A letter dated March 31, 2000, from David K. Bivins to an employee of a third-party taxpayer requesting information regarding advertising sales. The Service asserts I.R.C. § 6103 to protect the identity of an unrelated third party taxpayer. A taxpayer's identity and financial information are items of return information under I.R.C. § 6103(b)(2)(A). As such, these items constitute return information which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under I.R.C. § 6103(e), secured a consent from the taxpayer under I.R.C. § 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

**Bates No. 2SUPP00814.** An informal letter dated May 3, 2000, from an employee of a third-party taxpayer to David Bivins transmitting reports on advertising sales. The Service asserts I.R.C. § 6103 to protect the identity of an unrelated third party taxpayer. A taxpayer's identity and financial information are

items of return information under I.R.C. § 6103(b)(2)(A). As such, these items constitute return information which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under I.R.C. § 6103(e), secured a consent from the taxpayer under I.R.C. § 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

**Bates No. 2SUPP00815-01719.** Reports on advertising sales of a third-party taxpayer for the period from January 1, 1996, through December 31, 1996. The Service asserts I.R.C. § 6103 to protect the identity of an unrelated third party taxpayer, and financial data of that taxpayer referenced in the inventory records. A taxpayer's identity and financial information are items of return information under I.R.C. § 6103(b)(2)(A). As such, these items constitute return information which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under I.R.C. § 6103(e), secured a consent from the taxpayer under I.R.C. § 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.