KIRO-TV
Seattle, Washington

# Appraisal of the Intangible Assets and Review and Critique of the Tangible Asset Valuations

and

# Valuation of The Associated Properties Third Avenue Productions and KIRO Direct

As Of February 1, 1995

Prepared For

Internal Revenue Service
Salt Lake City, Utah

by

DKB Consulting
Princeton Junction, New Jersey

December, 1998

remained in the CBS affiliation, and the UPN affiliation's value is not quantifiable due to the lack of network history, and is also nominal. Therefore, we did not value either affiliation.

4) Goodwill: Bond Pecaro stated: "It is well established that broadcast stations do not possess 'goodwill' in the technical sense of the term." We disagree. An established station like KIRO has a significant identity in the community and with its viewers, promotes its call letters, makes charitable donations, supports local sports teams, participates in local business groups and government through its management and staff, etc., and has at least a modicum of viewer loyalty, and all of these have the character of goodwill. Nevertheless, the benefit or value of this goodwill simply is not quantifiable, and it is likely to be small relative to the value of the other assets of KIRO-TV's business. As a practical matter, this asset cannot be valued.

BIA did not refer to goodwill at all, but most likely BIA considers goodwill to be one of the "unidentified intangibles". We have seen BIA appraisals from the early 1980s which valued "FCC license & goodwill" by the residual method.

<u>Critique of the BIA Valuation of the FCC License</u>

Several positive things can be said about BIA's discounted cash flow approach to valuing the FCC license. It is readily defined, its procedures or steps are easy to understand, it addressed the industry's need to have a direct valuation method in arguing for section 1253 treatment, and of course it was BIA's appraisal that was successfully used by the taxpayer in the <u>Jefferson Pilot</u> case.

Nevertheless, our opinion is that their methodology is weak, both as a general tool and in the subject appraisal, and that their execution of the method for their KIRO-TV appraisal is substantially in error, resulting in an overvaluation of the license.

For this purpose, "unidentified assets" also includes identifiable but unquantified or unquantifiable assets, such as the CBS and UPN network affiliations, the KIRO call letters, and other assets thought to be of modest value.

**Total Item #23 $67,810,000**

**Item #24: Going Concern & Goodwill**

Both BIA and Bond Pecaro used similar definitions of the Going Concern asset. According to Bond Pecaro, "Going concern value at KIRO-TV consists of the organizational systems and procedures set in place to ensure the effective operation of the station". BIA valued only the cost of establishing financial, administrative, technical, and sales systems and procedures, while Bond Pecaro included additional components including the development of a business plan which meets investor and lender requirements; locating, selecting, and leasing or purchasing the studio and transmitter sites; FCC filings; and establishing contacts with local public officials and community leaders.

BIA's definition of Going Concern is too narrow, and its valuation of $325,000 is not credible.

The Bond Pecaro approach is based on a credible definition of going concern. While the asset can be defined more broadly, this usually raises problems in valuing the asset as being separate from other assets developed during the operation of the station. Alternatively, going concern (combined with goodwill) is often valued by the residual method, which usually results in relatively higher valuations but produces widely varying results. While the Bond Pecaro valuation appears very conservative, it is well reasoned and we concur with their valuation of $480,000.

We include goodwill by convention as part of this asset.

**Total Item #24 $480,000**