IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DESERET MANAGEMENT CORPORATION | ) | |
| | ) | Case No. 06-86 T |
| | ) | |
| Plaintiff, | ) | Judge Emily C. Hewitt |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S RENEWED MOTION TO COMPEL**

The plaintiff Deseret Management Corporation ("DMC"), through counsel, moves the court pursuant to RCFC 37(a) for an order compelling the defendant United States of America (the "Government") (a) to serve responses to DMC's Requests for Admissions and Interrogatories in compliance with RCFC 33 and 35, and (b) to produce certain documents responsive to Defendant's First Request for Production of Documents to Defendant ("First Request") as to which the Government has asserted claims of privilege. On the latter point, DMC renews its request that the court conduct an *in camera* review of all documents subject to this Motion.

**INTRODUCTION**

This motion replaces and restates, in part, two previous motions to compel brought by DMC with respect to the Government's responses to discovery requests in this action. Two weeks after DMC had filed those motions on December 20 and 22, 2006, W. C. Rapp appeared

as trail attorney for the Government, taking the place of Jennifer Spriggs, who had represented the Government since the commencement of the litigation. When Mr. Rapp challenged the sufficiency of DMC's efforts to resolve the issues raised in the motions with Ms. Spriggs, DMC accepted Mr. Rapp's invitation to seek compromise on the discovery issues, ultimately providing Mr. Rapp with a memorandum outlining the principal discovery issues. Following a status conference on January 19, 2007, this court set a deadline of January 26, 2007, for the Government to respond to the memorandum from DMC's counsel. The Government's January 26, 2007, letter response is attached hereto as Exhibit A. A Supplemental Response to DMC's Requests for Admissions, served with the letter response, is attached as Exhibit B. A further letter from Government counsel addressing the privilege issue with respect to certain documents withheld from production is attached as Exhibit C.

The Government has concluded to withhold all of the documents claimed as privileged. There has been no compromise on this issue. Thus, DMC seeks the court's review *in camera* of the documents so withheld.

The Government's attempt to address the issue raised by its citation to the Coordinated Issue Paper dated May 27, 2005 ("CIP"), set forth in the second January 26, 2007, letter (Exhibit C) falls short of what must be done to resolve the discovery issue arising from citation to the CIP.

In its Supplemental Response, the Government has sought, with mixed success, to correct some of the more conspicuous deficiencies in its responses to the Request for Admissions. Nonetheless, some issues remain as to the Requests for Admissions, and the Government has declined to correct or amend or supplement its responses to interrogatories to conform to RCFC 33 and it Supplemental Response to the Requests for Admissions.

After a brief statement of facts, this Motion specifies first the matters resolved and then identifies the issues that remain for resolution by the court.

**STATEMENT OF FACTS**

Through written discovery, DMC sought to ascertain the facts behind the position taken to date by the Government with respect to the central issue is this action: the fair market value of the assets sold by DMC's subsidiary Bonneville International Corporation ("BIC") to A.H. Belo, Inc. ("Belo") in February 1995. That effort consisted of three documents: 1) a request for production of documents – the First Request – dated September 27, 2006, 2) a request for admissions dated November 8, 2006, and 3) a related set of interrogatories dated November 8, 2006.[1]

The Government's response to the First Request is outlined at paragraphs 3 through 7 of the Motion to Compel re: Privileged Documents filed on December 20, 2006. (That portion of the previous motion consisting of the argument is attached hereto as Exhibit D for ease of reference.) The Government's original responses to DMC's requests for admissions and interrogatories were Exhibits A and B to the December 22, 2006, motion to compel. (DMC has provided the court with a bound copy of this motion, which includes the exhibits noted as attachments.)

**MATTERS RESOLVED**

**Request for Admissions**

The Government's principal concessions in the materials forwarded to DMC on January 26, 2007, relate to DMC's requests for admissions:

[1] DMC also took the deposition of David K Bivins, the expert on whom the Government relied during the audit in claiming a tax deficiency. DMC has also noticed the deposition of Montgomery Careswell, the Internal Revenue valuation specialist who signed NOPA 41-1, and the deposition of the Government under Rule30(b)(6) regarding the CIP. These depositions have been continued pending the disposition of this motion to compel.

