IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-86 T

(The Honorable Emily C. Hewitt)

DESERET MANAGEMENT CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

SUPPLEMENTAL RESPONSE
OF THE UNITED STATES
TO PLAINTIFF'S REQUESTS FOR ADMISSIONS TO DEFENDANT (SET ONE)

JAN 26 2007

Defendant, the United States, pursuant to Rule 36 of the Rules of the United States Court of Federal Claims, hereby submits the following supplemental response to Plaintiff's Request for Admission to Defendant (Set One). No amendment of Defendant's Response to Plaintiff's Requests for Admissions to Defendant (Set One), served December 8, 2006, is made except as explicitly set out below.

At the outset, defendant notes that the Requests for Admission include several typographic and other errors in setting out information from the Notice of Proposed Adjustment (Issue No. 41-1), dated September 9, 2002 ("NOPA 41-1"), set out below:



01/29/07 10:53 FAX TAX DIVISION 005

A. Requests for Admission 13-16: NOPA 41-1 lists "TV Transmitter Equipment," not "Transmitter Equipment" as the asset with the referenced value.

B. Requests for Admission 57-60: NOPA 41-1 lists "Program Production Mat. & Sup./Tape Stock," not "Program Prod. Material/Tape Stock" as the asset with the referenced value.

C. Requests for Admission 73-76: NOPA 41-1 lists "Advertiser Relationship" not "Customer Relationship Asset" as the asset with the referenced value.

D. Requests for Admission 77-80: NOPA 41-1 lists "Pre-sold Commercial Advertising Contracts," not "Pre-Sold or Acquired Advertising Contracts" as the asset with the referenced value.

E. Requests for Admission 97-100: NOPA 41-1 lists "Going Concern Value/Goodwill," not "Going Concern (Operations)" as an asset. NOPA 41-1 lists the value as $480,000, not $489,000, as set out in Requests for Admission Nos. 97-99.

F. Requests for Admission 101-104: NOPA 41-1 lists "Syn. Program & Feature File Lic. Agreement," not "Acquired Program Contracts" as the asset with the referenced value.

Defendant's responses to the Requests for Admission are to be read as if the original Requests were modified to reflect these corrections.



01/29/07 10:53 FAX TAX DIVISION 006

1. With respect to Requests for Admission Nos. 1, 5, 9, 13, 17, . . . . . 101, each of which is in the following form:

> The IRS's determination of DMC's tax liability set forth in the Thirty-Day Letter was based upon a value, as of February 1, 1995, of $[specific dollar value] for the assets identified in NOPA 41-1 as the "[specific item]" of KIRO-TV.

defendant withdraws so much of its response as is headed "**Response:**" and substitutes the following:

> **Response:** Without waiver of the foregoing objection, defendant admits the requested admission.

2. With respect to Requests for Admission 2, 6, 10, 14, 18, . . . . . . 102, each of which is in the following form:

> The amount of taxes collected from DMC based upon the Thirty-Day Letter was premised upon a value, as of February 1, 1995, of $[specific dollar value] for the assets identified in NOPA 41-1 as the "[specific item]" of KIRO-TV.

defendant withdraws so much of its response as is headed "**Response:**" and substitutes the following:

> **Further Objection**: Defendant is unfamiliar with the usage suggesting that an "amount of taxes" was collected from DMC "based upon the Thirty-Day Letter." Federal taxes are paid to satisfy assessments made by the Internal Revenue Service after either the filing by the taxpayer of a return or amended return, otherwise by agreement of the taxpayer, or after issuance of a Notice of

Deficiency, sometimes called a "90-Day Letter." No assessment is made as a consequence of a "Thirty-Day Letter," and thus we do not understand the notion of taxes being paid "based upon" one. Moreover, the proposed deficiencies set out in the Thirty-Day Letter differ from the deficiencies set out in the Notice of Deficiency, which amounts were actually assessed.

In addition, the Request seeks to tie the payment of tax to specific values or adjustments. There is no such "tracing" in tax law. Tax payments are fungible, and are recoverable (or not) based upon the date of their payment and other facts, but not upon the basis that they were paid as the consequence of any particular adjustment or assessment made at any particular time. In the instant case plaintiff, having paid amounts to the Service after receiving the Thirty-Day Letter, was free to claim their refund based on facts and legal arguments entirely different from those which gave rise to the Thirty-Day Letter.

The request is thus vague and unclear, and incapable of admission as written.

**Response:** The Government has admitted various matters with respect to the 30-Day Letter, and has admitted various matters with respect to the Notice of Deficiency.

