Briefs and Other Related Documents
U.S. v. U.S. Currency in the Amount of Forty Thousand Dollars ($40,000), More or LessE.D.N.Y.,1999.Only the Westlaw citation is currently available.

United States District Court, E.D. New York.
UNITED STATES OF AMERICA, Plaintiff,
v.
UNITED STATES CURRENCY IN THE AMOUNT OF FORTY THOUSAND DOLLARS ($40,000), MORE OR LESS, Defendant,
Robert J. STASIO, Claimant.
**No. 97 CV 508.**

Sept. 22, 1999.

Loretta E. Lynch, United States Attorney, Eastern District of New York, Rosanne M. Harvey, Brooklyn, New York, for plaintiff, of counsel.
Robert J. Stasio, F.C.I. Schuylkill, Minersville, PA, claimant, pro se.

MEMORANDUM AND ORDER

NICKERSON, J.

***1** Plaintiff United States of America (the government) brought this civil forfeiture action *in rem* pursuant to 21 U.S.C. § 881(a)(6) (1999) seeking $40,000 of United States currency. The government claims the money is forfeitable because it was paid or intended to be paid for controlled substances, is traceable to such a transaction, and/or was intended to be used to facilitate such a transaction violative of 21 U.S.C. §§ 841, *et seq.* The government moves for summary judgment. The sole claimant to the money is Robert J. Stasio, appearing *pro se.*

I

The evidentiary facts are largely undisputed as set forth in the government's declarations and other documents.

The Drug Enforcement Administration (“Drug Enforcement”) investigated the illegal narcotics trafficking by Stasio, Frank Schirripa and others for the period January 1992 through February 1993 in Brooklyn, New York. As a result the government prosecuted and convicted Stasio and others for conspiring to distribute and to possess with intent to distribute marijuana and cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. *See United States v. Robert Stasio, et al.*, Criminal Action, No. 93-CR-0156 (E.D.N.Y.).

The Drug Enforcement Agents placed bugs in a trailer that Stasio and Schirripa used as their headquarters and wiretaps on a telephone in the trailer, as well as on Schirripa's home telephone and on another telephone that Stasio and Schirripa used to conduct illegal activities. As a result the agents uncovered evidence that Stasio and Schirripa had conspired to distribute and possess with intent to distribute marijuana and cocaine.

On February 2, 1993, the agents intercepted several calls revealing that Stasio and Schirripa had plans to meet a drug courier sent to New York by their drug supplier in Texas, Horacio Davila-Moreno. According to the calls Stasio owed money to Davila-Moreno for prior drug shipments and was to make payment to the courier on February 2, 1993 in the evening.

The agents obtained warrants to arrest Stasio and others and a search warrant to search a tan Lincoln leased to Schirripa. Half an hour after Stasio's last telephone conversation with Davila-Moreno, the agents executed the arrest warrants for Stasio and the search warrant for the Lincoln. The agents discovered $40,000 in a brown paper bag on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the floor of the back seat area of the Lincoln, as well as a Uniden mobile phone and a notepad containing drug records. Just before the arrest, agents had seen Schirripa driving the Lincoln and Stasio seated in the back seat.

Stasio was charged with several counts of drug violations. He eventually pled guilty to one count of knowingly and intentionally conspiring to distribute and to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. On January 4, 1994, this Court sentenced Stasio to a prison term of 164 months and five years supervised release.

On January 30, 1997, the government filed the complaint *in rem.* This Court then signed a Warrant of Arrest of Articles *In Rem* for the $40,000 under Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims on February 3, 1997. Copies of the Warrant of Arrest of Articles *In Rem,* the Verified Complaint *In Rem,* and the government's First Set of Interrogatories and Requests for the Production of Documents were duly served upon Stasio, who acknowledged receipt. On February 25, 1997, March 3, 1997 and March 10, 1997, the government published public notice of the action and the seizure of the defendant currency in the *New York Post.*

***2** Stasio contends that the forty thousand dollars represents gambling winnings legitimately received by him at Yonkers Raceway on February 2, 1993.

II

*Summary Judgment*

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The substantive law governing the case determines those facts that are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

Summary judgment is warranted only if "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party ." *Id.*

Moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' *Id.* at 586-87, 106 S.Ct. at 1356.

III

Title 21 U.S.C. § 881 provides, in pertinent part, that "[a]ll moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance ... in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys ... used or intended to be used to facilitate any violation of this subchapter" shall be "subject to forfeiture to the United States and no property right shall exist in them." 21 U.S.C. § 881(a)(6) (1999).

To obtain a forfeiture the government has

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the initial burden of showing probable cause for the forfeiture. *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1160 (2d Cir.1986). In particular, the government must demonstrate "that it has reasonable grounds, more than mere suspicion, to believe that the property is subject to forfeiture," and that there is "a nexus between the illegal conduct and the seized property." *Marine Midland Bank v. United States*, 11 F.3d 1119, 1126 (2d Cir.1993) (applying analogous 21 U.S.C. § 981 forfeiture provision).

