IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DESERET MANAGEMENT CORPORATION, Plaintiff, v. UNITED STATES OF AMERICA, Defendant. | Case No. 06-86 T<br>Judge Emily C. Hewitt |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND PRETRIAL SCHEDULING ORDER**

The plaintiff Deseret Management Corporation ("DMC"), through counsel, submits this Memorandum in Opposition to the Motion to Amend the Pretrial Scheduling Order, filed by the defendant United States of America (the "Government"). DMC strongly opposes the Government's Motion, which seeks to extend the previously extended discovery schedule in this case by an additional four-month period.

## INTRODUCTION

Two days before the termination of fact discovery in this action – on February 26, 2007 – counsel for the Government first contacted DMC's counsel to seek agreement to an additional four-month extension of the discovery schedule in this action. *See* Exhibit 1 hereto. The schedule counsel proposed to extend had been set by this Court on January 19, 2007, after consultation with counsel for both parties, as a modification of the schedule originally set by this Court's Order dated October 24, 2006.

The Government's letter request offered, without explanation, three reasons for the requested extension: 1) inadequate time for its experts to complete their work, 2) the Government's purported need to undertake additional discovery, and 3) the desire to address perceived deficiencies in DMC's discovery responses. Less than two and a half hours after receiving the Government's request, DMC's counsel informed Government counsel that DMC would not agree to the requested four-month extension. *See* Exhibit 2 hereto. Twenty minutes later, DMC received by electronic service from the Court the Government's Motion to Amend Pretrial Scheduling Order stating the full grounds for the requested extension.

The Government's motion attempts to fault DMC, and ultimately this Court, for setting a pace in this action that, according to counsel, the Government could not under any circumstances maintain. To hear the Government tell it, DMC seeks to deprive the Government of "sufficient time to prepare a proper defense." Motion for Extension at 11. In making this accusation, the Government is really attacking the rules of this Court and the deadlines established thereunder in this proceeding (with full participation by and input from the Government), while turning a blind eye to the Government's actual conduct during the thirteen-month course of this litigation. The Government has not established any grounds that would justify further extension of the deadlines set by this Court for completion of discovery.

**STATEMENT OF FACTS**

The Government's Motion appears to proceed on the premise that, for present purposes, this case commenced "six weeks" ago, shortly after Mr. Rapp first appeared in the matter. Thus, a brief review of the full thirteen months history since the filing of this action will afford essential context for determining the merits of the present motion.

**Proceeding In This Action Before January 8, 2007**

**Pleadings**

DMC filed its Complaint over a year ago, on February 3, 2006. An answer was due sixty days thereafter. RCFC 12(a). Instead, the Government did not answer until June 30, 2006. That answer failed to comply with RCFC 8(b) and was stricken by the Court. The Government filed its Amended Answer on November 1, 2006. Notwithstanding the ten-year audit/appeal phase of this case, both the Answer and the Amended Answer disclaimed any knowledge of the central valuation facts alleged in the Complaint.

**Joint Preliminary Status Report and Initial Disclosures**

The delay in filing the initial Answer pushed back the date for submitting the Joint Preliminary Status Report until August 23, 2006, and the exchange of RCFC 26(a)(1) disclosures until mid-September 2006. In its disclosures, the Government advised that it did not have an expert. However, the Government did identify its in-house valuation expert, Montgomery Careswell, as a person having knowledge supporting its claims or defenses in the case.

**Scheduling**

On October 24, 2006, after holding the Preliminary Scheduling Conference, this Court issued its first scheduling Order, setting January 31, 2007, as the last day for fact discovery and May 30, 2007, as the last day for expert disclosure and discovery. At the Conference, the Government advised the Court that it was at a considerable disadvantage with respect to ascertaining the facts in the matter. Notwithstanding that disadvantage, as of that date the Government had not commenced any discovery in this action. The Court's scheduling Order reiterated comments made at the scheduling hearing that the Court was available to counsel in Order to "secure the just, speedy, and inexpensive determination of this action."