**Requests Nos. 1, 2, 5, 6, 9, 10, 13, 14, 17, 18, 21, 22, 25, 26, 29, 30, 33, 34, 37, 38, 41, 42, 45, 46, 49, 50, 53, 54, 57, 58, 61, 62, 65, 66, 69, 70, 73, 74, 77, 78, 81, 82, 85, 86, 89, 90, 93, 94, 97, 98, 101, 102, 105 and 106**

Subject to various corrections and qualifications (*see* Exhibit B hereto at 2-5), the Government has admitted these 52 requests previously denied for lack of knowledge or information.[2]

**Request No. 105**

Based on what is stated in paragraph 3 at page 5 of Exhibit B hereto, the Government appears willing to admit that Belo paid to BIC a specified amount for the sale of the various KIRO-TV assets owned and sold by BIC. This is all that DMC intended by the request for admission.

Exhibit E hereto, a letter dated January 27, 1995, with attached Schedule of Settlement, evidences the calculation of amounts paid and the amount and form of payments by Belo as part of the KIRO-TV sale. From this, it now appears that certain closing adjustments to the overall purchase price pursuant to the agreement between Belo, BIC and Bonneville Holding Company resulted in a total adjusted purchase price for KIRO-TV of $162,212,617, with a payment by wire transfer to BIC of $52,442,546. Given this information, DMC requests that the Government now admit that the amount of money paid by Belo to BIC for the sale of the various KIRO-TV assets owned by BIC was $52,442,546. This admission would suffice to resolve any dispute under Request No. 105.

**Request No. 106**

The Government first states that it denies this request, but proceeds to state that it "presently makes no contrary contention." Ex. B at 6, paragraph 4. Subject to the additional

[2] As noted below, DMC does request that the Government formally amend its responses to the requests for admissions in the form previously employed by the Government so that the record is clear regarding the identity of each request as to which the Government has changed its response.

facts noted above regarding the amount of money paid by Belo to BIC, DMC accepts this admission. DMC does not seek by this request to resolve the broader issues of the fair market value of the assets BIC transferred to Belo or whether amounts paid by Belo to BHC should be taxable to DMC, as suggested by the last sentence in paragraph 4.

**Request No. 107**

From the first two sentences and the last sentence of the Supplemental Response in paragraph 5 of Exhibit B, the Government appears to have provided an unqualified admission, particularly since the Government asserts that to examine into the adjusted basis amount on which the parties have agreed for years would be "unduly burdensome."

**Request No. 108**

This is another denial that turns out to be an admission. The Government affirms that it takes no position regarding BIC's basis in the transferred assets that is contrary to that position stated in the request.

**Request No. 119**

This request is now admitted without a qualification of consequence.

## MATTERS NOT RESOLVED

### I. BECAUSE THE GOVERNMENT HAS REFUSED TO PROVIDE ANY OF THE DOCUMENTS WITHHELD ON A CLAIM OF PRIVILEGE, THE COURT SHOULD CONDUCT AN *IN CAMERA* REVIEW OF THOSE DOCUMENTS.

In its January 26, 2007, letter response (Exhibit A hereto) to the January 12, 2007, memorandum to counsel, the Government declines to produce a single document of the hundreds initially withheld as privileged. As a consequence, DMC must return to the arguments set forth at pages 7 through 25 of its December 20, 2006, Motion to Compel. For ease of reference, these pages are attached as Exhibit F hereto.