On April 23, 2003, plaintiff delivered to the Internal Revenue Service a check in the amount of $43,652,545.75 described by plaintiff as a payment with respect to the amounts that had been proposed as deficiencies in the Thirty-Day Letter, as well as underpayment interest that had accrued. A copy of the letter and

the check is attached to these supplemental responses. Defendant admits the authenticity of the letter, and admits that the letter was received, and the check deposited and credited to plaintiff's accounts. Further information respecting how this payment was accounted for by the Internal Revenue Service could be derived from transcripts of account. If plaintiff desires defendant's attorneys to secure updated transcripts of account, we will do so.

Without waiving the foregoing objections, and in light of the preceding explanations, defendant admits the requested admission.

3. With respect to Request for Admission 105, which requests admission as follows:

> The only consideration that DMC's subsidiary Bonneville International Corporation ("BIC") received from the sale of the various KIRO-TV assets was cash in the amount of $52,529,929.

defendant withdraws so much of its response as is headed "**Response:**" and substitutes the following:

**Response:** If plaintiff seeks admission of the fact that in consideration of the sale of all of the assets of KIRO-TV to A. H. Belo, Inc., Bonneville International Corporation received a check from Belo in the amount of $52,529,929, and that, in form, no other amount was paid by Belo to BIC with respect to this transaction, then defendant would admit the requested admission upon plaintiff's identification of documents from which this fact may be confirmed.

If plaintiff instead seeks admission of some other meaning, then the request is vague and unclear, and therefore incapable of admission or denial. The

central issue in this case is whether amounts paid by Belo to Bonneville Holding Company as a consequence of the purchase of KIRO-TV are properly taxable to plaintiff.

4. With respect to Request for Admission 106, which requests admission as follows:

The Government currently contends that the only consideration that BIC received from the sale of the various KIRO-TV assets was cash in the amount of $52,529,929.

defendant withdraws so much of its response as is headed "**Response**:" and substitutes the following:

**Response:** Denied. We understand plaintiff to contend that in consideration of the sale of all of the assets of KIRO-TV to A. H. Belo, Inc., Bonneville International Corporation received a check from Belo in the amount of $52,529,929, and no other amount was paid, in form, by Belo to BIC with respect to this transaction. Defendant presently makes no contrary contention. The central issue in this case is whether amounts paid by Belo to Bonneville Holding Company as a consequence of the purchase of KIRO-TV are properly taxable to plaintiff.

5. With respect to Request for Admission 107, which requests admission as follows:

BIC's adjusted basis in the various KIRO-TV assets, as of February 1, 1995, was $9,801,308.

defendant withdraws so much of its response as is headed "**Response**:" and substitutes the following:

**Response:** Admits that the adjusted basis of the various KIRO-TV assets used by plaintiff to determine its tax liability on its tax return was $9,801,308. Admits that the adjusted basis of the various KIRO-TV assets used by the Internal Revenue Service to determine plaintiff's tax liability was $9;801,308. Objects that any further response would be unduly burdensome. A determination of the adjusted basis of the assets sold by plaintiff would be an enormous undertaking, requiring an examination of plaintiff's records with respect to property acquisition and disposition, maintenance and repair records, depreciation and amortization records and the like, for all of the years since plaintiff first acquired the station (or any of its assets) up through the time of its sale. We do not understand that plaintiff has raised any issue with respect to the proper basis of these assets, and defendant has raised no such issue.

6. With respect to Request for Admission 108, which requests admission as follows:

> The Government currently contends that BIC's basis in the various KIRO-TV assets , as of February 1, 1995, was $9,801,308.

defendant withdraws so much of its response as is headed "**Response:**" and substitutes the following:

**Response:** Denied. Defendant currently makes no contention regarding BIC's basis in the various KIRO-TV assets.

7. With respect to Requests for Admission 112 and 114, which request admission as follows:

> In his appraisal report dated December 1998, DKB did not assign any value to KIRO-TV goodwill. [No. 112]

In his appraisal report dated December 1998, DKB concluded that KIRO-TV goodwill could not be valued. [No. 114]

defendant withdraws so much of its responses as are headed "**Response:**" and substitutes the following in both instances:

**Further Objection:** This request presents a statement respecting the contents of a document – which document is in plaintiff's possession – which document is itself the best evidence of its contents. A restatement of its contents is superfluous if accurate and misleading if inaccurate. The information is available from another source (the document itself) that is more convenient and less burdensome than a newly-typed statement that the defendant must proofread under pain of being bound by any mistake it might not catch. Such proofreading errors and omissions are inevitable. See *supra*, page 2, where such copying errors of plaintiff in constructing the requests for admission are set out. The request is accordingly unduly burdensome.