In determining whether such a nexus exists the court judges probable cause "with a common sense view of the realities of normal life." *United States v. $175,260*, 741 F.Supp. 45, 47 (E.D.N.Y.1990); *see also United States v. Daccarett*, 6 F.3d 37, 56 (2d Cir.1993) ("[P]robable cause determinations are 'made by the trial court's exercise of its judgment in light of all the circumstances." ') (*quoting United States v. 785 St. Nicholas Ave.*, 983 F.2d 396, 405 (2d Cir.1993)). To show probable cause the government was not required to link the money at issue to "any one particular transaction." *Daccarett*, 6 F.3d at 56. In addition, a finding of probable cause may be based on hearsay or circumstantial evidence. *Id.*

***3** Once the government has established probable cause, the claimant has a heavier burden to " 'demonstrate by a preponderance of the evidence that the factual predicates necessary to show probable cause have not been met or to show claimant [']s lack of knowledge or consent to drug related activities." ' *Id.* at 57 (*quoting St. Nicholas Ave.*, 983 F.2d at 403). In effect, the claimant must prove that the money is legitimately his by the more stringent preponderance of the evidence standard. *Daccarett*, 6 F.3d at 57.

In this case, the undisputed evidence overwhelmingly supports a finding of probable cause. Plainly the government had reasonable grounds to believe that the defendant currency was "intended to be furnished ... in exchange for a controlled substance," is "traceable to such [an exchange]," and/or was "intended to be used to facilitate any violation of [21 U.S.C. §§ 841, *et seq.*]." The surveillance of Stasio establishes that he had plans to make payment to Davila-Moreno's drug courier. The facts that Stasio had left $40,000 in the Lincoln, that he and Schirripa used the Lincoln to conduct drug trafficking, and that Stasio and Schirripa were seen in the Lincoln just before the arrest confirm that they intended to deliver the money to pay for the prior drug shipments.

Other evidence supports this conclusion. Stasio was engaged in drug trafficking between January 1992 and February 2, 1993 and had little time for any legitimate business at least between November 1992 and February 2, 1993. Forty thousand dollars legitimately obtained would hardly be kept in a paper bag in a car together with a notepad containing drug records.

Stasio's attempt to sustain his burden is, to put it charitably, feeble. As noted above, he says the $40,000 was the proceeds of his legitimate gambling winnings at the Yonkers Raceway on February 2, 1993, the day of his arrest. In support of his contention, he submitted a document titled "Yonkers Charts" and dated "Tuesday Afternoon, February 2, 1993-27th Racing Day" listing the ten races for the afternoon with the order in which each horse finished, together with a two-page, typed document setting forth his wins and losses for each race on February 2 and his total winnings for the day of $40,915. When asked in interrogatories for winning ticket stubs or receipts, he responded "None available" and "None at this time."

The court treats Stasio's written responses to interrogatories "under the penalty of perjury" as sworn statements for purposes of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

summary judgment. *See* 28 U.S.C. § 1746; *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham,* 1999 WL 515826, at *3 (2d Cir.1999); *Carney v. United States Dep't of Justice,* 19 F.3d 807, 812 n. 1 (2d Cir.1994). The Court thus considers such a statement by Stasio that the "defendant currency is earnings received from winning bets on horse races at Yonkers Raceway, Yonkers, NY, on February 2, 1993, at the 1:00 p.m. post time."

***4** To rebut Stasio's assertion, the government has submitted an affidavit by the Comptroller of Yonkers Raceway, Anthony J. Mercandetti. The affidavit states that the Internal Revenue Service requires Yonkers Raceway to "file form W2G to report gambling winnings that exceed $600.00" and that a search of the Raceway's records shows that there is "no record of any W2G forms filed on behalf of Robert Stasio or any winnings exceeding $600.00 in amount earned by Robert Stasio on February 2, 1993 or any other day." As Mercandetti states, the "absence of any W2G forms filed on behalf of Robert Stasio indicates that Robert Stasio did not earn any winnings over $600.00 in amount on February 2, 1993 or any other day ."

Stasio relies only on his own statement. He submits no supporting affidavits and no official documentation. In light of the surveillance evidence, his drug conviction, the manner in which the money was kept, and Mercandetti's affidavit, Stasio's assertion lacks credibility and does not come close to meeting the preponderance of evidence standard. *See, e.g., United States v. Contents of Account Numbers 208-06070 and 208-06068,* 847 F.Supp. 329, 336 (S.D.N.Y.1994).

But even if Stasio had shown that he had derived the $40,000 from a legitimate source, he has not established that he had no intent to use the money to pay for illegal drugs. Stasio has submitted no evidence that even suggests he had any other intention.

IV

Summary judgment is granted in favor of the United States of America.

V

Since December 7, 1998, Stasio has requested extensions of time to obtain discovery on three separate occasions, the most recent being August 26, 1999. To date, he has proceeded without hindrance by this Court.

Stasio attempted to get more information about W2G reporting requirements and sent a letter to Mercandetti dated February 17, 1999, posing questions that Mercandetti had already answered in his affidavit. For instance, Stasio asks for confirmation regarding the following statement: "A person bets $2,000 on a 5-1 winner; he would receive approximately $12,000. This would not require any Currency Transaction [W2G report] to be filed." In Mercandetti's affidavit, which Stasio has seen, he states that Yonkers Raceway is required to "file form W2G to report gambling winnings that exceed $600.00 in amount." Plainly Stasio's question was already answered.

In any event, Stasio's line of questioning is not relevant. As noted above even if Stasio could establish a legitimate source for the money, it would still be subject to forfeiture.

VI

Plaintiff's motion for summary judgment is granted and Stasio's requests for extensions of time are denied.

So ordered.

E.D.N.Y.,1999.
U.S. v. U.S. Currency in the Amount of Forty Thousand Dollars ($40,000), More or Less

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 1999 WL 1011938 (E.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:97cv00508 (Docket) (Jan. 30, 1997)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.