**DMC's Discovery — Documents**

On September 27, 2006, DMC served the Government with a request for production of documents. Responses to the request were due on October 27, 2006, but by virtue of motions for extension, full response to the request for production was not completed until December 15, 2006 (the day on which DMC's counsel received the last privilege log). The Government produced thousands of pages (without correlating them to any specific request) but also identified hundreds of documents and thousands of pages as containing privileged information.

**DMC's Discovery – Depositions**

DMC has taken the depositions of two persons utilized by the Government as experts in the ten-year audit/appeals phase: (a) David K Bivins, an outside expert from 1998 through 2004, and (b) Montgomery Careswell, a valuation specialist with the Internal Revenue Service who authored NOPA 41-1. The Government unsuccessfully sought a protective order to prevent Mr. Bivins' deposition and later attempted unilaterally to restrict his testimony by inaccurately labeling him as a "contract employee." After initially resisting Mr. Careswell's deposition, the Government ultimately permitted him to be deposed. That deposition took one hour.

**DMC's Discovery – Requests for Admissions and Interrogatories**

On November 7, 2006, DMC served interrogatories and requests for admissions on the Government. The deficiencies in the Government's responses to these were detailed in a motion to compel filed on December 22, 2006. Response to that motion was due on January 8, 2007. That was the day that Mr. Rapp entered his appearance and moved to strike the motion to compel.

**Proceedings in This Case Since January 8, 2007**

The Government's efforts of the "last six weeks" fall under three headings:

1. Attempts to remedy deficiencies in its earlier discovery responses.

2. Attempts to address motions directed at deficiencies not remedied.

3. Defense of the one-hour deposition of Mr. Careswell.

At the same time, to simplify its own production and make discovery less complicated for the Government, DMC sought the Government's cooperation in paring down and focusing the sixty-two categories of document requests, eighteen convoluted and multi-part interrogatories and forty-two part Rule 30(b)(6) deposition notice. *See* Memo to Counsel dated January 12, 2007, part 2 at pp. 4-5 (referenced in the Court's Order of January 19, 2007, paragraph 2) and attached hereto as Exhibit 3. DMC never received a response to this proposal although the matter was addressed with the Court at the January 19, 2007, telephonic status hearing and in the telephonic oral argument on February 5, 2007.

The Court entered its Order dated January 19, 2007, revising the schedule for fact discovery (one-month extension) and for expert disclosure and discovery (two-month extension). The first word that the Government wanted more time to complete these tasks was on February 26, 2007, with the filing of the Motion for Extension of Time.

## ARGUMENT

### THE COURT SHOULD DENY THE MOTION FOR EXTENSION OF TIME BECAUSE THE GOVERNMENT HAS FAILED TO CITE A SINGLE FACT OR CIRCUMSTANCE SUFFICIENT TO JUSTIFY ITS ADMITTED AND MANIFEST DELAY IN MEETING THE DEADLINES SET BY THE COURT.

A candid acknowledgement by the Government that it has failed to take the steps necessary to meet the deadlines either set in the rules of this Court or fixed by the orders of this Court would have gone a long way to identifying the real problem driving the present motion for extension. Instead, the Government lays all blame for its asserted last-minute need to add four months onto all existing discovery deadlines at the feet of DMC (and ultimately at the feet of this

Court). Such a response, although consistent with the Government's previous responses to attempts by DMC to secure adherence to the rules and orders of this Court, misses the point: Why should the Court further delay a matter already months behind schedule due solely to the Government's inaction? The Government's motion fails to answer this question.

The array of complaints that the Government does offer to support its motion deserves a brief but structured response:

**A. Enforcement of compliance with the deadlines set by the rules and this Court is not evidence of a "motive . . . to prevent the Government from having sufficient time to prepare a proper defense."**

DMC is not required to establish hardship or prejudice in order to defend the proposition that, after repeated extensions of time and combined delay now measured in months, the Government should comply with the rules and existing orders of this Court. This Court repeatedly warned the Government to act in a timely fashion. As it is, compliance with the rules alone would have put this case at issue by April 5, 2006, with all discovery deadlines met well before the end of 2006. The generosity of the Court has been rewarded with yet more delay and now with the broad accusation that any refusal to countenance further delay proves an animus towards the Government's opportunity to prepare. In so characterizing a problem of its own making, the Government merely exposes the lack of substance of its request.