The Government references its January 26, 2007, letter regarding use of the CIP (Exhibit C hereto) as laying to rest some aspect of the dispute over the documents it withheld as privileged, as well as the information sought with respect to the CIP by reasons of the Government's responses to Interrogatories Nos. 5, 6 and 11. *See* DMC's December 22, 2006, Motion to Compel (Admissions and Interrogatories) at 6. (Exhibit B to that Motion is the Government's response to the interrogatories.) This is puzzling for two reasons. First, since the appearance of substitute trial counsel for the Government, the parties have exclusively discussed stipulation as the means of resolving issues relating to reference to and use of the CIP. DMC's last proposed language is set forth in the e-mail (attached hereto as Exhibit G), which was forwarded in response to the very language now advanced unilaterally by the Government. The Government's attempt to impose its position and assert that this resolves related discovery issues is not acceptable. Second, the Government has failed either to modify its interrogatory answers referencing the CIP or to identify any documents claimed as privileged that relate solely to the CIP. Thus, it is not at all clear what the Government believes it has resolved with this unilateral statement of intent in its counsel's letter.

On the first point, the Government appears to be preserving the option that its experts could use the CIP in connection with rendering opinions in this action. If the Government is not prepared to abandon this option, DMC must be afforded the opportunity to complete discovery with respect to the CIP in order to ascertain what objective basis, if any, exists for the statements made in the CIP. This inquiry is vital unless the CIP cannot be used for any purpose in this action. The language proposed by DMC for inclusion in a stipulation accomplishes this; the language sought to be imposed on DMC by Government counsel in his letter does not. In the

absence of such a stipulation, DMC needs to ascertain the identity of persons and documents that support the assertions regarding methodology set forth in the CIP.

As to the second point, the references to the CIP in the responses to interrogatories Nos. 5, 6 and 11 remain. These constitute the Government's stated position regarding the subject matter of those interrogatories. If that position has changed, the Government should amend its answers to interrogatories to modify those responses accordingly.

Further, as described below in B.2., the Government has refused to admit that its reliance on the Bivins reports was "complete or exclusive." The documents withheld are thus also needed by DMC to ascertain the identity of any other persons or documents on which the Government relied. Moreover, these documents will inevitably provide information vital for the deposition of Mr. Careswell, who was the author of NOPA 41-1.

Admittedly, if some of the documents withheld as privileged deal solely with the CIP, a stipulation on that topic would make the production of those documents unnecessary. However, DMC does not know what any of the documents withheld on a claim of privilege contain and cannot make that judgment. As can be seen from a brief review of Exhibit K to the December 20, 2006, Motion to Compel, most of the documents identified as privileged date long before the 2005 time period when the CIP was under consideration, and even the documents from that time period rarely focus exclusively on the CIP. (That said, from the descriptions found in the privilege logs, Bates Nos. 367-71 and 421-23 appear to be examples of document dealing exclusively with the CIP.) If the Government believes that its statement in the January 26, 2007, letter resolves some privilege issue, it should identify the particular documents that are no longer responsive to the First Request.

**B. THE INTERROGATORY RESPONSES REMAIN DEFICIENT IN CERTAIN RESPECTS.**

**1. The Party to This Action, the United States Government – Acting For The Internal Revenue Service As The Governmental Agency At Issue – Has Failed To Provide Answers To The Interrogatories Signed "Under Oath" By An Officer Or Agent From The Service.**

The Government's answers to interrogatories are not "signed by the party" "under oath" as required under RCFC 33(b)(1) and (2). Rather, Government counsel simply provided her certification that, "under penalties of perjury, . . . the foregoing responses to interrogatories are true and correct to the best of *my* knowledge." December 22, 2006, Motion to Compel, Exhibit B at 26 (emphasis added). This representation is meaningless, particularly in light of the professions of ignorance and claimed lack of information that characterized the first eleven months of this action.

Notwithstanding the assertions in the Government's January 26, 2007, letter at page 2 (Exhibit A hereto) addressing this topic, Government counsel's statement does not suffice under RCFC 33 as being "under oath" or "by the person making them." Counsel is only authorized under RCFC 33(b)(2) to sign only "objections." The responding party under RCFC 33(a) is the "party served." If the action involves a "governmental agency," then the responding party must be an "officer or agent" of that governmental agency. Here, the Internal Revenue Service (the "Service") is clearly the agency of the United States implicated by subject matter of the action and consequently the entity that must respond to any discovery. The Service is the "party making" the answer and an "officer or agent" of the Service is required to sign the answers "under oath." *See* RCFC 33(b)(1) and (2). When dealing with an organization as massive as the Government or even the Internal Revenue Service, it is imperative that someone truly knowledgeable be singled out as the source of the information provided in discovery. RCFC

33(c) permits answers to be used as evidence at trial, making it clear that the party's sworn answers are required, not the unsworn "best knowledge" of counsel. Answers so rendered have no evidentiary value.