8. With respect to Requests for Admission 116, 117, and 118, which request admission as follows:

The IRS relied upon DKB's valuation of the various KIRO-TV assets as set forth in the DKB December 1998 and December 2001 appraisal reports in preparing the [Thirty-Day Letter] [NOPA 41-1] [Notice of Deficiency].

defendant withdraws so much of its responses as are headed "**Response:**" and substitutes the following in each instance:

**Response:** Subject to its objection, noting that the request does not seek admission that reliance was complete or exclusive, defendant admits the requested admission.

9. With respect to Request for Admission 119, which requests admission as follows:

The IRS relied upon DKB's valuation of the various KIRO-TV assets as set forth in the DKB December 1998 and December 2001 appraisal reports when it collected from DMC the claimed tax deficiencies set forth in the Thirty-Day Letter.

defendant withdraws so much of its responses as is headed "**Response:**" and incorporates its supplemental response set out above in paragraph 2. Subject to the explanation there set out, defendant admits the requested admission.

Respectfully submitted,

W.C. RAPP
Attorney of Record
*United States Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, DC 20044*
*Voice:* *(202) 307-0503*
*Fax:* *(202) 514-9440*
*Email:* *william.c.rapp2@usdoj.gov*

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

January 26, 2007

Of Counsel



01/29/07 10:54 FAX TAX DIVISION 013

DMC

DESERET MANAGEMENT CORPORATION

April 24, 2003

Via Hand Delivery

Internal Revenue Service
Attn: Richard Druk
c/o Alyson Brennan (Acting)
LMSB Team Manager
50 South 200 East MS 4225
Salt Lake City, Utah 84111

INTERNAL REVENUE SERVICE
RECEIVED
APR 2 4 2003
Wage & Investment Area 6 Director
Phoenix, Arizona
6-0089

Re: **Advance Payment of Proposed Deficiencies**
Deseret Management Corporation & Subs. TIN: 87-0274433
Deseret Management Corp. Inc. & Subs.

Dear Sir/Madam:

The above referenced taxpayers ("DMC") received a notice from your office dated March 28, 2003 (Letter 950 or "30-day Letter") asserting deficiencies in tax of certain amounts for the years December 31, 1994, 1995, 1996 and 1997 and a refund for 1998 (collectively "Years at Issue"). A response to the 30-day Letter (the "Protest") will be submitted to your office within the extended time frame granted by LMSB management.

Attached hereto is a check in the amount of $43,652,545.75, made out to the United States Treasury. The purpose of this letter is to explain the circumstances relative to the foregoing payment (the "Payment"). As more fully set forth below, the Payment constitutes an advance payment of an asserted deficiency made to stop the accrual of interest, including "hot" interest.

The Payment is intended to equal the entire amount of tax, interest and penalty that the 30-day Letter asserts DMC owes for the Years at Issue (taking into account the 1998 refund). The alleged amount of tax (or refund of tax) for each year is contained on the face of the 30-day Letter. The amount of interest (taking into account interest offset from the 1998 refund) for each year was computed by IRS specialists that you asked to make the calculation. There are no penalties listed in the 30-day Letter, inasmuch as neither you nor anyone from the IRS, orally or in writing, have asserted or implied the imposition of any penalties in this case. To the best of our knowledge, the entire amount of tax, interest and penalties asserted by the IRS against DMC (or to be refunded to DMC) for the Years at Issue as of April 24, 2003 are reflected in the schedule below, which allocates such amounts by category and year. The Payment is the sum of the tax and interest listed in the schedule.

Internal Revenue Service
April 24, 2003
Page 2

| Year | | Tax/(Refund) | Interest | Penalty |
|---|---|---|---|---|
| 1994 | | $ 3,331,884.00 | $ 2,770,659.12 | $ -0- |
| 1995 | | $15,653,938.00 | $11,739,037.49 | $ -0- |
| 1996 | | $ 3,224,806.00 | $ 1,946,523.13 | $ -0- |
| 1997 | | $ 3,967,001.00 | $ 1,847,055.01 | $ -0- |
| 1998 | | ($ 828,358.00) | offset against 1994 | $ -0- |
| | Subtotals: | $25,349,271.00 | $18,303,274.75 | |
| | Total Payment: | $43,652,545.75 | | |

With exceptions for certain agreed items, DMC disputes the deficiencies that form the basis for the Payment, and DMC will challenge those deficiencies in its Protest. However, DMC timely makes the Payment within 30 days after issuance of the 30-day Letter in order to stop the accrual of any further interest, and specifically to avoid the occurrence of an "applicable date" and the imposition of "hot interest" (the extra two percentage points of interest payable on any large corporate underpayment) within the meaning of IRC § 6621(c) and the regulations thereunder.