**B. The schedule of Government counsel does not trump the rules and orders of this Court.**

This Court made clear at the original scheduling hearing that the manifest delay in the progress of this case to that point was "entirely, entirely and completely, in the hands of the United States." 24 Oct. 2006 transcript at 45. The Court assured DMC and warned the Government: "[Y]ou [DMC] are on the top of the pile." *Id.* at 44. Reference to the age, size and "legal significance" of counsel's other cases (Motion at 10) misses the point, at least in the

context of this litigation; the Court has repeatedly directed the Government to give this case priority. This Motion demonstrates that, insofar as its own preparation is concerned, the Government has not honored the Court's directive. Nonetheless, for the past two months, two seasoned Government attorneys were of record as trial counsel in this case, one having over a year's experience with the matter. The names of three other senior attorneys appear on every Government submission to this Court. Any lack of preparation cannot be for lack of personnel.

It is significant to note that Government counsel was silent on this point when the Court and counsel held the telephonic scheduling conference on January 19, 2007, to adjust the discovery schedule. That silence persisted for nearly six weeks until two days before the end of fact discovery. To accept now that counsel's schedule trumps the rules, orders and repeated directives of this Court would put the integrity of this process at the mercy of the belatedly (and very generally) disclosed subjective circumstances of Government counsel.

**C. The "process of securing [expert] testimony" as outlined in the Motion merely underscores the Government's dilatory approach to this case.**

The Government, at pages 3-5 of its Motion, describes a standard process for securing expert testimony that, as presented, inevitably consumes several months. This begs the question: What has the Government been doing for the last thirteen months? This case, as pled in the Complaint (and as pursued for ten years in audit and appeals), not surprisingly presents questions that must be answered by experts. The Government has on its payroll one such expert, Mr. Careswell, who is deeply immersed in the salient questions. The IRS had previously retained on at least three occasions a further outside expert, Mr. Bivins. While the Government is free to abandon or repudiate the views of these experts, as it apparently has done, it cannot bury its head in the sand pretending that the documents, work papers, information and the combined knowledge and expertise resulting from this past investment have ceased to exist or lie beyond

reach because this proceeding is *de novo*. Yet, that appears to be precisely what the Government has done. Thirteen months after the Complaint laid out the issues, eight months after claiming that it had no knowledge or information relative to those issues, nearly six months after advising counsel that it had no expert but was pursuing potential experts, over four months after admitting in open court that it continued not to have an expert, and only weeks after it affirmed in discovery responses that it still had no expert, the Government cites as grounds for its requested extension the claimed reality that it has known all along it must have at least a ten-week period to finalize expert reports. Again, Government counsel was silent regarding this reality when the Court and counsel addressed the schedule on January 19, 2007. As things now stand, this is not a credible basis for obtaining a further extension of time.

**D. DMC did not agree to and the Court did not order *seriatim* discovery.**

At page 2 of the Motion, the Government isolates a quote from the hearing before the Court on Defendant's Motion for Reconsideration of the Court's Order striking the Answer – a motion that the Court denied – to argue that discovery is somehow to proceed in a sequential fashion in this case. There was no such order and no such agreement. Viewed in context, the statement quoted references a January 31, 2007, fact discovery cutoff and the need to complete two depositions noticed by DMC for December 2006 in order to afford the Government all of January 2007 in which to complete any deposition discovery. 29 Nov 2006 transcript at 53.

**E. The Government had ample time to address any discovery deficiencies within the period for fact discovery.**

The Government assures the Court that "[t]his is not a motion for sanctions or to compel discovery." Motion at 5. That is manifest since the first notice that the Government gave of any general or specific misgivings regarding the quality of DMC's discovery responses was in its communications of February 26, 2007. Consistent with the guiding principles of good faith

discussion of discovery deficiencies between counsel, outlined in its own January 8, 2007, Motion to Strike, the Government has not even begun to establish the predicate needed to file a motion to compel. Whatever the Government might mean by alluding to a motion for sanctions is a mystery. The period for fact discovery came and went without any attempt on the part of the Government to raise with opposing counsel perceived deficiencies in discovery responses.