This court should order the Government to serve responses to the interrogatories that are signed under oath by an appropriate officer or agent of the Service.

### 2. The Government's Refusal To Admit Certain Requests For Admissions Mandates A Further Response To The Interrogatories.

The Government's belated admission of several requests, as noted above, resolves some of the grounds to compel discovery advanced in the December 22, 2006, Motion to Compel. That motion focused on the defects in the Government's responses to certain interrogatories where those interrogatories referenced responses to requests for admissions because the admissions were qualified or non-responsive. To the extent that the Government has qualified its response to a request for admission, the interrogatory responses remain deficient.

The Government has supplemented its response to Requests Nos. 117 through 119, each of which seek admissions that the Government relied on the valuation of KIRO-TV assets performed by David K Bivins in preparing NOPA 41-1, the thirty-day letter and the notice of deficiency. The Government now states that it admits each request on the understanding that "the request does not seek admission that reliance was complete or exclusive." Interrogatory No. 10 seeks response only if the Government fails to admit Requests Nos. 117 through 119 without qualification. The Government has qualified its admission so it should amend its response to Interrogatory No 10 to state:

a. The identity of all opinions, calculations, analyses or methodologies on which the Government relied.

b. The identity of each person on whose knowledge the IRS relied with respect to the opinions, calculations, analyses or methodologies identified in part 10(a).

c. The identity of all documents setting forth, supporting or referencing the opinions, calculations, analyses or methodologies stated in response to part 10(a) above.

The supplemental response makes it clear that the Government claims to have relied on someone or something other than Mr. Bivins. DMC is entitled to know who or what that was.

**3. The Government's Answers To Interrogatories Should Conform To The Supplemental Responses To The Request For Admissions.**

With its overhaul of the responses to the requests for admissions, the Government has rendered most of its responses to corresponding DMC interrogatories inapposite. Yet, the Government has not proffered any changes to its interrogatory responses. In connection with obtaining proper sworn answers from an officer or agent of the Service and amending to provide the disclosure sought in Interrogatory No. 10 as noted above, the Government should be required to file amended answers to the interrogatories that correctly state its position, taking into account the Supplemental Responses to Requests for Admissions. Again, the answers to interrogatories are potential evidence and should conform to the changes set forth in the Supplemental Responses.

## CONCLUSION

The Government's claims of privilege with respect to the documents that are the subject of this Motion cannot stand either because of procedural deficiencies in the Government's assertion of the privilege or because of the apparent fact that the documents do not qualify for privilege protection. This court should review *in camera* the documents claimed as privileged to determine whether or not the documents are indeed privileged. The Government should also be

required to file amended answers to the interrogatories, signed under oath by an officer or agent of the Internal Revenue Service.

Respectfully submitted,

s/ Eric C. Olson
Eric C. Olson (Attorney of Record)
Tel. (801) 321-4818
Fax: (801) 321-4893
KIRTON & McCONKIE
60 East South Temple Street, Ste. 1800
Salt Lake City, Utah 84111

January 31, 2007

**CERTIFICATE OF SERVICE**

I certify that service of the foregoing **PLAINTIFF'S RENEWED MOTION TO COMPEL** has, this 31st day of January 2007, been made on Defendant by electronic mail and by mailing a copy thereof, in a postage prepaid envelope, to the following address

W.C. Rapp
Court of Federal Claims Section
U.S. Department of Justice
Tax Division
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044

s/ Eric C. Olson
Eric C. Olson
KIRTON & McCONKIE
60 East South Temple Street, Ste. 1800
Salt Lake City, Utah 84111
Tel. (801) 321-4818
Fax: (801) 321-4893