Specifically, DMC intends that the Payment herein constitute "the total amount of tax, as well as any interest, penalties, additional amounts, and additions to tax that are set forth in the letter or notice" (i.e., the 30-day Letter). Reg. § 301.6621-3(c)(5)(iii). As a result, DMC includes in the Payment the entire amount of alleged tax set forth by the IRS in the 30-day Letter and the entire amount of interest that the IRS calculated as owing as of April 24, 2003 in relation to the alleged tax. As indicated above, DMC is unaware of any penalties, additional amounts or additions to tax alleged as owing in this case. If the IRS is asserting any penalties, additional amounts or additions to tax, DMC requests the IRS to contact the undersigned of such assertion prior to April 27, 2003.

DMC intends the Payment to be an advance payment on a proposed deficiency and not a payment in the nature of a cash bond or a payment incident to an agreed assessment of tax deficiencies. DMC specifically declines to execute a Form 870 or similar document which authorizes assessment of the deficiencies asserted herein. Again, DMC tenders the enclosed payment to stop the running of all interest, including "hot" interest.

DMC, despite making the Payment to stop the accrual of interest as stated above, desires to contest this matter before the IRS Appeals office, with meetings to be conducted in Salt Lake City, Utah ("Appeals"). DMC does not intend that making the Payment in any way will preclude, hinder or delay its access to Appeals. In that regard, DMC has received assurances of

VENDOR: UNI002 CHECK: 0000013794 DATE: 4/24/2003

REMIT TO: United States Treasury COMMENT:

| Vend. Invc. No. | Date | Voucher | Comment | Amount | Discount | NetAmount |
|---|---|---|---|---|---|---|
| 4/24/03 | 4/24/2003 | 0000006041 | | 43,652,545.75 | 0.00 | 43,652,545.75 |
| | | | | 43,652,545.75 | 0.00 | 43,652,545.75 |

DO NOT ACCEPT THIS CHECK UNLESS YOU CAN SEE A DUAL-TONE TRUE WATERMARK THAT APPEARS AS CONNECTING PENTAGONS WHEN HELD TO THE LIGHT AND "SAFE" APPEARS WHEN VIEWED AT AN AN

Deseret Management Corporation
60 East South Temple, Suite 575
Eagle Gate Tower
Salt Lake City, UT 84111

Zions First National Bank
Salt Lake City, UT 84111

13794

PAY Forty-three million six hundred fifty-two thousand five hundred forty-five and 75/100 Dollars

Date 4/24/2003 Amount ****43,652,545.75

*Void after 60 days*

TO THE ORDER OF United States Treasury

DESERET MANAGEMENT CORPORATION
AUTHORIZED SIGNATURES

THE FACE OF THIS CHECK HAS A BLUE BACKGROUND – ANY OTHER COLORS MAY BE EVIDENCE OF CHEMICAL ALTERATION OR ERASURE - SEE REVERSE SIDE FOR MORE SAFETY FEATURES.

Deseret Management Corporation CHECK: 0000013794 DATE: 4/24/2003

Salt Lake City, UT 84111 COMMENT:

| Vendor Invoice | Date | Voucher | Comment | Amount | Discount | NetAmount |
|---|---|---|---|---|---|---|
| 4/24/03 | 4/24/2003 | 0000006041 | | 43,652,545.75 | 0.00 | 43,652,545.75 |
| | | | | 43,652,545.75 | 0.00 | 43,652,545.75 |

INTERNAL REVENUE SERVICE
RECEIVED
APR 24 2003
Wage & Investment Area 6 Director
Phoenix, Arizona
6-0089

CERTIFICATE OF SERVICE

I certify that service of the foregoing document has, this 26th day of January, 2007, been made on plaintiff's counsel by mailing the original thereof, in a postage prepaid envelope, to the following address:

Eric C. Olson
Kirton & McConkie
60 East South Temple Street, Ste. 1800
Salt Lake City, Utah 84111

Diana L. Henderson

U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6440