**F. The Government had ample time to address its discovery needs before February 28, 2007, and to the extent that experts might identify further discovery needed to complete their labors, procedures exist to seek and obtain that discovery.**

The Government describes in its Motion a one-sided situation in which DMC has all of the information relating to the sale of KIRO-TV and the Government has nothing. This depiction is inaccurate. Since 1998, the Government has had in its possession DMC's voluminous responses to the IDRs served during the audit. The Government also has the benefit of the extensive files accumulated by both Messrs. Bivins and Careswell, its former experts, to render their opinions of value. Mr. Bivins' files include information from third parties such as KIRO-TV (post-transaction) and his own employer, apparently sufficient to render and support reports and opinions totaling hundreds of pages. The Government's failure to examine these resources, particularly in light of its perception of the skewed balance of information, does not constitute grounds for an additional extension of time.

As of today, the Government obtained over 12,000 pages of documents from DMC in response to its request for production as well as thorough responses to interrogatories, without the extensive objections or claims of ignorance that characterized the Government's discovery responses. If the Government finds any of what it has received "unhelpful" (Motion at 3), it might revisit the portions of the Memo to Counsel of January 12, 2007 (Exhibit 3 hereto), to which it failed to make a response. Therein, DMC outlined problems with the outstanding

discovery requests and invited the Government to narrow the requests. The Government never did so. Given its rejection of DMC's timely invitation to tighten the pending discovery, the Government can hardly be heard to complain of "unhelpful" responses.

To the extent that discovery needs do arise after consultation with experts, the Court indicated at the original scheduling conference that the Government could seek such discovery by motion. 24 Oct. 2006 transcript at 47. There is no need to amend the discovery schedule.

**G. The Government has had sufficient time to complete fact discovery and sufficient time remains to obtain expert reports.**

Under the Court's January 19, 2007 Order, expert reports are to be exchanged by April 25, nearly two months after the date the Government filed its Motion asking for a four-month extension. As the Government admits in its Motion at page 4, the contracting process is complete for certain of its experts and nearly complete for another. In addition, the Government states that it will take only eight to ten weeks from contracting to completion of the expert's final written report. Not only is a four-month extension wholly unnecessary, but it appears that with a little or no extra effort the Government can meet the existing April 25 deadline for exchanging expert reports. Any need to "tweak" the expert schedule at or near the present deadlines may be addressed as specific needs arise and the Government can establish its good faith efforts to comply with the present schedule, not by granting a broad extension that the Government's own scheduling calculations fail to justify.

Moreover, the Government severely overestimates any problem before it. This case involves a single television station and a single transaction. The data necessary to accomplish the task of valuing the assets subject to taxable gain in that transaction have now been assembled by four different appraisers and have been reviewed, in whole or in part, by two more. All of the work papers of those appraisers were available to the Government before it issued a single

discovery request. This case presents a finite number of straightforward appraisal questions, nothing more. Resolution of those questions is similarly straightforward and the parties have no shortage of previous experts whose well-documented labors mark the path a party must follow to resolve the issues. That the matter is *de novo* does not mean that the Government is free to put on blinders or develop amnesia or embrace inertia as a litigation strategy. The resources necessary to prepare its case are in hand. The Government need only use those resources rather than unwisely investing its precious time in preparing and advancing lengthy motions to obtain more time.

**CONCLUSION**

The Government has failed to advance any grounds sufficient to support an extension of the revised schedule for completion of discovery and expert disclosure.

Respectfully submitted,

s/ Eric C. Olson

Eric C. Olson (Attorney of Record)
Tel. (801) 321-4818
Fax: (801) 321-4893
KIRTON & McCONKIE
60 East South Temple Street, Ste. 1800
Salt Lake City, Utah 84111

March 5, 2007

**CERTIFICATE OF SERVICE**

I certify that service of the foregoing **MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND PRETRIAL SCHEDULING ORDER** has, this 5th day of March 2007, been made on Defendant by electronic filing to the following address

W.C. Rapp, Esq.
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044

s/ Eric C. Olson
Eric C. Olson
KIRTON & McCONKIE
60 East South Temple Street, Ste. 1800
Salt Lake City, Utah 84111
Tel. (801) 321-4818
Fax: (801) 321-4893